# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PETER ANDREYEV, and WILLIAM SULLIVAN,<br><br>       Plaintiffs,<br><br>  v.<br><br>LIGHTBOX PARENT, L.P., LIGHTBOX HOLDINGS, L.P., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>       Defendants. | CASE NO. 24-4105<br><br>**NOTICE OF REMOVAL** |

## D.N.J. LOCAL RULE 10.1 STATEMENT

The plaintiffs in this action are Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Peter Andreyev, and William Sullivan. The address for Atlas Data Privacy Corporation is 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302. The remaining addresses are unknown to defendants LightBox Parent, L.P. and LightBox Holdings, L.P. ("LightBox"), which is filing this Notice of Removal. LightBox is unable to locate the precise address of plaintiffs Jane Doe-1 or Jane Doe-2, whose identifies are unknown. And LightBox is unable to locate the precise addresses of the remaining individual plaintiffs who, as is set forth in their Complaint, are law enforcement officers who have availed themselves of New Jersey laws to conceal their addresses. Plaintiffs are represented by Rajiv D. Parikh, Esq. and Kathleen Barnett Einhorn, Esq. of Genova Burns LLC, 494 Broad Street, Newark, NJ 07102, and John A. Yanchunis, Esq. and Ryan J. McGee, Esq. of Morgan & Morgan, 201 N. Franklin St., 7th Floor, Tampa, FL 33602.

The defendants in this action are LightBox Parent, L.P. and LightBox Holdings, L.P., 1450 Broadway, 41st Floor, New York, NY 10018. LightBox is represented by Serrin Turner, Esq. and Kevin M. McDonough, Esq. of Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020.

1

**TO THE CLERK OF THE ABOVE-TITLED COURT, PLAINTIFFS, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants LightBox Parent, L.P. and LightBox Holdings, L.P. ("LightBox"), through undersigned counsel, hereby file this Notice of Removal to remove the above-captioned action—with reservation of all defenses and rights—from the Superior Court of New Jersey, Mercer County, to the United States District Court for the District of New Jersey, Trenton Division, pursuant to 28 U.S.C. §§ 1332, 1367, 1441, and 1446. The grounds for removal are as follows:

## INTRODUCTION

1.     This action is one of over 100 lawsuits filed by plaintiff Atlas Data Privacy Corporation ("Atlas") and its counsel asserting violations of New Jersey's Daniel's Law, N.J.S.A. 56:8-166.1, a recently enacted statute intended to help judges, law enforcement officers, child protective investigators, prosecutors, and their immediate family members protect their home addresses and unpublished home telephone numbers from being publicly disclosed online. The statute allows such individuals ("covered persons") to request that a business or website refrain from publicly disclosing this information, and provides that the recipient must comply within 10 business days, subject to "liquidated damages" of $1,000 "for each violation." N.J.S.A. 56:8-166.1(c)(1).

2.      Atlas's lawsuits, however, have little to do with protecting public servants, or even ensuring that their private information is removed from the internet. Instead, Atlas's sole business is to monetize Daniel's Law, through a scheme that involves (i) recruiting covered persons to register with Atlas online; (ii) having those covered persons purport to assign their claims to Atlas, under a hastily added, unexplained 2023 amendment to Daniel's Law; (iii) selecting hundreds of businesses to be notified under Daniel's Law; (iv) sending *tens of thousands* of automated requests *en masse* to each business on behalf of covered persons, with the aim of overwhelming the recipient and preventing it from being able to process the requests in time; and lastly (v) filing suit on behalf of those covered persons against these hundreds of businesses, seeking tens of millions of dollars in statutory damages in each case.

3.      The assignments that Atlas purportedly received have no apparent purpose other than to prosecute this cynical lawsuit (among others brought by Atlas) in a way that avoids federal jurisdiction. Even though the case purports to be brought on behalf of nearly 17,000 individuals, each with an alleged claim under Daniel's Law, it has not been pled as a class action as any other comparable case would be. The only plausible explanation is that Atlas wants to avoid federal jurisdiction under the Class Action Fairness Act. And Atlas has conveniently been incorporated in Delaware, like LightBox and many of the other defendants Atlas

has sued across its 100-plus complaints—as part of an attempt to thwart federal jurisdiction on traditional diversity grounds as well.

4.      Federal jurisdiction cannot be so easily evaded. Where (as here) a plaintiff orchestrates a collusive assignment of claims in an effort to destroy diversity, it is proper for courts to ignore the citizenship of the non-diverse assignee (here, Atlas) and exercise diversity jurisdiction over the action. *See Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990) ("This right [to removal] would be an illusory one indeed if a plaintiff could defeat it by the simple expedient of assigning a fractional interest in the outcome of the suit to an agent performing what is essentially litigation support on a contingent fee basis.").

5.      When Atlas is properly excluded from the citizenship analysis on these grounds, there is complete diversity of citizenship between the individual New Jersey plaintiffs, on the one hand, and LightBox (a Delaware corporation headquartered in New York) on the other. All other jurisdictional requirements are met. Accordingly, this case is subject to removal based on diversity jurisdiction under 28 U.S.C. § 1332(a).

## PROCEDURAL BACKGROUND

6.      On February 9, 2024, Plaintiffs Edwin Maldonado, Scott Maloney, Justyna Maloney, Peter Andreyev, William Sullivan, and Jane Does 1 and 2 ("Individual Plaintiffs) filed a complaint ("Complaint") against LightBox and

unidentified individuals and companies in the Superior Court of New Jersey, Mercer County. The Complaint names Atlas as lead plaintiff, however, which purports to assert claims as an assignee on behalf of "approximately 16,883" individuals who are allegedly covered persons under Daniel's Law ("Unidentified Covered Persons"). The action is captioned *Atlas Data Privacy Corporation et. al. v. LightBox Parent, L.P., et al*, Docket No. MER-L-000309-24.

7.      According to the Complaint, Atlas "recommended" that the Individual Plaintiffs and Unidentified Covered Persons send suppression requests to various businesses under Daniel's Law. Compl. ¶ 33. The Complaint alleges that the Individual Plaintiffs and Unidentified Covered Persons sent such requests "[s]tarting on or about January 1, 2024." *Id.* ¶ 51. The requests were in fact sent *en masse* to Lightbox that day, *by Atlas*, in an enormous email blast—part of an intentional spamming attack designed to increase the likelihood that LightBox would be unable to respond to the requests within the ten-day period specified in Daniel's Law.

8.      The Complaint was served upon LightBox's registered agent on February 23, 2024. *See* Exhibit A.

9.      On March 12, 2024, Atlas filed a Motion to Consolidate in *Atlas Data Privacy Corp. v. Whitepages Inc. et al.* (Docket No. MER-L-000270-24), a separate action by Atlas in Mercer County asserting violations of Daniel's Law.

While the Motion to Consolidate was not filed on the state court docket for this action or formally served on LightBox, it seeks to consolidate this case with 24 other actions pending in Mercer County. On March 20, 2024, Atlas filed a request to adjourn the Motion to Consolidate to April 12, 2024.

## LEGAL STANDARD

10.    Federal district courts have original diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a).

11.    A notice of removal requires only "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), that contains "plausible allegation[s]" that the Court's jurisdictional requirements are satisfied. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014); *see also Farrell v. FedEx Ground Package System, Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020) ("the grounds for removal should be made in 'a short plain statement,' just as required of pleadings under Fed. R. Civ. P. 8(a)." (citation omitted)); *Matthews v. Bank of America Corp.*, 2020 WL 9786649, at *3 (D.N.J. Feb. 18, 2020) ("Just like the complaint, a notice of removal need only 'contain[] a short and plain statement of the grounds for removal.'" (alteration in original) (quoting 28 U.S.C. § 1446(a)). The notice need not contain "evidentiary support," and the Court "should accept a removing defendant's allegations" in the absence of countervailing evidence by the

plaintiff. *Farrell*, 478 F. Supp. 3d at 540 (citing *Dart Cherokee*, 574 U.S. at 87-88). In the event Plaintiffs contest the factual basis for removal, a defendant is entitled to discovery relating to the claim that diversity jurisdiction exists. *See, e.g.*, *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 102 (3d Cir. 2015) (the party alleging diversity jurisdiction is "entitled to limited discovery for the purpose of establishing that complete diversity exists" when a factual challenge is made); *City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 367-68 (2d Cir. 2006) (discovery was permitted on jurisdictional questions following removal to federal court).

## THIS COURT HAS DIVERSITY JURISDICTION

12.    Each of the requirements of diversity jurisdiction is met here because (i) there is complete diversity of citizenship between LightBox and the Individual Plaintiffs; (ii) Atlas's citizenship can and should be disregarded for purposes of diversity jurisdiction; (iii) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (iv) all other requirements for removal have been satisfied.

## **Diversity of Citizenship**

13.    This action satisfies the complete diversity requirement of 28 U.S.C. § 1332(a)(1).

14.    LightBox is organized under the laws of Delaware with its principal place of business in New York, New York. LightBox is thus a citizen of Delaware and New York for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

15.    Each of the Individual Plaintiffs are current or former New Jersey law enforcement officers, and are alleged to be "liv[ing]" or "working" in New Jersey currently:

    a.  Plaintiff JANE DOE-1 is described as a police officer "working in Northern New Jersey." Compl. ¶ 15.

    b.  Plaintiff JANE DOE-2 is described as a correctional police officer who "lives in Northern New Jersey." *Id.* ¶ 16.

    c.  Plaintiff Edwin Maldonado is described as a member of the Plainfield, New Jersey police department. *Id.* ¶ 17.

    d.  Plaintiffs Scott Maloney and Justyna Maloney are described as police officers "currently serving with the Rahway, New Jersey Police Department." *Id.* ¶ 18.

    e.  Plaintiff Peter Andreyev is described as a veteran of the Point Pleasant, New Jersey police department, and current Executive Vice President of the New Jersey State Policemen's Benevolent Association. *Id.* ¶ 22.

8

    f.   William Sullivan is described as a veteran of the New Jersey Department of Corrections, and the President of New Jersey PBA Local 105, the labor union representing correctional police officers. *Id.* ¶ 23.

16.    Further, under New Jersey law, "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position." N.J.S.A. 40A:14-122.8.

17.    Accordingly, by all appearances, each of the Individual Plaintiffs is a citizen of New Jersey.

18.    The Complaint alleges that Atlas is a Delaware corporation with its principal place of business in New Jersey. Compl. ¶ 24. Atlas purports to assert claims as an assignee on behalf of "approximately 16,833" Unidentified Covered Persons.

19.    Atlas was created for precisely this purpose—*i.e.*, as a litigation vehicle for the lawyers who have brought this lawsuit and others like it. Atlas did not exist when Daniel's Law was passed in November 2020, but it incorporated in Delaware just five months later. *See* Exhibit B. Then, in 2023, Genova Burns, LLC—one of the law firms representing Atlas in this litigation—registered as a lobbyist for Atlas in New Jersey to push for amendments to Daniel's Law to specifically include an assignment provision, which was added to the statute on

July 20, 2023. *See* Exhibit C. Presumably at some point after that, the Unidentified Covered Persons assigned their claims to Atlas. *See* Compl. ¶ 25. Then, in order to prosecute the claims, Atlas was hastily registered to do business in New Jersey on January 12, 2024 (keeping its Delaware incorporation status),[1] and filed suit against LightBox and hundreds of other companies less than a month later—with its lobbying counsel signing on as Plaintiffs' counsel.

20.    The Complaint offers no plausible alternative explanation of why nearly 17,000 people would assign legal claims to Atlas (whether in whole or in part) that they purportedly have for compensatory and punitive damages against numerous companies. As described in the Complaint, Atlas is merely an "online platform, including an email service," that covered persons can use to send requests to businesses that they not disclose their home addresses or phone numbers. Compl. ¶¶ 30-32. There is no apparent legitimate reason why anyone— let alone nearly 17,000 people—would choose to give away their right to recover damages to such an entity, particularly if they have allegedly suffered some sort of harm for which compensation would be appropriate.

21.    Certainly, there was no need for these individuals to assign their claims to Atlas or anyone else in order to bring a lawsuit. They were entitled to bring suit individually in their own names, just like the Individual Plaintiffs. And

---

[1]    *See* "Atlas Data Privacy Corporation," Entity ID 0451071286; https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName.

to the extent collective litigation of the claims is needed for efficiency reasons, there is an obvious mechanism already available—a class action—that does not require anyone to assign their rights to anyone else and allows each class member to fully retain the putative value of their own claims. Had such a class action been brought, it would have clearly been subject to federal jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

22.    Based on these considerations, and upon information and belief, the alleged assignment of approximately 17,000 individuals' claims to Atlas was done as part of a collusive effort to avoid federal jurisdiction. Therefore, the citizenship of Atlas should be disregarded for purposes of determining diversity.

23.    "A plaintiff may attempt to create or destroy diversity jurisdiction by making a transfer which is an assignment in name only. In either case, the plaintiff tampers with the jurisdiction of the court by artificially affecting it." *Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 595 (9th Cir. 1996); *see also* Arthur R. Miller, 13F Fed. Prac. & Proc. Juris. § 3641  (3d ed. 2023) ("Wright & Miller") ("[A] number of federal courts have refused to ignore the possibility that a plaintiff may have engaged in a collusive attempt to manipulate the forum for a particular lawsuit and have retained removed cases on the basis of diversity jurisdiction after they have inquired into the validity of a state law transaction.").

24.    Federal law also provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. Though Section 1359 applies to collusive attempts to *create* diversity jurisdiction, these "informing principles are much the same" when a plaintiff attempts to *destroy* diversity through a collusive assignment. *Attorneys Trust*, 93 F.3d at 595.[2] "Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard; that is, the issue of whether the assignment as improperly or collusively made is to be resolved as a simple question of fact." *Grassi,* 894 F.2d at 186   (affirming decision disregarding an entity's citizenship when it had "no legitimate and independent interest in the litigation, but was simply providing litigation support services on a contingent fee arrangement at the behest of the appellants' attorney"); *accord Attorneys Trust*, 93 F.3d at 598 ("[T]here is no more reason for federal courts to countenance destruction of jurisdiction by the use of straw parties than there is for them to countenance the creation of jurisdiction in that manner . . . .  In either event, another party is deprived of a forum to which he

---

[2] This standard applies to both complete and partial assignments. *See First National Bank in Sioux Falls for Sequoia Charitable Trust v. Warner Bros Entertainment, Inc.*, 2009 WL 10671378, at *4 (C.D. Cal. July 10, 2009) (explaining that distinction between complete and partial assignments "is ultimately a non-starter because 'even when there is a complete assignment, collusion may be found' if 'there is an excellent opportunity for manipulation" (quoting *Attorneys Trust*, 93 F.3d at 596-97)).

would otherwise be entitled, and the jurisdiction which Congress conferred upon the federal courts is manipulated.").[3]

25.    In assessing whether an assignee's citizenship should be disregarded for purposes of diversity, courts are permitted to "look beyond the four corners of a complaint" and independently consider the "factual predicates . . . for [the court's] subject matter jurisdiction." *Erie Ins. Exch. v. Erie Indem. Co.*, 68 F.4th 815, 820 (3d Cir. 2023); *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

26.    Here, Plaintiffs have improperly joined Atlas as a party in this action solely for the purpose of defeating federal jurisdiction—bringing what is effectively a makeshift class action on behalf of approximately 17,000 New Jersey citizens through a collusive assignment to a Delaware corporation, designed to prevent removal of the action by another Delaware corporation. There is no other plausible reason to structure the claims—and the litigation as a whole—in such a

---

[3] *3BTech, Inc. v. Wang*, 534 F. Supp. 3d 973, 987 (N.D. Ind. 2021) (dismissing claim for lack of subject matter jurisdiction where plaintiff collusively assigned claim to diverse defendant in order to establish federal diversity jurisdiction); *NPD Mgmt. & Bldg. Servs., Inc. v. Geismar N. Am., Inc.*, 2021 WL 5231870 (E.D. La. Nov. 10, 2021) ("[A] plaintiff may not make a 'collusive' partial assignment of its interests in the subject matter of litigation to destroy valid diversity jurisdiction and to prevent the removal of an action to federal court."); *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co.*, 813 F. Supp. 2d 242, 244-45 (D. Mass. 2011) (concluding, after jurisdictional discovery, that assignments were collusive and disregarding assignments for purposes of determining diversity jurisdiction); *JMTR Enters., LLC v. Duchin,* 42 F. Supp. 2d 87, 93 (D. Mass. 1999) (ignoring citizenship of assignee who was assigned claims in an attempt to destroy diversity jurisdiction); *Picquet v. Amoco Production Co.*, 513 F. Supp. 938, 942-43 (1981) (same); *see also Renaissance Mktg., Inc. v. Monitronics Int'l, Inc.,* 606 F. Supp. 2d 201, 208 (D.P.R. 2009) ("District courts will not allow removal jurisdiction to be defeated by the plaintiff's destruction of complete diversity of citizenship by the collusive or improper joinder of parties or the assignment of claims.").

convoluted manner. In such circumstances, the Court should disregard the citizenship of Atlas in determining whether complete diversity exists.

27.     As noted above, LightBox is a citizen of Delaware and New York. Aside from Atlas, the only parties identified in the Complaint (the Individual Plaintiffs) are citizens of New Jersey; none are alleged to be citizens of Delaware or New York.

28.     Accordingly, complete diversity of citizenship exists under 28 U.S.C. § 1332(a)(1).[4]

### The Alleged Amount in Controversy Exceeds $75,000

29.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

30.     For purposes of removal, the amount in controversy is first assessed by reviewing the allegations of the operative complaint. Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant[s'] notice of removal may do so." *Dart Cherokee*, 574 U.S. at 84; *see also Erie Ins.*

---

[4] If the Court nevertheless still questions diversity of citizenship, it should—*before* ruling on any motion to remand—order discovery of Atlas related to the purported claim assignments, including on questions such as the size of the interest assigned, whether the assignee had any interest in the matter before assignment, whether the assignor and assignee had separate counsel, whether the assignee's attorney is controlling the litigation, the timing of the assignment, whether the assignment could be considered a sort of contingent fee arrangement, and whether there was a strong likelihood of prejudice against the defendant. *See Grassi*, 894 F.2d at 186 (describing factors to consider in assessing collusive assignment); *Cambridge Place*, 813 F. Supp. 2d at 244 (same); *NPD Mgmt.*, 2021 WL 5231870 at *4 ("[I]t is the reality of an assignment, not the term used to describe it, that courts should look to determine whether it was collusive." (alteration in original) (citation omitted)).

*Exch. v. Erie Indem. Co.*, 722 F.3d 154, 158 (3d Cir. 2013) (court considers allegations in both complaint and notice of removal). Evidentiary submissions are not required to establish the amount in controversy. *Dart Cherokee*, 574 U.S. at 84; *see also Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3d Cir. 2020) (when "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy" (alteration in original) (quoting *Dart Cherokee*, 574 U.S. at 89)).

31.    The Court need only find that the amount in controversy exceeds $75,000 for a single plaintiff in order to exercise jurisdiction over the entire action. As the Supreme Court has made clear, "where the other elements of [diversity] jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005); *see also Burgess v. Bennet*, 2021 WL 1050313, at *5 n.9 (D.N.J. Mar. 19, 2021) ("[A]though these particular plaintiffs' claims may not reach the amount in controversy, so long as one plaintiff in this case satisfies the jurisdictional amount,

15

this Court may exercise supplemental jurisdiction over the remaining plaintiffs' claims.").

32.    Plaintiffs do not allege a specific dollar amount of damages in the Complaint, but seek numerous forms of relief—including actual or liquidated damages of at least $1,000 "per violation" of Daniel's Law, punitive damages, temporary and permanent injunctive relief, attorneys' fees, and both pre- and post-judgment interest—based on LightBox's alleged failure to timely complete the suppression requests within the time period required by Daniel's Law. These allegations are entirely without merit, and LightBox denies any and all liability. But for purposes of this Notice of Removal, taking Plaintiffs' allegations as true and correct, the "possible" amount in controversy readily exceeds $75,000.

33.    At the outset, the $75,000 threshold is easily satisfied by Atlas's putative claims. Atlas purports to assert claims on behalf of 16,883 covered persons under Daniel's Law, for at least $1,000 "for each violation" of the statute. Compl. at 23. Even taking the "minimum" amount by assuming a single "violation" per individual, the damages sought by Atlas alone total over $19 million.[5]

---

[5] The Court may consider the value of Atlas's putative claim for purposes of the amount in controversy requirement. While the collusive assignment of claims to defeat diversity allows the Court to disregard Atlas's *citizenship* for removal purposes, that does not in itself imply the assignments are invalid altogether or that the claims otherwise do not now belong to Atlas. Diversity of citizenship is a concept distinct from the amount in controversy, and Atlas should

34.    Even aside from Atlas's claims, the "possible" amount in controversy for each of the Individual Plaintiffs exceeds $75,000—only one of whom needs to exceed that threshold for the Court to exercise jurisdiction over the entire action. Each Individual Plaintiff seeks (i) "actual damages, not less than the liquidated damages under Daniel's Law, at '$1,000 for each violation,'" (ii) "an additional amount in punitive damages, to be determined by the Court, for 'willful noncompliance' as allowed under Daniel's Law," (iii) "reasonable attorneys' fees," and (iv) "injunctive relief." Compl. at 23. Adding together potential statutory, actual, and punitive damages that the Complaint seeks, as well as the putative value of injunctive relief and attorneys' fees, each Plaintiff has put more than $75,000 in controversy.

35.    As noted above, the Complaint seeks statutory damages of $1,000 "for each violation" of Daniel's Law. Compl. at 23. The Complaint does not specify the number of "violations" claimed, but alleges that (i) protected information for the Individual Plaintiffs "remains disclosed" on websites allegedly owned by LightBox, *id.* ¶ 63; and (ii) "each" failure to "cease the disclosure or re-disclosure" of that information "constitute[s] a separate violation under the law." *Id.* ¶ 61. The Complaint thus appears to allege multiple violations for each of the Individual

---

not be allowed to collusively aggregate claims via assignment to it as a single plaintiff while arguing that aggregation should be disregarded for purposes of the amount in controversy.

Plaintiffs. Were this theory accepted, the statutory damages alone could cross the $75,000 threshold for each Individual Plaintiff.[6]

36.    Plaintiffs also seek actual damages and may try to seek recovery for the costs of measures they have allegedly taken for their personal safety, or for alleged anxiety or emotional distress. Such alleged damages would also contribute to the total amount of compensatory damages sought. *See, e.g., Yucis*, 813 Fed. App'x at 782 n.2 (holding that removing defendant plausibly alleged more than $75,000 in controversy based on allegations that plaintiff experienced "pain, suffering, embarrassment, and humiliation" as a result of sexual harassment, as well as attorneys' fees).

37.    In addition to statutory and actual damages, the Complaint seeks punitive damages for "willful noncompliance" with Daniel's Law on behalf of each Individual Plaintiff. Compl. ¶23. In the Third Circuit, claims for punitive damages made in good faith "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237,

---

[6] The Complaint does not explain its "per violation" theory of damages, *i.e.*, by specifying how many violations the Individual Plaintiffs claim due to the alleged "ongoing" exposure of their personal information. LightBox disputes any interpretation of Daniel's Law that would allow a single plaintiff to recover statutory damages for multiple "violations" of the law. Nonetheless, because no court has ruled on the issue, the potential for additional violations per person should be considered in determining the amount in controversy. *See, e.g., Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 769–70 (N.D. Ill. 2019) (finding removal proper of a complaint asserting violations of the Illinois Biometric Privacy Act because plaintiff did not show that recoverable amount based on "per violation" theory was "legally impossible").

244 (3d Cir. 2008) (citation omitted); *see also Ifill v. CVS Pharmacy,* 2021 WL 486884, at *2 (D.N.J. Feb. 9, 2021) (denying motion to remand on grounds that the plaintiff's request for punitive damages satisfied the amount in controversy requirement, because even assuming a single-digit multiplier a plaintiff would only need to recover compensatory damages above $7,500 to bring the total amount above $75,000); *Valenta v. BI Inc.*, 2021 WL 7185785, at *5 (W.D. Pa. Oct. 8, 2021) ("Because Plaintiff's request for punitive damages is appropriately made, this is generally sufficient to satisfy the amount in controversy."); *Johnson v. State Farm Life Ins. Co.*, 695 F. Supp. 2d 201, 207-08 (W.D. Pa. 2010) (holding that amount in controversy was satisfied based on plaintiff's request for punitive damages, and rejecting the argument that the amount in controversy could not be satisfied because the plaintiff alleged only $10,000 in compensatory damages).

38.    Further, as a matter of New Jersey law, any plaintiff seeking punitive damages is entitled to request up to five times the liability found for compensatory damages "*or $350,000, whichever is greater.*" N.J.S.A. 2A:15-5.14(b) (emphasis added). Thus, the mere fact that the Individual Plaintiffs are seeking punitive damages presumptively satisfies the $75,000 jurisdictional amount for each of the Individual Plaintiffs. *See, e.g.*, *Valenta,* 2021 WL 7185785, at *5.

39.    The Complaint also seeks to recover the costs of suit, including "reasonable attorneys' fees." Compl. ¶ 23. For the purposes of removal, the Third

19

Circuit has held that in calculating the amount in controversy, courts "must consider potential attorneys' fees" where they are recoverable under a statutory cause of action (as they are here). *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); *see also Venuto v. Atlantis Motor Grp., LLC*, 2017 WL 4570283, at *3 (D.N.J. Oct. 13, 2017) (noting that "reasonable attorneys' fees . . . must be counted if they are available under New Jersey state law" for "purposes of calculating the amount in controversy," and denying motion to remand where it was "not a legal certainty that plaintiffs cannot recover more than $75,000").

40.    A typical rule of thumb in the Third Circuit in calculating attorneys' fees to determine the amount in controversy is 30 percent of the compensatory and/or punitive damages. *See, e.g., Ciccone v. Progressive Specialty Ins. Co*., 2020 WL 7319777, at *4 (M.D. Pa. Dec. 11, 2020) (including attorneys' fees of 30 percent of the total of plaintiff's compensatory and treble damages to find that plaintiff's individual claims met the amount in controversy); *Rodriguez v. Burlington County Corrections Dept*., 2015 WL 790521, at *2 (D.N.J. Feb. 25, 2015) ("The Third Circuit has noted that attorney's fees can be estimated to be as high as 30% of the final judgment."). As outlined above, the Complaint alleges compensatory damages and punitive damages that already exceed the $75,000 threshold for each Individual Plaintiff. But if those damages were increased by

another 30 percent to account for attorneys' fees, there can be no doubt that the amount in controversy is satisfied.

41.    Finally, the Individual Plaintiffs seek broad injunctive relief tied to LightBox's ongoing compliance with Daniel's Law. In the Third Circuit, the value of injunctive relief may be considered in determining the amount in controversy, and is measured by the "value of the interest sought to be protected by the equitable relief requested." *Hunter v. Greenwood Trust Co.*, 856 F. Supp. 207, 219 (D.N.J. 1992); *In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994) ("In injunctive actions, it is settled that the amount in controversy is measured by . . . 'the value to the plaintiff to conduct his business or personal affairs free from the activity sought to be enjoyed.'" (citation omitted)). Here, the interest the Complaint putatively seeks to protect is the interest of the Individual Plaintiffs and the Unidentified Covered Persons in their physical safety and freedom from threatening communications. *See* Compl. ¶¶ 15-23 (alleging that the Individual Plaintiffs face threats to their safety and/or threatening phone calls or text messages based on the disclosure of their home addresses and phone numbers). While LightBox emphatically rejects any allegation that it has engaged in conduct that has endangered this interest, the Individual Plaintiffs and Atlas would surely contend that the value of this interest exceeds $75,000 for each of the Individual Plaintiffs and Unidentified Covered Persons.

42.    Because the parties are completely diverse and the amount in controversy exceeds $75,000, the requirements of diversity jurisdiction are satisfied.

## ALL PROCEDURAL REQUIREMENTS ARE SATSIFIED

43.    **Removal is timely.** As noted above, the Complaint was served upon LightBox on February 23, 2024. Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is being filed within 30 days of service. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

44.    **Removal is to the proper court**. Because Plaintiffs' Complaint was filed in the Superior Court of New Jersey, Mercer County, this district is the proper venue for this action upon removal, as it encompasses the location in which the Complaint is currently pending in state court (i.e., Mercer County). *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending").

45.    **Rule 11.** This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

46.    **All pleadings and process are attached.** Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Summons, Complaint, Notice of Service

of Process, and other pleadings are attached hereto as Exhibit A. Exhibit A constitutes all of the process, pleadings, and orders served on LightBox to date in the state court action.

47. **Notice is being provided forthwith**. Pursuant to 28 U.S.C. § 1446(d), upon filing this Notice of Removal, the undersigned will promptly give written notice of such filing to Plaintiffs through their counsel of record and file a true and correct copy of this Notice of Removal and all documents attached hereto with the Clerk of the Superior Court of New Jersey, Mercer County.

**WHEREFORE**, LightBox hereby removes the above-captioned action from the Superior Court, Mercer County and requests that further proceedings be conducted in this Court as provided by law.

Dated: March 22, 2024                     **LATHAM & WATKINS LLP**

                                          /s/ *Kevin McDonough*
                                          Kevin McDonough (ID: 41892005)
                                          Serrin Turner (*pro hac vice forthcoming*)
                                          1271 Avenue of Americas
                                          New York, NY 10020
                                          Telephone: (212) 906-1200
                                          Email: kevin.mcdonough@lw.com


                                          *Attorneys for Defendants*