**LATHAM & WATKINS LLP**
Kevin M. McDonough
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
        serrin.turner@lw.com
        scott.joiner@lw.com
        brad.baglien@lw.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PETER ANDREYEV, and WILLIAM SULLIVAN, <br><br> Plaintiffs, <br><br> v. <br><br> LIGHTBOX PARENT, L.P., LIGHTBOX HOLDINGS, L.P., RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*, <br><br> Defendants. | CASE NO. 3:24-cv-4105-HB <br><br> Hon. Harvey Bartle, III <br><br><br> **AMENDED NOTICE OF REMOVAL** |

**TO THE CLERK OF THE ABOVE-TITLED COURT, PLAINTIFFS, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants LightBox Parent, L.P. and LightBox Holdings, L.P. ("LightBox"), through undersigned counsel, hereby file this Amended Notice of Removal to remove the above-captioned action—with reservation of all defenses and rights—from the Superior Court of New Jersey, Mercer County, to the United States District Court for the District of New Jersey, Trenton Division, pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446. The grounds for removal are as follows:

**INTRODUCTION**

1.    This action is one of over 100 lawsuits filed by plaintiff Atlas Data Privacy Corporation ("Atlas") and its counsel asserting violations of New Jersey's Daniel's Law, N.J.S.A. 56:8-166.1, a recently enacted statute intended to help judges, law enforcement officers, child protective investigators, prosecutors, and their immediate family members protect their home addresses and unpublished home telephone numbers from being publicly disclosed online. The statute allows such individuals ("covered persons") to request that a business or website refrain from publicly disclosing this information, and provides that the recipient must

1

comply within 10 business days, subject to "liquidated damages" of $1,000 "for each violation." N.J.S.A. 56:8-166.1(c)(1).

2.    Atlas's lawsuits, however, have little to do with protecting public servants, or even ensuring that their private information is removed from the internet. Instead, Atlas's sole business is to monetize Daniel's Law, through a scheme that involves (i) recruiting covered persons to register with Atlas online; (ii) having those covered persons purport to assign their claims to Atlas, under a hastily added, unexplained 2023 amendment to Daniel's Law; (iii) selecting hundreds of businesses to be notified under Daniel's Law; (iv) sending *tens of thousands* of automated requests *en masse* to each business on behalf of covered persons, with the aim of overwhelming the recipient and preventing it from being able to process the requests in time; and lastly (v) filing suit on behalf of those covered persons against these hundreds of businesses, seeking tens of millions of dollars in statutory damages in each case.

3.    The assignments that Atlas purportedly received have no apparent purpose other than to prosecute this cynical lawsuit (among others brought by Atlas) in a way that avoids federal jurisdiction. Even though the case purports to be brought on behalf of nearly 17,000 individuals, each with an alleged claim under Daniel's Law, it has not been pled as a class action as any other comparable case

would be. The only plausible explanation is that Atlas wants to avoid federal

jurisdiction under the Class Action Fairness Act ("CAFA").

4.      But jurisdiction under CAFA cannot be so easily evaded. Where (as

here) a plaintiff *partially* assigns their interests in legal claims, with some rights

(financial, injunctive, or otherwise) still held by the assignors as the true claimants,

courts may consider the unnamed assignors for purposes of assessing jurisdiction

under CAFA. The result here is that the case is removable as a "mass action" under

CAFA, as it satisfies (1) the CAFA class action requirements of (a) minimal

diversity and (b) $5,000,000 *aggregate* amount-in controversy; and (2) the CAFA

mass action requirements of (a) monetary relief claims of 100 or more persons and

(b) $75,000 *individual* amount-in-controversy. Accordingly, federal jurisdiction is

proper under CAFA, 28 U.S.C. § 1332(d).

## PROCEDURAL BACKGROUND

5.      On February 9, 2024, Plaintiffs Edwin Maldonado, Scott Maloney,

Justyna Maloney, Peter Andreyev, William Sullivan, and Jane Does 1 and 2

("Individual Plaintiffs") filed a complaint ("Complaint") against LightBox and

unidentified individuals and companies in the Superior Court of New Jersey,

Mercer County. The Complaint names Atlas as lead plaintiff, however, which

purports to assert claims as an assignee on behalf of "approximately 16,883"

individuals who are allegedly covered persons under Daniel's Law ("Unidentified

Covered Persons"). Compl. ¶ 25. The action is captioned *Atlas Data Privacy Corporation et al. v. LightBox Parent, L.P., et al*, Docket No. MER-L-000309-24.

6.    According to the Complaint, Atlas "recommended" that the Individual Plaintiffs and Unidentified Covered Persons send suppression requests to various businesses under Daniel's Law. Compl. ¶ 33. The Complaint alleges that the Individual Plaintiffs and Unidentified Covered Persons sent such requests "[s]tarting on or about January 1, 2024." *Id.* ¶ 51. The requests were in fact sent *en masse* to LightBox, *by Atlas*, in an enormous email blast—part of an intentional spamming attack designed to increase the likelihood that LightBox would be unable to respond to the requests within the ten-day period specified in Daniel's Law.

7.    The Complaint was served upon LightBox's registered agent on February 23, 2024. *See* Exhibit A.

8.    On March 22, 2024, LightBox timely removed the action to the U.S. District Court for the District of New Jersey, Trenton Division, on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). *See* Dkt. No. 1.

9.    On April 2, 2024, pursuant to 28 U.S.C. § 292(b), Chief Judge Michael A. Chagares of the United States Court of Appeals for the Third Circuit designated and assigned the action to the Honorable Judge Harvey Bartle, III of the United States District Court for the Eastern District of Pennsylvania, along with

approximately 60 other related cases filed by Atlas asserting violations of Daniel's Law against various defendants. *See* Dkt. No. 5. The action was subsequently reallocated to the U.S. District Court for the District of New Jersey, Camden Division. *See* Dkt. No. 7.

10.    After the case was initially removed, LightBox discovered that there was not complete diversity between Plaintiffs and LightBox, due to the fact that one or more limited partners of named defendant LightBox Holdings, L.P. are citizens of New Jersey. However, on April 11, 2024, Atlas produced to LightBox a copy of its Terms of Service, which makes clear that any assignments made to Atlas by Unidentified Covered Persons would have been only partial assignments and that the Unidentified Covered Persons retain a financial interest in the assigned claims. These facts were not previously evident from the face of the Complaint, and they revealed an alternative basis for subject matter jurisdiction under CAFA, prompting this Amended Notice.

## LEGAL STANDARD

11.    A notice of removal requires only "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), that contains "plausible allegation[s]" that the Court's jurisdictional requirements are satisfied. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014); *see also Farrell v. FedEx Ground Package System, Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020) ("the

grounds for removal should be made in 'a short plain statement,' just as required of pleadings under Fed. R. Civ. P. 8(a)." (citation omitted)); *Matthews v. Bank of America Corp.*, 2020 WL 9786649, at *3 (D.N.J. Feb. 18, 2020) ("Just like the complaint, a notice of removal need only 'contain[] a short and plain statement of the grounds for removal.'" (alteration in original) (quoting 28 U.S.C. § 1446(a)). The notice need not contain "evidentiary support," and the Court "should accept a removing defendant's allegations" in the absence of countervailing evidence by the plaintiff. *Farrell*, 478 F. Supp. 3d at 540 (citing *Dart Cherokee*, 574 U.S. at 87-88). In the event Plaintiffs contest the factual basis for removal, a defendant is entitled to discovery relating to the claim that diversity jurisdiction exists. *See, e.g.*, *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 102 (3d Cir. 2015) (the party alleging diversity jurisdiction is "entitled to limited discovery for the purpose of establishing that complete diversity exists" when a factual challenge is made); *City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 367-68 (2d Cir. 2006) (discovery was permitted on jurisdictional questions following removal to federal court).

## THIS COURT HAS DIVERSITY JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

12.    "Congress enacted [CAFA] to facilitate adjudication of certain class [and mass] actions in federal court." *Dart Cherokee*, 574 U.S. at 89. CAFA's "provisions should be read broadly," and there is a "strong preference" that

6

interstate actions like this one "should be heard in a federal court if properly removed by any defendant." *Id.* In particular, CAFA allows federal courts to exercise jurisdiction over "mass actions," defined as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," 28 U.S.C. § 1332(d)(11)(B)(i), where certain requirements are satisfied. Specifically, jurisdiction over such actions is proper if: (1) any plaintiff is a citizen of a state different from any defendant (i.e., minimal diversity exists), and (2) the amount in controversy exceeds $5 million in the aggregate and $75,000 for individual plaintiffs. 28 U.S.C. §§ 1332(d)(2), (d)(6), (d)(11)(B)(i). These requirements are satisfied here.

### A.    The Case is a Mass Action

13.    Under CAFA, "the term 'mass action' means any civil action . . . in which *monetary relief claims of 100 or more persons* are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact[.]" 28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).

14.    The "question is not whether 100 or more plaintiffs answer a roll call in court, but whether the '*claims*' advanced by 100 or more persons are proposed to be tried jointly." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (emphasis added). "Where a single complaint joins more than *100*

*separate claims* involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial." *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 329 (3d Cir. 2017) (emphasis added).

15.    Here, Atlas alleges that it is the assignee of monetary relief claims of "approximately 16,883 individuals"—well in excess of the 100-claim threshold—but purports to assert them collectively in the Complaint. *See* Compl., ¶¶ 25, 58. Notably, however, Atlas is only a *partial* assignee of the claims being asserted on behalf of these individuals—meaning that each of the 16,883 assignors retain an interest in individual "monetary relief claims" being asserted in the action. Where a person assigns away only part of his claim, that person continues to be a "real part[y] in interest" to any litigation brought to vindicate that claim. *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990). This is precisely the case here.

16.    Further, in the context of evaluating whether a putative class meets Rule 23's numerosity requirement, the Third Circuit has held that *both* assignors and assignees of partial interests in the same claim "can be counted as class members." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 251-52 (3d Cir. 2016), *as amended* (3d Cir. Sept. 29, 2016) (where two potential class members "were partial assignees of [claims of] two other class members," the "partial assignees are appropriately considered to be members of a class" as well); *see also id*. at 252 ("*Fine Paper Litigation* [, 632 F.2d 1081, 1089 (3d Cir. 1980)] envisioned the class

8

action mechanism as a proper tool for partial assignees to participate in the lawsuit[.]"). Similarly here, in determining the number of "monetary relief claims" being asserted in this action, the Court should consider not only Atlas, but also the 16,883 individuals holding interests in individual claims for relief under Daniel's Law.

17.   Atlas only has standing to sue (if at all) in its alleged capacity as the assignee for each individual assignor. Because Atlas "steps into the shoes of" each assignor in this suit, 29 Williston on Contracts § 74:56, Atlas's "right against" any defendant is "subject to all defenses" that any Defendant may have had against any assignor, including "defenses based on *where* and *how* the claims may be prosecuted." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 5211035 at *11 (E.D. Pa. Sept. 1, 2020) (citing Restatement (First) of Contracts § 167(1) (1932)) (emphasis added).

18.   That Atlas did not name each of the 16,883 assignors in the case caption does not change the fact that Atlas is not suing on its individual behalf, but is entitled to bring each claim alleged in the Complaint only as the assignee for a corresponding and specific assignor, each of whom retains an interest in the claims being asserted on their behalf in the litigation.

19.    Thus, because Atlas is suing to recover for the "monetary relief claims of 100 or more persons" in a single lawsuit, 28 U.S.C. § 1332(d)(11)(B)(i), the mass-action numerosity element is satisfied.

### B.    Minimal Diversity is Satisfied

20.    For purposes of establishing federal jurisdiction, CAFA requires only minimal diversity—that is, at least one plaintiff must be a citizen of a state different from the state of citizenship of any named defendant. 28 U.S.C. § 1332(d)(2)(A).

21.    Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). For the purpose of determining minimal diversity under CAFA, a limited partnership is deemed an "unincorporated association." *See, e.g., Kotsur v. Goodman Global, Inc*., 2014 WL 6388432, at *3 n.2 (E.D. Pa. Nov. 17, 2014) (applying § 1332(d)(10) to limited partnership); *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 & n.13 (noting in concurring opinion that limited partnership would be an "unincorporated association" under CAFA). Both Defendant Lightbox Parent, L.P. and LightBox Holdings, L.P. are organized under the laws of Delaware, with their principal place of business in New York, New York. LightBox is thus a citizen of Delaware and New York under 28 U.S.C. § 1332(d)(10).

22.    Each of the Individual Plaintiffs are current or former New Jersey law enforcement officers, and are alleged to be "liv[ing]" or "working" in New Jersey currently:

a.  Plaintiff JANE DOE-1 is described as a police officer "working in Northern New Jersey." Compl. ¶ 15.

b.  Plaintiff JANE DOE-2 is described as a correctional police officer who "lives in Northern New Jersey." *Id.* ¶ 16.

c.  Plaintiff Edwin Maldonado is described as a member of the Plainfield, New Jersey police department. *Id.* ¶ 17.

d.  Plaintiffs Scott Maloney and Justyna Maloney are described as police officers "currently serving with the Rahway, New Jersey Police Department." *Id.* ¶ 18.

e.  Plaintiff Peter Andreyev is described as a veteran of the Point Pleasant, New Jersey police department, and current Executive Vice President of the New Jersey State Policemen's Benevolent Association. *Id.* ¶ 22.

f.  William Sullivan is described as a veteran of the New Jersey Department of Corrections, and the President of New Jersey PBA Local 105, the labor union representing correctional police officers. *Id.* ¶ 23.

23.    Further, under New Jersey law, "[e]very member of a police department and force shall be a resident of the State of New Jersey while serving in such position." N.J.S.A. 40A:14-122.8.

24.    Accordingly, by all appearances, each of the Individual Plaintiffs is a citizen of New Jersey. Because LightBox's citizenship (Delaware and New York) is different from the citizenship of each of the named plaintiffs (New Jersey), the minimal diversity requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2)(A).

**C.    The Alleged Individual Amount in Controversy Exceeds $5 Million in the Aggregate and $75,000 for Each Plaintiff**

25.    CAFA provides that, "[i]n any class [or mass] action, the claims of the individual class members [or plaintiffs] shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(6), (d)(11)(A). In the case of mass actions (as opposed to traditional class actions), there is an additional requirement that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)]," which requires that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(d)(11)(B)(i). In other words, CAFA confers federal jurisdiction over a mass action where the aggregate amount in controversy exceeds $5 million, and over individual plaintiffs participating in that mass action where their individual amount in controversy exceeds $75,000.

26.    For purposes of removal, the amount in controversy is first assessed by reviewing the allegations of the operative complaint. Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant[s'] notice of removal may do so." *Dart Cherokee*, 574 U.S. at 84; *see also Erie Ins. Exch. v. Erie Indem. Co*., 722 F.3d 154, 158 (3d Cir. 2013) (court considers allegations in both complaint and notice of removal). Evidentiary submissions are not required to establish the amount in controversy. *Dart Cherokee*, 574 U.S. at 84; *see also Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3d Cir. 2020) (when "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy" (alteration in original) (quoting *Dart Cherokee*, 574 U.S. at 89)).

27.    LightBox denies the validity and merit of Plaintiffs' claims. Nevertheless, for purposes of setting forth grounds for this Court's jurisdiction— and without conceding that Plaintiffs are entitled to damages or any relief whatsoever—it is apparent that both amount-in-controversy requirements for CAFA mass action removal are met here.

28.    Plaintiffs do not allege a specific dollar amount of damages in the Complaint, but seek numerous forms of relief—including actual or liquidated damages of at least $1,000 "per violation" of Daniel's Law, punitive damages, temporary and permanent injunctive relief, attorneys' fees, and both pre- and post-

judgment interest—based on LightBox's alleged failure to timely complete the suppression requests within the time period required by Daniel's Law.

29.    As to the aggregate amount in controversy, the $5,000,000 threshold is easily satisfied by the Complaint's request for statutory damages under Daniel's Law. Atlas purports to assert claims on behalf of 16,883 covered persons, on top of the claims of the eight named plaintiffs, all for at least $1,000 "for each violation" of the statute. Compl. at 23. Even taking the "minimum" amount by assuming a single "violation" per individual, the aggregate statutory damages sought total nearly $17 million.

30.    As to the "individual" amount in controversy, taking Plaintiffs' allegations as true and correct, the "possible" amount in controversy for each of the Individual Plaintiffs (and the unnamed covered persons) readily exceeds $75,000. Each Individual Plaintiff seeks (i) "actual damages, not less than the liquidated damages under Daniel's Law, at '$1,000 for each violation,'" (ii) "an additional amount in punitive damages, to be determined by the Court, for 'willful noncompliance' as allowed under Daniel's Law," (iii) "reasonable attorneys' fees," and (iv) "injunctive relief." Compl. ¶ 63. Adding together potential statutory, actual, and punitive damages that the Complaint seeks, as well as the putative value of injunctive relief and attorneys' fees, each Plaintiff has put more than $75,000 in controversy.

31.    As noted above, the Complaint seeks statutory damages of $1,000 "for each violation" of Daniel's Law. *Id*. The Complaint does not specify the number of "violations" claimed, but alleges that (i) protected information for the Individual Plaintiffs "remains disclosed" on websites allegedly owned by LightBox, *id.*; and (ii) "each" failure to "cease the disclosure or re-disclosure" of that information "constitute[s] a separate violation under the law." *Id.* ¶ 61. The Complaint thus appears to allege multiple violations for each of the Individual Plaintiffs. Were this theory accepted, the statutory damages alone could cross the $75,000 threshold for each Individual Plaintiff.[1]

32.    Plaintiffs also seek actual damages and may try to seek recovery for the costs of measures they have allegedly taken for their personal safety, or for alleged anxiety or emotional distress. Such alleged damages would also contribute to the total amount of compensatory damages sought. *See, e.g., Yucis*, 813 Fed. App'x at 782 n.2 (holding that removing defendant plausibly alleged more than $75,000 in controversy based on allegations that plaintiff experienced "pain,

---

[1] The Complaint does not explain its "per violation" theory of damages, *i.e*., by specifying how many violations the Individual Plaintiffs claim due to the alleged "ongoing" exposure of their personal information. LightBox disputes any interpretation of Daniel's Law that would allow a single plaintiff to recover statutory damages for multiple "violations" of the law. Nonetheless, because no court has ruled on the issue, the potential for additional violations per person should be considered in determining the amount in controversy. *See, e.g., Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 769–70 (N.D. Ill. 2019) (finding removal proper of a complaint asserting violations of the Illinois Biometric Privacy Act because plaintiff did not show that recoverable amount based on "per violation" theory was "legally impossible").

suffering, embarrassment, and humiliation" as a result of sexual harassment, as well as attorneys' fees).

33.    In addition to statutory and actual damages, the Complaint seeks punitive damages for "willful noncompliance" with Daniel's Law on behalf of each Individual Plaintiff. Compl. ¶ 63. In the Third Circuit, claims for punitive damages made in good faith "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008) (citation omitted); *see also Ifill v. CVS Pharmacy*, 2021 WL 486884, at *2 (D.N.J. Feb. 9, 2021) (denying motion to remand on grounds that the plaintiff's request for punitive damages satisfied the amount in controversy requirement, because even assuming a single-digit multiplier a plaintiff would only need to recover compensatory damages above $7,500 to bring the total amount above $75,000); *Valenta v. BI Inc*., 2021 WL 7185785, at *5 (W.D. Pa. Oct. 8, 2021) ("Because Plaintiff's request for punitive damages is appropriately made, this is generally sufficient to satisfy the amount in controversy."); *Johnson v. State Farm Life Ins. Co*., 695 F. Supp. 2d 201, 207-08 (W.D. Pa. 2010) (holding that amount in controversy was satisfied based on plaintiff's request for punitive damages, and rejecting the argument that the amount in controversy could not be satisfied because the plaintiff alleged only $10,000 in compensatory damages).

34.    Further, as a matter of New Jersey law, any plaintiff seeking punitive damages is entitled to request up to five times the liability found for compensatory damages "*or $350,000, whichever is greater*." N.J.S.A. 2A:15-5.14(b) (emphasis added). Thus, the mere fact that the Individual Plaintiffs are seeking punitive damages presumptively satisfies the $75,000 jurisdictional amount for each of the Individual Plaintiffs. *See, e.g.*, *Valenta,* 2021 WL 7185785, at *5.

35.    The Complaint also seeks to recover the costs of suit, including "reasonable attorneys' fees." Compl. ¶ 63. For the purposes of removal, the Third Circuit has held that in calculating the amount in controversy, courts "must consider potential attorneys' fees" where they are recoverable under a statutory cause of action (as they are here). *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); *see also Venuto v. Atlantis Motor Grp., LLC*, 2017 WL 4570283, at *3 (D.N.J. Oct. 13, 2017) (noting that "reasonable attorneys' fees . . . must be counted if they are available under New Jersey state law" for "purposes of calculating the amount in controversy," and denying motion to remand where it was "not a legal certainty that plaintiffs cannot recover more than $75,000").

36.    A typical rule of thumb in the Third Circuit in calculating attorneys' fees to determine the amount in controversy is 30 percent of the compensatory and/or punitive damages. *See, e.g., Ciccone v. Progressive Specialty Ins. Co*., 2020 WL 7319777, at *4 (M.D. Pa. Dec. 11, 2020) (including attorneys' fees of 30

percent of the total of plaintiff's compensatory and treble damages to find that plaintiff's individual claims met the amount in controversy); *Rodriguez v. Burlington County Corrections Dept.*, 2015 WL 790521, at *2 (D.N.J. Feb. 25, 2015) ("The Third Circuit has noted that attorney's fees can be estimated to be as high as 30% of the final judgment."). As outlined above, the Complaint alleges compensatory damages and punitive damages that already exceed the $75,000 threshold for each Individual Plaintiff. But if those damages were increased by another 30 percent to account for attorneys' fees, there can be no doubt that the amount in controversy is satisfied.

37.    Finally, the Individual Plaintiffs seek broad injunctive relief tied to LightBox's ongoing compliance with Daniel's Law. In the Third Circuit, the value of injunctive relief may be considered in determining the amount in controversy, and is measured by the "value of the interest sought to be protected by the equitable relief requested." *Hunter v. Greenwood Trust Co.*, 856 F. Supp. 207, 219 (D.N.J. 1992); *In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994) ("In injunctive actions, it is settled that the amount in controversy is measured by . . . 'the value to the plaintiff to conduct his business or personal affairs free from the activity sought to be enjoyed.'" (citation omitted)). Here, the interest the Complaint putatively seeks to protect is the interest of the Individual Plaintiffs and the Unidentified Covered Persons in their physical safety and freedom from

threatening communications. *See* Compl. ¶¶ 15-23 (alleging that the Individual Plaintiffs face threats to their safety and/or threatening phone calls or text messages based on the disclosure of their home addresses and phone numbers). While LightBox emphatically rejects any allegation that it has engaged in conduct that has endangered this interest, the Individual Plaintiffs and Atlas would surely contend that the value of this interest exceeds $75,000 for each of the Individual Plaintiffs and Unidentified Covered Persons.

38.    Because minimum diversity exists between the parties, and the amount in controversy exceeds $5 million in the aggregate and $75,000 for each Plaintiff, each of the requirements of CAFA mass action jurisdiction are satisfied.

## ALL PROCEDURAL REQUIREMENTS ARE SATSIFIED

39.    **Removal is timely**. As noted above, the Complaint was served upon LightBox on February 23, 2024. LightBox timely removed the action to this Court on March 22, 2024, within 30 days of service of the Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

40.    This Amended Notice relies on documents and information that were produced by Plaintiffs to Lightbox on April 11, 2024. Accordingly, this Amended Notice is timely because it is being filed within 30 days "after receipt by the defendant . . . of a copy of . . . other paper from which it may be first ascertained that the case" is removable under CAFA's mass action provisions. 28 U.S.C.

§ 1446 (b)(3); *see also Portillo v. National Freight, Inc.*, 169 F. Supp. 3d 538, 593 (D.N.J. 2016) (removal under CAFA was timely when made within 30 days of receipt of a "litigation document subsequent to the initial pleading" that showed a basis for removal).

41.     **Removal is to the proper court**. Because Plaintiffs' Complaint was originally filed in the Superior Court of New Jersey, Mercer County, LightBox properly removed the action to the United States District Court for the District of New Jersey, Trenton Division, which encompasses the location in which the Complaint was initially pending in state court (i.e., Mercer County). *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"). As noted above, the case was subsequently designated and assigned to the Honorable Judge Harvey Bartle, III of the United States District Court for the Eastern District of Pennsylvania, along with approximately 60 other related cases filed by Atlas asserting violations of Daniel's Law against various defendants. *See* Dkt. No. 5. The action was subsequently reallocated to the U.S. District Court for the District of New Jersey, Camden Division. *See* Dkt. No. 7

42.    **Rule 11.** This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

43.    **All pleadings and process were attached to LightBox's removal.** Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Summons, Complaint, Notice of Service of Process, and other pleadings were attached to LightBox's March 22, 2024 Notice of Removal as Exhibit A. Exhibit A constitutes all of the process, pleadings, and orders served on LightBox to date in the state court action. Exhibits B and C were attached to LightBox's March 22, 2024 Notice of Removal.

44.    **Notice is being provided forthwith**. Pursuant to 28 U.S.C. § 1446(d), upon filing this Amended Notice of Removal, the undersigned will promptly give written notice of such filing to Plaintiffs through their counsel of record.

**WHEREFORE**, LightBox hereby removes the above-captioned action from the Superior Court, Mercer County and requests that further proceedings be conducted in this Court as provided by law.

Dated: April 22, 2024                    **LATHAM & WATKINS LLP**

/s/ *Kevin M. McDonough*
Kevin M. McDonough
Serrin Turner (*pro hac vice*)
Bradley M. Baglien (*pro hac vice*)
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
       serrin.turner@lw.com
       brad.baglien@lw.com


Scott D. Joiner (*pro hac vice*)
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
Telephone: (415)-395-8878
Email: scott.joiner@lw.com

*Attorneys for Defendants*