# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> BLACKBAUD, INC., et al., <br><br> Defendants. | Civ. Action No. 24-03993-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> WHITEPAGES, INC., et al., <br><br> Defendants. | Civ. Action No. 24-03998-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> HIYA, INC., et al., <br><br> Defendants. | Civ. Action No. 24-04000-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> ACXIOM, LLC, et al., <br><br> Defendants. | Civ. Action No. 24-04017-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COMMERCIAL REAL ESTATE EXCHANGE, INC., et al.,<br><br>Defendants. | Civ. Action No. 24-04073-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CARCO GROUP INC., et al.,<br><br>Defendants. | Civ. Action No. 24-04077-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TWILIO, INC., et al.,<br><br>Defendants. | Civ. Action No. 24-04095-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>6SENSE INSIGHTS, INC., et al.,<br><br>Defendants. | Civ. Action No. 24-04104-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LIGHTBOX PARENT, L.P., et al.,<br><br>Defendants. | Civ. Action No. 24-04105-HB |

ATLAS DATA PRIVACY
CORPORATION, et al.,

               Plaintiffs,

v.

SEARCH QUARRY, LLC, et al.,

               Defendants.

Civ. Action No. 24-04106-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

               Plaintiffs,

v.

ENFORMION, et al.,

               Defendants.

Civ. Action No. 24-04110-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

               Plaintiffs,

v.

COSTAR GROUP, INC., et al.,

               Defendants.

Civ. Action No. 24-04111-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

               Plaintiffs,

v.

ORACLE INTERNATIONAL
CORPORATION, et al.,

               Defendants.

Civ. Action No. 24-04112-HB

---

ATLAS DATA PRIVACY
CORPORATION, et al.,

               Plaintiffs,

v.

RED VIOLET, INC., et al.,

               Defendants.

Civ. Action No. 24-04113-HB

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> RE/MAX, LLC, et al., <br><br> Defendants. | Civ. Action No. 24-04114-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> EPSILON DATA MANAGEMENT, LLC, et al., <br><br> Defendants. | Civ. Action No. 24-04168-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> PEOPLE DATA LABS, INC., et al., <br><br> Defendants. | Civ. Action No. 24-04171-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> CLARITAS, et al., <br><br> Defendants. | Civ. Action No. 24-04175-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br> v. <br><br> DATA AXLE, INC., et al., <br><br> Defendants. | Civ. Action No. 24-04181-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>                    Plaintiffs,<br>v.<br><br>REMINE, INC., et al.,<br><br>                    Defendants. | Civ. Action No. 24-04182-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>                    Plaintiffs,<br>v.<br><br>LUSHA SYSTEMS, INC., et al.,<br><br>                    Defendants. | Civ. Action No. 24-04184-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>                    Plaintiffs,<br>v.<br><br>TELTECH SYSTEMS, INC., et al.,<br><br>                    Defendants. | Civ. Action No. 24-04217-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>                    Plaintiffs,<br>v.<br><br>PEOPLECONNECT, INC., et al.,<br><br>                    Defendants. | Civ. Action No. 24-04227-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>                    Plaintiffs,<br>v.<br><br>CORELOGIC, INC., et al.,<br><br>                    Defendants. | Civ. Action No. 24-04230-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BLACK KNIGHT TECHNOLOGIES, LLC, et al.,<br><br>Defendants. | Civ. Action No. 24-04233-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THOMSON REUTERS CORPORATION, et al.,<br><br>Defendants. | Civ. Action No. 24-04269-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHOREOGRAPH LLC, et al.,<br><br>Defendants. | Civ. Action No. 24-04271-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSUNION, LLC, et al.,<br><br>Defendants. | Civ. Action No. 24-04288-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>            Plaintiffs,<br>v.<br><br>EQUIFAX, INC., et al.,<br><br>            Defendants. | Civ. Action No. 24-04298-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>            Plaintiffs,<br>v.<br><br>SPOKEO, INC., et al.,<br><br>            Defendants. | Civ. Action No. 24-04299-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>            Plaintiffs,<br>v.<br><br>TELNYX LLC, et al.,<br><br>            Defendants. | Civ. Action No. 24-04354-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>            Plaintiffs,<br>v.<br><br>MYHERITAGE, LTD, et al.,<br><br>            Defendants. | Civ. Action No. 24-04392-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>            Plaintiffs,<br>v.<br><br>WILAND, INC., et al.,<br><br>            Defendants. | Civ. Action No. 24-04442-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>         Plaintiffs,<br><br>v.<br><br>VALASSIS DIGITAL CORP., ET AL., et al.,<br><br>         Defendants. | Civ. Action No. 24-04442-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>         Plaintiffs,<br><br>v.<br><br>ATDATA, LLC, et al.,<br><br>         Defendants. | Civ. Action No. 24-04447-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>         Plaintiffs,<br><br>v.<br><br>PRECISELY HOLDINGS, LLC, ET AL., et al.,<br><br>         Defendants. | Civ. Action No. 24-04571-HB |
| ATLAS DATA PRIVACY CORPORATION, et al.,<br><br>         Plaintiffs,<br><br>v.<br><br>OUTSIDE INTERACTIVE, INC., et al.,<br><br>         Defendants. | Civ. Action No. 24-04696-HB |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE LIFETIME VALUE CO. LLC, ET AL., et al., <br><br> Defendants. | Civ. Action No. 24-04850-HB |
| ATLAS DATA PRIVACY CORPORATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FIRST AMERICAN FINANCIAL CORPORATION ET AL, et al., <br><br> Defendants. | Civ. Action No. 24-05334-HB |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CONSOLIDATED MOTION TO REMAND

Plaintiffs Atlas Data Privacy Corporation ("Atlas"), Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, Peter Andreyev, and William Sullivan (together, "Individual Plaintiffs") (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their consolidated motion to remand the above-captioned cases[1] to the Superior Court of New Jersey Law Division for lack of subject matter jurisdiction.

_____

[1] The caption includes only those cases which Plaintiffs seek to remand.

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT........................................................................1

II.  FACTUAL BACKGROUND .......................................................................4

   A.  Daniel's Law .........................................................................................4

   B.  Atlas Data Privacy Corporation...........................................................5

   C.  The Individual Plaintiffs ......................................................................6

   D.  The Atlas Platform................................................................................7

   E.  Defendants Failed to Timely Comply with the Nondisclosure Requests......8

   F.  The Atlas Assignments & Subsequent Lawsuits..........................................9

III.  PROCEDURAL BACKROUND....................................................................10

IV. LEGAL ARGUMENT ...............................................................................11

   A.  Defendants Cannot Satisfy Their Jurisdictional Burden for Removal ........11

   B.  There is Not Complete Diversity Between the Parties................................13

      *i.  The Narrow Exception for "Collusive" Assignments is Not Applicable* ...............................................................14

      *ii. Atlas is the Real Party in Interest for the Assigned Claims* ................19

   C.  The Class Action Fairness Act (CAFA) Provides No Basis For Removal In These Cases ...............................................................21

      *i.  None of the complaints are "class action" complaints*........................23

      *ii. The complaints are not "mass action" complaints* ..............................26

V.  CONCLUSION .............................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*,
   731 F.2d 112 (2d Cir. 1984)................................................................................ 20

*AC Ocean Walk, LLC, Plaintiff, v. Investors Bancorp, Inc. et al.*,
   No. CV 22-6371, 2023 WL 8802531(D.N.J. Dec. 20, 2023) ............................ 12

*Att'ys Tr. v. Videotape Computer Prod., Inc*.,
   93 F.3d 593 (9th Cir. 1996).................................................................. 15, 19, 20

*Auckland v. Rumsey*, No. CIV.A.,
   1994 WL 686621 (E.D. Pa. Dec. 7, 1994).......................................................... 18

*Erie Ins. Exch. by Stephenson v. Erie Indem. Co.* ("*Erie II*"),
   68 F.4th 815 (3d Cir. 2023).......................................................................*passim*

*Erie Ins. Exchange v. Erie Indem. Co.* ("*Erie I*"),
   722 F. 3d 154 (3d Cir. 2013)........................................................................ 22, 25

*Gallagher v. Johnson & Johnson Consumer Companies, Inc.*,
   169 F. Supp. 3d 598 (D.N.J. 2016) .................................................................... 29

*Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*,
   316 F.3d 408 (3d Cir. 2003)............................................................................... 13

*Grassi v. Ciba-Geigy, Ltd.*,
   894 F.2d 181 (5th Cir. 1990)..................................................................... 15, 20, 21

*In re Briscoe*,
   448 F.3d 201 (3d Cir. 2006)............................................................................... 13

*In re Fine Paper Litig. State of Wash.*,
   632 F. 2d 1081 (3d Cir. 1980)............................................................................ 29

*In re Modnafil Antitrust Litig.*,
    837 F. 3d 238 (3d Cir. 2016)................................................................. 29

*Johnson v. SmithKline Beecham Corp.*,
    724 F.3d 337 (3d Cir. 2013)................................................................. 14

*Kramer v. Caribbean Mills, Inc.*,
    394 U.S. 823 (1969) ............................................................................. 16

*Kratovil v. City of New Brunswick*, No. A-,
    2024 WL 1826867 (N.J. Super. Ct. App. Div. Apr. 26, 2024) .............................. 1

*Lomando v. United States*,
    667 F.3d 363 (3d Cir. 2011)................................................................. 22

*Long John Silver's, Inc. v. Architectural Eng'g Prod. Co.*,
    520 F. Supp. 753 (W.D. Pa. 1981) ................................................... 18, 19

*Mahoney v. Emerson Elec. Co.*,
    478 F. Supp. 3d 1051 (D. Idaho 2020) ............................................... 29

*McCann v. Newman Irrevocable Tr.*,
    458 F.3d 281 (3d Cir. 2006)................................................................. 12

*Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, No.,
    2018 WL 4089062 (D.N.J. Aug. 27, 2018) ......................................... 18

*Miss. ex rel. Hood v. AU Optronics Corp.*,
    571 U.S. 161 (2014) ............................................... 23, 26, 27, 28, 29

*O'Brien v. AVCO Corp.*,
    425 F.2d 1030 (2d Cir. 1969).............................................................. 15

*Samuel-Bassett v. KIA Motors Am., Inc.*,
    357 F.3d 392 (3d Cir. 2004)........................................................... 11, 12

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008) ............................................................................. 15

*Sw. Airlines Pilots Ass'n v. Boeing Co.*,
  613 F. Supp. 3d 975 (N.D. Tex. 2020) ................................................. 29

*Uriarte v. Outback Steakhouse*,
  2011 WL 4020953 (D.N.J. Sept. 8, 2011) ........................................ 18

*Yokeno v. Mafnas*,
  973 F.2d 803 (9th Cir. 1992) ............................................................. 15

**Federal Statutes**

28 U.S.C. § 1332 ............................................................................. 13, 14

28 U.S.C. § 1332(11)(B) ........................................................... 26, 27, 28

28 U.S.C. § 1332(11)(B)(i) ................................................................. 26

28 U.S.C. § 1332(a) ........................................................................... 13

28 U.S.C. § 1332(c)(1) ....................................................................... 14

28 U.S.C. § 1332(d) ........................................................................... 12

28 U.S.C. § 1332(d)(1)(B) .......................................................... 21, 23, 24

28 U.S.C. § 1332(d)(1)(D) ............................................................ 27, 28

28 U.S.C. § 1332(d)(5)(B) ................................................................. 27

28 U.S.C. § 1332(d)(11)(B) ............................................................... 28

28 U.S.C. § 1332(d)(11)(B)(i) ............................................................ 28

28 U.S.C. § 1359 ............................................................................... 15

28 U.S.C. § 1441(a) ........................................................................... 12

28 U.S.C. § 1446(b) ........................................................................... 13

28 U.S.C. § 1447(c) ........................................................................... 13

iv

28 U.S.C. § 1453 ................................................................................... 12

**State Statutes**

N.J.S.A. 2C:20-31.1 ............................................................................. 4

N.J.S.A. 47:1A-1 ................................................................................. 4

N.J.S.A. 56:8-166.3 ............................................................................ 22

N.J.S.A. 56:8-166.1 ............................................................................. 4

N.J.S.A. 56:8-166.1(b) .......................................................... 5, 10, 18, 30

N.J.S.A. 56:8-166.1(d) ........................................................................ 10

**Rules**

Fed. R. Civ. P. 12(h)(3) ....................................................................... 13

Fed. R. Civ. P. 20 .............................................................................. 28

Fed. R. Civ. P. 23 ........................................................... 22, 23, 24, 25, 26

New Jersey Court Rule 4:32 ................................................................ 22

## I.    PRELIMINARY STATEMENT

New Jersey's Daniel's Law prohibits data brokers from disclosing the home addresses and home telephone numbers of judges, prosecutors, and law enforcement officers and their eligible family members who have requested nondisclosure. It was enacted "to prevent further attacks on certain government officials and their families." *Kratovil v. City of New Brunswick*, No. A-0216-23, 2024 WL 1826867, at *4 (App. Div. Apr. 26, 2024). Just last week, while upholding the constitutionality of Daniel's Law, the New Jersey Appellate Division ruled that the Law's purpose in "protecting State officials from potential acts of violence and harassment" is a compelling "government interest of the highest order." *Id.* at 8.[2] Plaintiffs agree, and so did numerous defendants at the initial status conference on April 18, 2024, before this Court.

The many cases before the Court are statutory actions under Daniel's Law filed to protect covered persons and their families from the named defendants' harmful disclosures. For these cases, Plaintiffs have no preference between federal court or state court. What Plaintiffs care about is that the cases move forward efficiently, and that these defendants stop disclosing the home addresses and telephone numbers of covered persons in violation of Daniel's Law. What Plaintiffs

---

[2] A true and correct copy of this decision is attached to the enclosed Certification of Rajiv D. Parikh ("Parikh Cert.") at Exh. A.

care about is the safety of the covered persons and their families. Plaintiffs welcome the opportunity to litigate these important claims in federal court, expeditiously before this Court. That is evident from the fact that Plaintiffs have appeared and are actively seeking to coordinate the expeditious administration of those cases where jurisdiction exists based on the substantial amount of damages at issue and also complete diversity among the parties.

As this Court knows, to proceed in federal court, there must be subject matter jurisdiction. Parties cannot stipulate to subject matter jurisdiction. And a defendant cannot manufacture subject matter jurisdiction based on false misrepresentations to the Court regarding the facts in a given case or the misapplication of the law. This is a gating issue for federal courts.

For thirty-nine (39) of the seventy-one (71) cases removed to this Court (the "Remand Actions" identified in the caption), Plaintiffs now respectfully seek remand because Defendants' removals were based on false assertions of fact and a misapplication of the law. In these cases, there is no complete diversity and no basis to otherwise proceed in federal court. Even if Plaintiffs wanted to proceed in federal court with these cases, subject matter jurisdiction is lacking. These thirty-nine (39) cases must be remanded because:

- There is no complete diversity in any of these cases between the Plaintiffs and the Defendants, and it would be illogical, irrational, and incorrect to find that

2

thousands of law enforcement officers and other covered persons somehow colluded to destroy diversity for an ad hoc subset of cases within a group of over a hundred different cases with dozens of different defendant citizenships.

- Further, as applied in these cases, the relevant factors demonstrate that Atlas is the real party in interest where there was a complete, exclusive, and irrevocable assignment of rights under circumstances wholly divorced from and without consideration of the citizenship of the parties or the subject matter jurisdiction of this Court. Plaintiffs are composed of not just Atlas, but law enforcement officers who are highly-respected in the community – including Mr. Colligan, who until very recently, was the president of the largest law enforcement union in the State, the New Jersey State Policemen's Benevolent Association (the PBA). To say that these officers and the PBA would engage in "sham"-assignments is to add insult to injury.

- Removal is also impermissible under CAFA because asserting lawfully-assigned claims under Daniel's Law is not akin to a class action or a mass action. Courts do not look beyond the real parties in interest—the named Plaintiffs—to determine if the case is brought on behalf of enough people for CAFA removal, and Defendants' removal petitions reflect a clear misapplication of the law.

## II.    FACTUAL BACKGROUND

### A.    Daniel's Law

New Jersey enacted Daniel's Law in November 2020 (N.J.S.A. 47:1A-1, et seq., N.J.S.A 56:8-166.1 and N.J.S.A. 2C:20-31.1) in response to the tragic murder of the son of a New Jersey federal Judge, who was shot dead by a gunman that found the home addresses of his victims through various data broker resources available on the internet. Complaint ¶¶ 5–8.[3] Daniel's Law seeks to safeguard the personal information of current and former judges, prosecutors, law enforcement officers, prosecutors, and their eligible family members (i.e., "Covered Persons"), by providing a statutory framework for Covered Persons to prohibit and enforce data brokers from disclosing or redisclosing their home addresses or unpublished home telephone numbers. *Id.* ¶ 9. Within ten business days of receiving a nondisclosure request from a Covered Person, a data broker must cease to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer," or otherwise "make[] available or viewable within a searchable list or database," a Covered Person's personal information. *Id.*

---

[3] For ease of consideration, citations to "Complaint" herein refer to the case *Atlas Data Privacy Corp., et al v. Transunion, LLC, et al*, No. 1:2024-cv-04288. The other complaints contain the same allegations but may be at different paragraphs.

Daniel's Law provides a clear enforcement mechanism for Covered Persons to vindicate their rights and expressly authorizes the use of assignments: "[a] person, business, or association that violates [Daniel's Law] shall be liable to the covered person *or the covered person's assignee*, who may bring a civil action in the Superior Court." N.J.S.A § 56:8-166.1(b) (emphasis added). "Assignee" is defined as "a person or entity to whom or which an authorized person has assigned, in writing, a covered person's right to bring a civil action for a violation of [Daniel's Law]." *Id.* § 56:8-166.1(d). Given the sensitive and important nature of Daniel's Law, it should not be surprising that data brokers failing to timely comply with a Covered Person's nondisclosure request are subject to *mandatory* statutory penalties. *Id.* § 56:8-166.1(c)-(1) ("The court *shall* award … actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act.") (emphasis added).

### B.    Atlas Data Privacy Corporation

Atlas Data Privacy Corporation was formed in 2021, years before any of these lawsuits were filed. *See* Parikh Cert., Exh. F. Like many other companies, Atlas was incorporated in Delaware. *Id.* Its headquarters are in New Jersey. Complaint ¶ 24. Concerned about the safety and protection of law enforcement officers and others covered by Daniel's Law, Atlas set out to create a process by which Covered Persons could efficiently enforce their rights under Daniel's Law against the many hundreds

of data brokers trafficking in protected information. To that end, Atlas developed an online data privacy platform, including an email service named AtlasMail, specifically for judges, prosecutors, state troopers, police and correctional officers, and other Covered Persons such as family members. *See id.* ¶¶ 31-34 (detailing the Atlas Mail email service). Atlas works with and provides access to its data privacy platform to members of the New Jersey State PBA, the Metropolitan Transportation Authority Police Benevolent Association, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them under the law. *Id.* ¶ 30. Presented with the first meaningful opportunity to protect their families from harassment and threats, tens of thousands of eligible individuals signed up and utilized Atlas's services to demand compliance by these Defendants with Daniel's Law. *See id.* ¶ 25.

### C.    The Individual Plaintiffs

All complaints include claims asserted not only by Atlas but also certain individuals (the "Individual Plaintiffs"). The Individual Plaintiffs are all New Jersey law enforcement officers that have experienced threats and, in some instances, acts of violence targeting them and their families as a result of their public service. *See*

Complaint, ¶¶ 15–23. Plaintiff Patrick Colligan is a veteran of the Franklin Township Police Department in Somerset, New Jersey, and until recently served as the president of the New jersey State PBA. *Id.* ¶ 22. Plaintiff Jane Doe-1 is a police officer working and residing in northern New Jersey. *Id.* ¶ 15. Plaintiff Jane Doe-2 is a veteran correctional police officer living in northern New Jersey. *Id.* ¶ 16. Plaintiff Edwin Maldonado, now retired, was an officer in the Plainfield, New Jersey Police Department. *Id.* ¶ 17. Plaintiffs Scott Maloney and Justyna Maloney are Rahway, New Jersey police officers and a married couple residing together in New Jersey. *Id.* ¶ 18. Plaintiff William Sullivan is a veteran of the New Jersey Department of Corrections and the President of New Jersey PBA Local 105, the association representing correctional police officers from the Department of Corrections and the Juvenile Justice Commission. *Id.* ¶ 23. All of the Individual Plaintiffs signed up and utilized Atlas's services for the purpose of enforcing their rights under Daniel's Law. *Id.* ¶ 27.

### D. The Atlas Platform

Atlas's platform identifies approximately 1,000 data brokers operating in the United States that may be disclosing Covered Persons' protected information and provides Covered Persons the tools and choice to enforce their privacy rights under Daniel's Law. *Id.* ¶ 31. Upon signing up for Atlas's platform, a Covered Person is asked a series of questions to collect required personal information and verify their

eligibility as a Covered Person under Daniel's Law. *Id.* ¶ 32. Once eligibility is confirmed, each Covered Person receives their own AtlasMail email account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use. *Id.* This AtlasMail account provides an extra layer of privacy and security for the Covered Person as they communicate with data brokers.

On the Atlas platform, each Covered Person is presented with lists of hundreds of potential data brokers to which they can send nondisclosure requests. *Id.* ¶ 33. The Covered Person is solely responsible for selecting which data brokers, if any, to send nondisclosure requests. *Id.* After inputting and reviewing their home addresses and unpublished home telephone numbers, the Covered Person reviews the template nondisclosure request that will be sent to the data brokers of their choice. *Id.* ¶ 32. The final step is for the Covered Person to send the nondisclosure requests via their AtlasMail account. *Id.* ¶ 34.

### E.    Defendants Failed to Timely Comply with the Nondisclosure Requests

All of the Defendants in the above-captioned cases are entities that violated Daniel's Law by disclosing, re-disclosing, or otherwise making available the personal information of Covered Persons more than ten business days after the nondisclosure requests were sent. *See, e.g.,* Complaint, ¶¶ 36–40, 54. Using the Atlas platform, the Individual Plaintiffs and Covered Persons selected the Defendants and sent nondisclosure requests to each of them. *Id.* ¶ 52. Plaintiffs filed these cases

because Defendants failed to comply with the nondisclosure request within the requisite statutory ten business days, and in many cases, continue to disclose the home addresses and phone numbers of these Covered Persons in defiance of the clear mandate of this State. *Id.* ¶ 54.

### F. The Atlas Assignments & Subsequent Lawsuits

As part of Atlas's terms of service, Covered Persons who send nondisclosure requests to data brokers agree to assign all claims under Daniel's Law to Atlas in exchange for substantial consideration. *See* Parikh Cert., Exh. E, Atlas Service Terms, 4(e)(ii).[4] Atlas assesses the data broker's noncompliance after the ten-business day compliance period expires. Thereafter, a Covered Person receives an Assignment Confirmation. As evidenced by the exemplary assignment produced by Plaintiffs to these Defendants, the Assignment Confirmation irrevocably grants Atlas the complete, exclusive, and irrevocable right to bring a civil enforcement action for violations of the Covered Person's rights under Daniel's Law:

> This writing shall constitute the Assignment Confirmation under the Terms with respect to the above-referenced Assigned Claim, and shall trigger and confirm Your ***irrevocable assignment*** to Assignee as of the Effective Date of all of Your rights to bring civil enforcement actions (including the rights to seek damages, other legal remedies, and fees, costs, and litigation expenses) for violations of Your rights under the Act with respect to the Assigned Claim and following such assignment,

---

[4] The Individual Plaintiffs did not assign their claims to Atlas and instead elected to enforce their rights as named plaintiffs pursuant to section 4(e)(i) of Atlas's terms of service. *See* Parikh Cert., Exh. E, Atlas Service Terms, 4(e)(i).

the *Assignee will have the exclusive right to bring such civil enforcement actions* anywhere in the world with respect to the Assigned Claim. Assignee will share proceeds from enforcement of the Assigned Claim pursuant to the Terms.

*See* Parikh Cert., Exh. D, Atlas Exemplar Assignment (emphasis added).

The Atlas assignments are expressly authorized by Daniel's Law as a mechanism to enforce a Covered Person's rights. *See* N.J.S.A § 56:8-166.1(b) ("A person, business, or association that violates [Daniel's Law] shall be liable to the covered person *or the covered person's assignee*, who may bring a civil action in the Superior Court." (emphasis added); *see also*, §56:8-166.1(d) (defining "assignee" as "a person or entity to whom or which an authorized person has assigned, in writing, a covered person's right to bring a civil action for a violation of [Daniel's Law].").

Consistent with the framework of Daniel's Law and the written assignment of litigation rights, Atlas properly asserted claims (along with the Individual Plaintiffs) in separate actions in New Jersey Superior Court as an assignee for tens of thousands of individual Covered Persons whose rights had been violated by the defendant-data brokers.

## III.    PROCEDURAL BACKROUND

Beginning in February 2024, after it became clear that many companies were violating Daniel's Law by continuing to disclose protected information, Plaintiffs filed a series of actions in New Jersey Superior Court to enforce Daniel's Law. In

response, in seventy-one (71) of the cases, the named defendants filed substantively identical notices of removal.

On April 18, 2024, the Court held a status conference to address common issues across all of the removed cases, including, among other things, subject matter jurisdiction. *See* Parikh Cert., Exh. B. As a result of the status conference, the Court ordered all of the removed cases stayed through May 7, 2024, except as to any motions of Plaintiffs to remand and supporting briefs. *Id.* at Exh. C.

Pursuant to the Court's April 22, 2024 Order, Plaintiffs file this consolidated motion seeking to remand thirty-nine (39) of the removed seventy-one (71) cases where, taking Defendants' asserted citizenship at face value, it is clear complete diversity between the parties does *not* exist (collectively, the "Remand Actions"). These thirty-nine (39) Remand Actions are the subject of the present motion.

## IV.   LEGAL ARGUMENT

### A.   Defendants Cannot Satisfy Their Jurisdictional Burden for Removal

Unlike what might be typical in many jurisdictional disputes, Plaintiffs do not bring this remand motion for the purpose of avoiding federal jurisdiction. Plaintiffs, including the individual Plaintiffs who are respected amongst their community and constituency, would readily accept this Court's jurisdiction over the Remand Actions and proceed with all seventy-one (71) removed cases in federal court. But

11

Plaintiffs cannot simply consent to subject matter jurisdiction. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

Federal courts are courts of limited jurisdiction, and the burden falls on the Defendants to prove by a preponderance of the evidence that the case is properly before the court. *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 290 (3d Cir. 2006); *see also AC Ocean Walk, LLC, Plaintiff, v. Investors Bancorp, Inc. et al.*, No. CV 22-6371, 2023 WL 8802531, at *3 (D.N.J. Dec. 20, 2023) (requiring "clear and convincing evidence" for removal on the basis of fraudulent joinder). This is no easy task, and all doubts concerning removal should be resolved in favor of remand. *Samuel-Bassett v. Kia Motors Corp.*, 357 F.3d 392, 396, 403 (3d Cir. 2004).

Here, Defendants advance two meritless theories in support of subject matter jurisdiction: (1) the Court should disregard the lack of complete diversity between the parties on the basis that the Atlas assignments were made "collusively" to avoid federal jurisdiction and without Atlas being the real party in interest; and (2) the Court should also disregard the pleadings and find that these actions somehow constitute class actions or mass actions that would provide support for jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), 28 U.S.C. §§ 1441(a)-(b), and 28 U.S.C. § 1453.[5]

---

[5] In two actions, *Atlas Data Privacy Corp., et al v. MyHeritage, LTD., et al*, No. 1:2024-cv-04392 and *Atlas Data Privacy Corp., et al v. Thompson Reuters Corp., et al.*, No. 1:2024-cv-04269, the defendants also assert fraudulent joinder as a basis for

As explained below, both of Defendants' arguments fail, falling flat in the face of the State's mandate for assignability. Defendants cannot prove that subject matter jurisdiction exists here with the Remand Actions, and these thirty-nine (39) cases must therefore be remanded back to state court.[6] 28 U.S.C. § 1447(c); Fed. R. Civ. P. 12(h)(3).

## B.    There is Not Complete Diversity Between the Parties

Under 28 U.S.C. § 1332, the parties must be completely diverse, meaning that "no plaintiff can be a citizen of the same state as any of the defendants," and the matter in controversy must exceed the sum or value of $75,000. *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003); 28 U.S.C. § 1332(a). For jurisdictional purposes, "a corporation is a

---

diversity jurisdiction. For the same reasons Defendants' collusive assignment theory fails, so does the fraudulent joinder argument. *See In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (holding fraudulent joinder only applicable if party was joined for the purpose of defeating jurisdiction).

[6] As a separate basis for remand, defendants filed untimely notices of removal in the following actions: *Atlas Data Privacy Corp., et al. v. First American Financial Corporation et al.*, No. 1:2024-cv-05334; *Atlas Data Privacy Corp., et al. v. Precisely Holdings, LLC et al.*, No. 1:2024-cv-04571; *Atlas Data Privacy Corp., et al. v. Valassis Digital Corp., et al*., No. 1:24-cv-04442; *Atlas Data Privacy Corp., et al. v. Outside Interactive, Inc.,* 2:24-cv-04696. *See* 28 U.S.C. § 1446 (b) ("The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant through service or otherwise, of a copy of the initial pleading.").

citizen of both its state of incorporation and the state 'where it has its principal place of business.'" *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 347 (3d Cir. 2013) (quoting 28 U.S.C. § 1332(c)(1)).

Plaintiff Atlas is a Delaware corporation with its principal place of business located in New Jersey. *See* Complaint, ¶ 24. Therefore, for diversity purposes, Atlas is a citizen of Delaware and New Jersey. The Individual Plaintiffs are all New Jersey law enforcement officers, residing in New Jersey. *See* Complaint, ¶¶ 15–23. For complete diversity to exist in a case with these Plaintiffs, therefore, no defendant can be a citizen of either New Jersey or Delaware.

For purposes of evaluating jurisdiction, Plaintiffs rely on the asserted citizenship of the defendant entities as stated in the removal papers. Accepting defendants' citizenship as true, Plaintiffs agree diversity jurisdiction exists on the face of thirty-two (32) of the removed actions and therefore, do not seek to remand those actions. However, in the thirty-nine (39) Remand Actions it is facially apparent from the removal papers that one or more of the named defendants are citizens of either Delaware or New Jersey. Thus, the parties in the Remand Actions do not have diverse citizenship and subject matter jurisdiction does not exist. 28 U.S.C. § 1332.

i.   *The Narrow Exception for "Collusive" Assignments is Not Applicable*

Defendants' contention that Atlas's Delaware citizenship should be disregarded on the basis that the assignments were somehow "collusive" is meritless.

14

Recognizing that some parties may use diversity gamesmanship to artificially affect jurisdiction, Congress enacted 28 U.S.C. §1359, which states that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359; *see also Att'ys Tr. v. Videotape Computer Prod., Inc*., 93 F.3d 593, 596 (9th Cir. 1996).

The policy and purpose behind Section 1359 is to prevent parties from entering into "sham transactions" aimed at manipulating federal jurisdiction. *O'Brien v. AVCO Corp.*, 425 F.2d 1030, 1033 (2d Cir. 1969); *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992) ("The federal anti-collusion statute is aimed at preventing parties from manufacturing diversity jurisdiction to inappropriately channel ordinary business litigation into the federal courts."); *see also Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990) ("Because of their similarity, assignments which destroy diversity and assignments which create diversity should be analyzed under the same standard"). Section 1359 provides only a narrow exception to the rule that assignees are treated as real parties in interest. *See, e.g.*, *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008) (collecting assignment cases). This exception can only be invoked when it is clear from the circumstances of the case that a party manufactured a fraudulent, illusory, or sham assignment for the purpose of manipulating the court's jurisdiction. *See,*

*e.g., Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 824 (1969) (finding collusive assignment where Texas resident took assignment interest from Panama corporation in exchange for one dollar, after which Texas resident entered into agreement with Panama corporation promising to pay back 95% of any net recovery on the assigned cause of action).

This narrow exception has no place in these cases where the circumstances make it overwhelmingly clear that Atlas's assignments could not have possibly been made for the purpose of manipulating this Court's jurisdiction – a position by Defendants that is especially absurd given the circumstances in these Daniel's Law cases, and the participation of reputable individual Plaintiffs. For Defendants' "collusive" assignment theory to hold water, each of the thousands of law enforcement officers and other Covered persons, at the time of the nondisclosure requests and assigning their litigation rights to Atlas, would need to have known and understood the legal concept of diversity jurisdiction, evaluated the corporate structure of hundreds of data brokers, and then elected to send nondisclosure requests to certain data brokers incorporated under the laws of Delaware or New Jersey for the express purpose of destroying this Court's jurisdiction and avoiding federal court. Then they would have had to convince the president of the PBA to participate and file individually as well. The argument is unfathomable. The Covered Persons signed up for Atlas's services and agreed to assignment to enforce their

rights under Daniel's Law and protect themselves and their families. Defendants have presented not a shred of evidence suggesting in any way that these lawful assignments—expressly permitted under Daniel's Law by the State Legislature—had anything to do with jurisdiction or were in any way based on any jurisdictional implications. Indeed, as is apparent from the complaints filed against these Defendants and others, the Plaintiffs' only concern here was and remains enforcing their rights under Daniel's Law, including by making Defendants remove their protected information. Neither the Covered Persons nor Atlas had any reason to believe that the Defendants here would fail to comply with their obligations under Daniel's Law versus other companies that did comply. Any allegation of any "collusive" behavior or assignment by these thousands of hard-working law enforcement officers and their family members is entirely implausible, offensive, and wholly denied by Plaintiffs.

Moreover, Defendants' "collusive" assignment theory is illogical given the nature and sheer number of Atlas cases. In a single action with a few parties, a court may have occasion to explore an assignment to determine whether it is in fact a sham. The same considerations, however, are not present here where Plaintiffs have filed over one hundred cases against hundreds of defendants. It is irrational for Defendants to suggest that Atlas was made an assignee to keep this subset of thirty-nine (39) removed cases in state court. There is no rationale to explain why Plaintiffs

would target just these Remand Actions out of the dozen similarly situated Defendants currently sitting before this Court in the removed cases, because Defendants' claim is simply untrue. It is not enough to cry "collusion" simply because Atlas happens to have the same Delaware citizenship as this subset of Defendants. That happens all the time because Delaware is a common state of incorporation for companies, assignors and defendants alike. Removal cannot be based on the happenstance that the assignor and the Defendants are incorporated in Delaware.

Finally, what "sham" can there be when assignments of this nature are expressly authorized by the statute, and unanimously passed in the Legislature and signed by the Governor? N.J.S.A § 56:8-166.1(b). The collusion Defendants allege is no more than the Covered Persons assigning their rights exactly as contemplated by Daniel's Law. The circumstances of these cases cannot support a finding of "collusive" assignment. *See, e.g., Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, No. CV 17-13086, 2018 WL 4089062, at *4 (D.N.J. Aug. 27, 2018) (finding no collusive assignment); *Uriarte v. Outback Steakhouse*, No. CIV.A. 11-897 JLL, 2011 WL 4020953, at *4 (D.N.J. Sept. 8, 2011) (finding no collusive joinder); *Auckland v. Rumsey*, No. CIV.A. 94-6571, 1994 WL 686621, at *2 (E.D. Pa. Dec. 7, 1994) (finding no collusive assignment); *Long John Silver's, Inc. v. Architectural Eng'g*

*Prod. Co.*, 520 F. Supp. 753, 756 (W.D. Pa. 1981) (same). The Court need not look further.

### ii. *Atlas is the Real Party in Interest for the Assigned Claims*

Should the Court wish to further examine the particular circumstances of the Atlas assignment (something that is unnecessary in terms of granting this motion), the critical inquiry is whether the assignee—Atlas—is truly a real party in interest or just a "strawman" used to create or destroy jurisdiction. *Att'ys Trust*, 93 F.3d at 597. Courts look to a number of factors to evaluate the assignment; no single factor is controlling. *Long John Silver's, Inc.*, 520 F. Supp. 753 at 755 (weighing factors and holding party invoking diversity failed to establish collusive assignment).

In evaluating the motive behind the assignments, and as discussed *supra*, it is clear from the pleadings and context of this litigation that the Covered Persons assigned their litigation rights to Atlas for the purpose of collectively prosecuting and enforcing Daniel's Law, not for the purpose of affecting jurisdiction. Any other inference is wholly implausible, and a departure from the literal text of Daniel's Law, which authorizes such assignments. *See, e.g., Long John Silver's, Inc.*, 520 F. Supp. 753 at 757 ("[W]e conclude that the undeniable legitimate independent interest which [plaintiff] has in this dispute is sufficient to overcome any suggestion that collusion may be inferred from the circumstances cited by [defendant] in its speculative argument based on possible motive.").

Further weighing against any finding of collusion is the type of assignment given to Atlas: the Covered Persons conveyed *complete and exclusive*—not partial—assignments. "An unequivocal and complete assignment extinguishes the assignor's rights against the obligor and leaves the assignor without standing to sue the obligor." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984). The Atlas assignments make clear that in exchange for the services provided by Atlas, the assignors *completely* relinquished their rights to bring claims under Daniel's Law to Atlas. Atlas in turn obtained the exclusive and irrevocable right to bring and litigate these civil enforcement actions. *See* Parikh Cert., Exh. D, Atlas Exemplar Assignment ("The Assignee will have the exclusive right to bring such civil enforcement actions anywhere in the world with respect to the Assigned Claim."). The nature of Atlas's complete assignments confirms its position as a real party in interest and belies any argument that Atlas is merely a strawman inserted into the litigation for the purpose of manipulating jurisdiction. *Att'ys Trust,* 93 F.3d at 596 ("Broadly speaking, if an assignment is entire, not partial, there is a very good chance that it will be found to be proper.").

Defendants largely rely on *Grassi* in support of their collusion argument, but the facts of *Grassi* bear no resemblance to the present case. In the readily distinguishable Fifth Circuit case, *Grassi v. Ciba–Geigy, Ltd.*, 894 F.2d 181 (5th Cir. 1990), the plaintiffs who brought a state court suit against a Swiss corporation

assigned only a two percent interest in their claim to a Costa Rican corporation, allegedly in exchange for the corporation's investigation and collection work relating to the judgment and the award. *Id.* The partial, two percent assignment that was guaranteed to affect the jurisdiction of the case supported a finding that the "overriding motive behind the present assignment was the desire of the Grassis to remain in state court." *Id.* at 186. In contrast to the *Grassi* assignment, the Atlas assignments convey full litigation rights, and there is no basis for any finding that this was in any way motivated by a desire to defeat diversity jurisdiction. In addition, the Covered Persons provided to Atlas exactly what the State legislature authorized, which was not present in *Grassi*. As the Covered Persons and Atlas did not collude for the purpose of manipulating jurisdiction, it would be improper for the Court to disregard Atlas's citizenship in its jurisdictional analysis.

### C.    The Class Action Fairness Act (CAFA) Provides No Basis For Removal In These Cases

Defendants' only other basis for removal is their assertion that removal is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d)(1)(B). CAFA, however, does not provide this Court with jurisdiction over any of these cases. These cases are neither a "class action" nor a "mass action" under the plain and obvious meaning of the CAFA's language, and CAFA provides no subject matter jurisdiction in these cases.

The analysis does not change even if this Court attempts to go beyond the pleadings. The Third Circuit has squarely held—twice—that "[n]o amount of piercing the pleadings will change the statute or rule under which the case is filed." *Erie Ins. Exch. by Stephenson v. Erie Indem. Co.* ("*Erie II*"), 68 F.4th 815, 820 (3d Cir. 2023), *cert. denied*, No. 23-434, 2024 WL 759808 (U.S. Feb. 26, 2024) (citing *Erie Ins. Exchange v. Erie Indem. Co.* ("*Erie I*"), 722 F. 3d 154, 160 (3d Cir. 2013). Thus, if Plaintiffs did not bring their action in state court under a statute or rule of procedure similar to Rule 23, the case is not a "class action" under CAFA and minimal diversity is accordingly not sufficient for subject-matter jurisdiction. *Erie II*, 68 F.4th at 820–21. Because Plaintiffs did not bring their action under New Jersey Court Rule 4:32 (governing class actions), or any other statute or rule similar to Rule 23, this is not a "class action" for purposes of CAFA.

Indeed, the State legislature chose to allow assignees to bring the claims of Covered Persons, and it explicitly chose to not use words such as "class actions" or "mass actions." When possible, courts must enforce the intent and goals of the legislature. *Lomando v. United States*, 667 F.3d 363, 385 (3d Cir. 2011); *see also* N.J.S.A. § 56:8-166.3 ("This act shall be liberally construed in order to accomplish its purpose and the public policy of this State, which is to enhance the safety and security of certain public officials in the justice system."). While Plaintiffs can just as easily proceed as a class action or mass actions—especially given the breadth of

the assignments from the Covered Persons—Plaintiffs are merely carrying out what the State allowed, lawsuits by assignment.

In addition, this case is not a "mass action," because there are fewer than 100 named plaintiffs, and the Supreme Court in *Hood* squarely and unanimously rejected the very argument presented by Defendants here that the Court should look beyond the pleadings and stretch the meaning of the word "plaintiffs" beyond its plain and ordinary meaning of a "party who brings a civil suit in a court of law." *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 170–71 (2014). The Supreme Court wisely concluded that such an approach would create an "administrative nightmare that Congress could not possibly have intended," because "when judges must decide jurisdictional matters, simplicity is a virtue." *Id.* at 171–73.

Because both the plain language of CAFA and Supreme Court precedent instruct that this Court lacks subject matter jurisdiction, the actions should be remanded.

### i.   *None of the complaints are "class action" complaints*

Defendants cannot take advantage of CAFA's less stringent, minimal diversity jurisdiction because none of these cases were filed in state court under any rule or statute similar to Rule 23's class action procedure.[7] 28 U.S.C. §1332(d)(1)(b).

---

[7] In contrast, Plaintiffs filed a class action complaint against LexisNexis Risk Data Management, LLC ("LexisNexis") on behalf of other Covered Persons. *See Atlas Data Privacy Corp., et al. v LexisNexis Risk Data Management, LLC, et al.,* No.

The Third Circuit in *Erie II* held that "CAFA's text leaves **no wiggle room**" for any interpretation apart from the following: CAFA applies to an action "**only if** it is 'filed under' a 'State statute or rule of judicial procedure' that 'authorizes an action to be brought by 1 or more representative persons as a class action' and otherwise is 'similar' to Rule 23." *Erie II*, 68 F. 4th at 820–21 (quoting 28 U.S.C. § 1332(d)(1)(B) and ruling that "CAFA's text leaves no wiggle room" for the argument presented by Defendants) (emphasis added).

Plaintiffs filed these cases as individual actions under New Jersey's Daniel's Law—a statute that bears no semblance to Rule 23. As the complete assignee of the claims of certain Covered Persons with the exclusive right to bring the assignors' Daniel's Law claims either individually or conjunctively, Atlas's role is wholly distinct from that of a class representative whose claims are similar to that of other individuals; instead, Atlas is the only party who may bring the claims of the assignors. Plaintiffs' Complaint does not involve or invoke any other New Jersey statute or rule similar to Rule 23. As such, the plain language of CAFA does not authorize this Court to exercise jurisdiction over this action, and "no wiggle room" remains in which Defendants could invoke this Court's jurisdiction under CAFA.

---

1:24-cv-04566. LexisNexis removed the class action to federal court pursuant to CAFA with no objection from Plaintiffs.

*Erie II*, 68 F. 4th at 820–21. Again, Plaintiffs sued as they were permitted under the unambiguous language of Daniel's Law.

Even if this Court were to accept the Defendants' invitation "to look beyond the complaint," it will quickly find that CAFA's "quintessentially legal requirements" foreclose federal jurisdiction. *Erie II*, 68 F. 4th at 820. Defendants did not allege in their notices of removal that Plaintiffs' original actions in New Jersey Superior Court were filed under a State analogue to Rule 23, because they could not allege that. They were not. These were individual actions, filed by individual plaintiffs against the Defendants. The fact that Plaintiffs did not file their original action in New Jersey Superior Court under any State statute or rule of procedure similar to Rule 23 fatally dooms Defendants' argument. *See Erie II*, 68 F. 4th at 818, 820 (citing *Erie I*, 722 F.3d at 160).

Defendants' apparent suggestion that this Court can simply look to the number of claims assigned to Atlas—rather than apply the law as Congress wrote it—to determine whether CAFA affords this Court jurisdiction is clearly wrong. The Third Circuit in *Erie II* recognized that while courts under CAFA may look beyond the pleadings to determine whether "factual predicates" not pleaded in the complaint might support jurisdiction under CAFA—specifically, the factual predicate of the amount in controversy—courts cannot look beyond the pleadings to circumvent CAFA's "quintessentially legal requirement[s]." *Erie II*, 68 F. 4th at 820. Whether

Plaintiffs filed their case in New Jersey Superior Court under a statute or rule similar to Rule 23 is a "quintessentially legal" question that "no amount of piercing the pleadings will change." *Id.* As the Third Circuit explained:

> [W]e will look beyond the four corners of a complaint only when addressing factual predicates, not legal requirements, for our subject matter jurisdiction . . . . And indeed, the overwhelming majority of CAFA cases in which courts have looked beyond the four corners of the complaint have turned on CAFA's amount in controversy requirement—a quintessentially factual inquiry . . . . But the primary obstacle preventing *this* case from falling within CAFA's definition of a class action is a quintessentially legal requirement: whether the Pennsylvania procedural rules governing Exchange's claim are similar to Rule 23. Search as we might, there are no facts beyond the Complaint that could alter our conclusion that the relevant state rules are dissimilar to Rule 23 and that this case therefore falls beyond the scope of CAFA jurisdiction.

*Id.* (emphasis in original) (internal citations omitted). As in *Erie II*, because "[n]o amount of piercing the pleadings will change the statute or rule under which the case is filed," this Court need only ask whether Plaintiffs filed this action under a New Jersey statute or rule of procedure analogous to Rule 23. They did not. The inquiry ends there.

### ii.    The complaints are not "mass action" complaints

The Supreme Court's decision in *Hood* disposes of any notion that these cases are "mass actions" under 28 U.S.C. § 1332(11)(B)(i). *Hood* stands for the straightforward principle that the term "plaintiffs" as used in 28 U.S.C. § 1332(11)(B) means exactly what it says. *Hood*, 571 U.S. at 168–69. Under CAFA,

"the term 'mass action' means any civil action ... in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(11)(B).

In *Hood*, the question was whether this provision of CAFA "also includes suits brought by fewer than 100 named plaintiffs on the theory that there may be 100 or more unnamed persons who are real parties in interest" but are not named as plaintiffs in the suit. 571 U.S. at 168–69. Just like the respondents in *Hood*, Defendants argue here that "the provision covers such suits because 'claims of 100 or more persons' refers to 'the persons to whom the claim belongs, *i.e.*, the real parties in interest to the claims,' regardless of whether those persons are named or unnamed." *Id.* Just like in *Hood*, Defendants argue here that this Court should look past Atlas and count the alleged "persons to whom the claim belongs" (in Defendants' view, the Covered Persons) to satisfy the mass action numerosity requirement. The Supreme Court unanimously held that courts cannot count the persons who are not named plaintiffs:

> To start, the statute says "100 or more persons," not "100 or more named or unnamed real parties in interest." Had Congress intended the latter, it easily could have drafted language to that effect. Indeed, when Congress wanted a numerosity requirement in CAFA to be satisfied by counting unnamed parties in interest in addition to named plaintiffs, it explicitly said so: CAFA provides that in order for a class action to be removable, "the number of members of all proposed plaintiff classes" must be 100 or greater, § 1332(d)(5)(B), and it defines "class members" to mean "the persons (named or unnamed) who fall within the definition of the proposed or certified class," § 1332(d)(1)(D). Congress chose not

27

to use the phrase "named or unnamed" in CAFA's mass action provision, a decision we understand to be intentional.

*Id.* at 169.

Notably, the Supreme Court also disagreed "[m]ore fundamentally" that the language in 28 U.S.C. § 1332(11)(B) contemplates that the "100 or more persons" referenced in the statute are the same 100 or more "'plaintiffs' referred to later in the sentence—the parties who are proposing to join their claims in a single trial." *Id.* According to the Supreme Court, "Congress used the terms 'persons' and 'plaintiffs' just as they are used in Federal Rule of Civil Procedure 20, governing party joinder," meaning that the term "'persons' in § 1332(d)(11)(B)(i) refers to the individuals who are proposing to join as plaintiffs in a single action." *Id.* at 1170. "**Congress meant for the "100 or more persons" and the proposed 'plaintiffs' to be one and the same**." *Id.* (emphasis added). This is obviously not the case here, where only Atlas (a single Plaintiff) and the other few Individual Plaintiffs have joined as plaintiffs in these actions.

Quite simply, the term "plaintiffs" cannot and does not include both named and unnamed real parties in interest. *Hood*, 571 U.S. at 170–71 ("It certainly does not mean 'anyone, named or unnamed, whom a suit may benefit.'"). Clearly, the term "plaintiff" as used in 28 U.S.C. § 1332(d)(11)(B) does not encompass the Covered Persons who assigned claims to Atlas. Because there are fewer than 100 plaintiffs in each of these cases, in the plain and ordinary meaning of that term, none

of these cases are mass actions under CAFA. *See, e.g., Sw. Airlines Pilots Ass'n v. Boeing Co.*, 613 F. Supp. 3d 975, 978 (N.D. Tex. 2020) (holding CAFA inapplicable where there was only one named plaintiff); *Mahoney v. Emerson Elec. Co.*, 478 F. Supp. 3d 1051, 1056 (D. Idaho 2020) (holding that beneficiaries of lawsuit were not plaintiffs for purpose of satisfying numerosity requirement under CAFA); *Gallagher v. Johnson & Johnson Consumer Companies, Inc.*, 169 F. Supp. 3d 598, 600 (D.N.J. 2016) (refusing to include real parties in interest as class members for purposes of determining diversity jurisdiction under CAFA).

Moreover, under *Hood* it is impossible for unnamed Covered Persons to be considered "plaintiffs" in this action, because they have completely and irrevocably relinquished their rights to bring a suit under Daniel's Law against these Defendants through the assignments to Atlas. The Third Circuit has repeatedly clarified that, for numerosity purposes, only "partial" assignees who have not relinquished their right to sue in their own names may be counted as additional members of a purported class, because, in the case of a "partial" assignment, the "right to the entire claim is split," and the defendant is accordingly at risk "of successive and repeated suits growing out of the same basic facts." *See, e.g.*, *In re Modnafil Antitrust Litig.*, 837 F. 3d 238, 251-52 (3d Cir. 2016) (quoting *In re Fine Paper Litig. State of Wash.*, 632 F. 2d 1081, 1091 (3d Cir. 1980)). These considerations are inapplicable here where only one party, Atlas, has the exclusive right to bring the action of the

assignors. There is no possibility of unfairness to the Defendants by failing to count the claims of the assignors because the assignors cannot sue in their own name. In such circumstances, there is no splitting of the claim, and the Defendants face no risk of successive or and repeated suits growing out of the same facts.

Perhaps most importantly, accepting Defendants' argument would amount to an express rebuke of the words chosen by the New Jersey legislature. Daniel's Law expressly allows "assignees" of Covered Persons to sue, and there is no discussion of these assignees being instead "class action" or "mass action"-plaintiffs. *See* N.J.S.A § 56:8-166.1(b). The Court would be disregarding the careful words chosen by the legislature were it to accept the disingenuous arguments put forth by the Defendants.

**V.    CONCLUSION**

Plaintiffs are content to litigate their claims in either state or federal court. Nevertheless, Defendants failed to satisfy their jurisdictional burden, and the Court lacks subject matter jurisdiction over the Remand Actions. Therefore, Plaintiffs respectfully request this Court remand the thirty-nine (39) Remand Actions to the New Jersey Superior Court where each was respectively filed.

Dated: May 3, 2024                    Respectfully Submitted,

                                      **PEM LAW LLP**

                        By:    *s/ Rajiv D. Parikh*
                               Rajiv D. Parikh
                               Kathleen Barnett Einhorn
                               One Boland Drive, Suite 101
                               West Orange, New Jersey 07052
                               Tel: (973) 577-5500
                               rparikh@pemlawfirm.com

                               **BOIES SCHILLER FLEXNER LLP**
                               Mark Mao (Admitted *pro hac vice*)
                               44 Montgomery St., 41st Floor
                               San Francisco, CA 94104
                               Tel.: (415) 293-6800
                               mmao@bsfllp.com

                               Adam R. Shaw (Admitted *pro hac vice*)
                               30 South Pearl Street, 12th Floor
                               Albany, NY 12207
                               Tel: (518) 434-0600
                               ashaw@bsfllp.com

                               Samantha Parrish (*pro hac vice* to be filed)
                               2029 Century Park East, Suite 1520N
                               Los Angeles, CA 90067
                               Tel.: (213) 629-9040
                               sparrish@bsfllp.com

                               **MORGAN & MORGAN COMPLEX
                               LITIGATION GROUP**
                               John A. Yanchunis (*pro hac vice* to be filed)
                               Ryan J. McGee (Admitted *pro hac vice*)
                               201 North Franklin Street, 7th Floor
                               Tampa, FL 33602
                               Tel.: (813) 223-5505
                               jyanchunis@ForThePeople.com
                               rmcgee@ForThePeople.com

                               *Attorneys for Plaintiffs*

31