# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>BLACKBAUD, INC., et al. | CIVIL ACTION<br>NO. 24-3993<br>(Hon. Harvey Bartle, III)<br>**Oral Argument Requested**<br>**Motion Day: September 3, 2024** |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>WHITEPAGES, INC., et al. | CIVIL ACTION<br>NO. 24-3998 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>HIYA, INC., et al. | CIVIL ACTION<br>NO. 24-4000 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>WE INFORM, LLC, et al. | CIVIL ACTION<br>NO. 24-4037 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>INFOMATICS, LLC, et al | CIVIL ACTION<br>NO. 24-4041 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>THE PEOPLE SEARCHERS, LLC, et al. | CIVIL ACTION<br>NO. 24-4045 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>COMMERCIAL REAL ESTATE EXCHANGE, INC., et al. | CIVIL ACTION<br><br>NO. 24-4073 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>DM GROUP, INC., et al. | CIVIL ACTION<br><br>NO. 24-4075 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>CARCO GROUP INC., et al. | CIVIL ACTION<br><br>NO. 24-4077 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>DELUXE CORPORATION, et al. | CIVIL ACTION<br><br>NO. 24-4080 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>TWILIO INC., et al. | CIVIL ACTION<br><br>NO. 24-4095 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>QUANTARIUM ALLIANCE, LLC, et al. | CIVIL ACTION<br><br>NO. 24-4098 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>YARDI SYSTEMS, INC., et al. | CIVIL ACTION<br><br>NO. 24-4103 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v<br><br>6SENSE INSIGHTS, INC., et al. | CIVIL ACTION<br><br>NO. 24-4104 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>LIGHTBOX PARENT, L.P., et al. | CIVIL ACTION<br><br>NO. 24-4105 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SEARCH QUARRY, LLC, et al. | CIVIL ACTION<br><br>NO. 24-4106 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ACXIOM, LLC, et al. | CIVIL ACTION<br><br>NO. 24-4107 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ENFORMION, LLC, et al. | CIVIL ACTION<br><br>NO. 24-4110 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>COSTAR GROUP, INC., et al. | CIVIL ACTION<br><br>NO. 24-4111 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ORACLE INTERNATIONAL CORPORATION, et al. | CIVIL ACTION<br><br>NO. 24-4112 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>RED VIOLET, INC., et al. | CIVIL ACTION NO. 24-4113 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>RE/MAX, LLC, et al. | CIVIL ACTION NO. 24-4114 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>EPSILON DATA MANAGEMENT, LLC, et al. | CIVIL ACTION NO. 24-4168 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>PEOPLE DATA LABS, INC., et al. | CIVIL ACTION NO. 24-4171 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>LABELS & LISTS, INC., et al. | CIVIL ACTION NO. 24-4174 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>CLARITAS, LLC, et al. | CIVIL ACTION NO. 24-4175 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>INNOVIS DATA SOLUTIONS INC., et al. | CIVIL ACTION NO. 24-4176 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> ACCURATE APPEND, INC., et al. | CIVIL ACTION <br> NO. 24-4178 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> DATA AXLE, INC., et al. | CIVIL ACTION <br> NO. 24-4181 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> REMINE INC., et al. | CIVIL ACTION <br> NO. 24-4182 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> LUSHA SYSTEMS, INC., et al. | CIVIL ACTION <br> NO. 24-4184 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> TELTECH SYSTEMS, INC., et al. | CIVIL ACTION <br> NO. 24-4217 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> PEOPLECONNECT, INC., et al. | CIVIL ACTION <br> NO. 24-4227 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> CORELOGIC, INC., et al. | CIVIL ACTION <br> NO. 24-4230 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>BLACK KNIGHT TECHNOLOGIES, LLC, et al. | CIVIL ACTION<br>NO. 24-4233 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>ZILLOW, INC., et al. | CIVIL ACTION<br>NO. 24-4256 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>EQUIMINE, INC., et al. | CIVIL ACTION<br>NO. 24-4261 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>THOMSON REUTERS CORPORATION, et al. | CIVIL ACTION<br>NO. 24-4269 |
| ATLAS DATA PRIVACY CORPORATION, et al<br><br>v.<br><br>CHOREOGRAPH LLC, et al. | CIVIL ACTION<br>NO. 24-4271 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>TRANSUNION, LLC, et al | CIVIL ACTION<br>NO. 24-4288 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> MELISSA DATA CORP., et al. | CIVIL ACTION <br><br> NO. 24-4292 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> EQUIFAX INC., et al. | CIVIL ACTION <br><br> NO. 24-4298 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> SPOKEO, INC., et al. | CIVIL ACTION <br><br> NO. 24-4299 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> i360, LLC, et al. | CIVIL ACTION <br><br> NO. 24-4345 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> TELNYX LLC, et al. | CIVIL ACTION <br><br> NO. 24-4354 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> GOHUNT, LLC, et al. | CIVIL ACTION <br><br> NO. 24-4380 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> ACCUZIP, INC., et al. | CIVIL ACTION <br><br> NO. 24-4383 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> SYNAPTIX TECHNOLOGY, LLC, et al. | CIVIL ACTION NO. 24-4385 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> JOY ROCKWELL ENTERPRISES, INC., et al. | CIVIL ACTION NO. 24-4389 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> FORTNOFF FINANCIAL, LLC, et al. | CIVIL ACTION NO. 24-4390 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> MYHERITAGE, LTD., et al. | CIVIL ACTION NO. 24-4392 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> E-MERGES.COM, INC., et al. | CIVIL ACTION NO. 24-4434 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> WILAND, INC., et al. | CIVIL ACTION NO. 24-4442 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> ATDATA, LLC, et al. | CIVIL ACTION NO. 24-4447 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> PRECISELY HOLDINGS, LLC, et al. | CIVIL ACTION NO. 24-4571 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> NUWBER, INC., et al. | CIVIL ACTION NO. 24-4609 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> ROCKETREACH LLC, et al. | CIVIL ACTION NO. 24-4664 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> OUTSIDE INTERACTIVE INC., et al. | CIVIL ACTION NO. 24-4696 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> VALASSIS DIGITAL CORP., et al. | CIVIL ACTION NO. 24-4770 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> THE LIFETIME VALUE CO. LLC, et al. | CIVIL ACTION NO. 24-4850 |
| ATLAS DATA PRIVACY CORPORATION, et al. <br><br> v. <br><br> BELLES CAMP COMMUNICATIONS, INC., et al. | CIVIL ACTION NO. 24-4949 |

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>FIRST AMERICAN FINANCIAL CORPORATION., et al. | CIVIL ACTION<br>NO. 24-5334 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>PROPERTY RADAR INC., et al. | CIVIL ACTION<br>NO. 24-5600 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>THE ALESCO GROUP, L.L.C., et al. | CIVIL ACTION<br>NO. 24-5656 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>SEARCHBUG, INC., et al. | CIVIL ACTION<br>NO. 24-5658 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>AMERILIST, INC. et al. | CIVIL ACTION<br>NO. 24-5775 |
| ATLAS DATA PRIVACY CORPORATION, et al.<br><br>v.<br><br>LEXISNEXIS RISK DATA MANAGEMENT, LLC, et al. | CIVIL ACTION<br>NO. 24-6160 |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. BACKGROUND ........................................................................................ 3

    A. Daniel's Law ........................................................................................ 3

        1. The Statute Imposes Sweeping Prohibitions, Rigid Deadlines, and Harsh Penalties on Private Businesses .................................. 3

        2. The Statute Does Not Impose Similarly Stringent Requirements on Governmental Agencies Even Though Public Records Present Similar Safety Risks .............................. 8

        3. The Statute Contains Substantial Exceptions to Non-Disclosure That Undercut Its Legislative Purpose .................... 10

    B. Atlas's Attempt to Exploit the Excessive Breadth and Punitiveness of Daniel's Law ........................................................ 13

    C. The Parties ........................................................................................ 17

        1. Plaintiffs ........................................................................................ 17

        2. The Defendants ............................................................................ 18

III. LEGAL STANDARD .............................................................................. 20

IV. ARGUMENT ............................................................................................ 21

    A. Daniel's Law Is a Content-Based Speech Restriction Subject to Strict Scrutiny .............................................................................. 22

    B. Daniel's Law Cannot Satisfy Strict Scrutiny .................................. 25

        1. Daniel's Law Restricts Significantly More Speech Than Necessary to Protect the Government's Interest ........................ 27

        2. Daniel's Law Does Not Materially Advance the State's Safety Interests .......................................................................... 36

        3. The Legislature Has Less Restrictive Alternatives to Achieve Its Interest ...................................................................... 40

    C. Daniel's Law Fails Even Intermediate Scrutiny .............................. 43

    D. Daniel's Law Is Unconstitutionally Vague ...................................... 45

V. CONCLUSION ........................................................................................ 49

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*44 Liquormart, Inc. v. Rhode Island*,
  517 U.S. 484 (1996).......................................................................43, 44

*ACLU v. Ashcroft*,
  322 F.3d 240 (3d Cir. 2003), *aff'd*, 542 U.S. 656 (2004)............................27, 31

*Ams. for Prosperity v. Grewal*,
  No. 19-cv-14228-BRM-LHG, 2019 WL 4855853 (D.N.J. Oct. 2, 2019)..........30

*Anspach ex rel. Anspach v. City of Phila. Dep't of Public Health*,
  503 F.3d 256 (3d Cir. 2007) ...............................................................11

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004)...........................................................................42

*Atlas Data Privacy Corp. v. Blackbaud Inc.*,
  No. 1:24-cv-03993-HB (D.N.J) ..............................................................3

*Atlas Data Privacy Corp. v. CoStar Group Inc.*,
  No. 1:24-cv-04111-HB (D.N.J) ............................................................15

*Atlas Data Privacy Corp. v. Oracle International Corp.*,
  No. 1:24-cv-04112-HB (D.N.J) ............................................................20

*Atlas Data Privacy Corp. v. TransUnion*,
  No. 1:24-cv-04288-HB (D.N.J) ............................................................15

*Atlas Data Privacy Corp. v. Axciom LLC*,
  No. 1:24-cv-04107-HB (D.N.J) ............................................................18

*Atlas Data Privacy Corp. v. DM Group Inc.*,
  No. 1:24-cv 04075-HB (D.N.J) ............................................................18

*Atlas Data Privacy Corp. v. E-Merges.com Inc.*,
  No. 1:24-cv-04434-HB (D.N.J) ............................................................19

xiii

*Atlas Data Privacy Corp. v. Equifax Inc.*,
    No. 1:24-cv-04298-HB (D.N.J) ............................................................................... 19

*Atlas Data Privacy Corp. v. Innovis Data Solutions Inc.*,
    No. 1:24-cv-04176-HB (D.N.J) ............................................................................... 19

*Atlas Data Privacy Corp. v. Lightbox Parent, L.P.*,
    No. 1:24-cv-04105-HB (D.N.J) ............................................................................... 18

*Atlas Data Privacy Corp. v. RE/MAX LLC.*,
    No. 1:24-cv-04114-HB (D.N.J) ............................................................................... 18

*Atlas Data Privacy Corp. v. Zillow, Inc.*,
    No. 1:24-cv-04256-HB (D.N.J) ............................................................................... 18

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ............................................................................................... 31

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*,
    482 U.S. 569 (1987) ............................................................................................... 48

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
    492 U.S. 469 (1989) ............................................................................................... 43

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983) ................................................................................................. 24

*Bowley v. City of Uniontown Police Dep't*,
    404 F.3d 783 (3d Cir. 2005) .................................................................................. 31

*Brayshaw v. City of Tallahassee*,
    709 F. Supp. 2d 1244 (N.D. Fla. 2010) ........................................................... *passim*

*Brown v. Entm't. Merchs. Ass'n*,
    564 U.S. 786 (2011) ................................................................................... 22, 27, 31

*Bruni v. City of Pittsburgh*,
    824 F.3d 353 (3d Cir. 2016) ........................................................................... 20, 42

*Buck v. Hampton Twp. Sch. Dist.*,
    452 F.3d 256 (3d Cir. 2006) .................................................................................. 16

*Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*,
101 F.4th 266 (3d Cir. 2024) ...............................................................25

*Carey v. Wolnitzek*,
614 F.3d 189 (6th Cir. 2010) ...............................................................30

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
447 U.S. 557 (1980)......................................................................24, 43

*City of Chi. v. Morales*,
527 U.S. 41 (1999)...............................................................................46

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993)............................................................................43

*Counterman v. Colorado*,
600 U.S. 66 (2023)..............................................................................21

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ...............................................................25

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012)......................................................................45, 46

*Florida Star v. B.J.F.*,
491 U.S. 524 (1989)............................................................................38

*Franklin v. Navient Inc.*,
534 F. Supp. 3d 341 (D. Del. 2021).....................................................46

*Greater Phila. Chamber of Commerce v. City of Phila.*,
949 F.3d 116 (3d Cir. 2020) ...............................................................43

*Harris v. Quinn*,
573 U.S. 616 (2014).............................................................................24

*IMDb.com v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) .......................................................23, 25

*Kickflip, Inc. v. Facebook, Inc.*,
999 F. Supp. 2d 677 (D. Del. 2013).....................................................18

*Kreimer v. Bureau of Police for Town of Morristown*,
   958 F.2d 1242 (3d Cir. 1992) ..............................................................46

*Landmark Commc'ns, Inc. v. Virginia*,
   435 U.S. 829 (1978)...........................................................................34

*Lorillard Tobacco Co. v. Reilly*,
   533 U.S. 525 (2001)....................................................................43, 44

*McCullen v. Coakley*,
   573 U.S. 464 (2014)....................................................................35, 43

*N.J. Freedom Org. v. City of New Brunswick*,
   7 F. Supp. 2d 499 (D.N.J. 1997)..................................................46, 48

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
   585 U.S. 755 (2018)...........................................................................21

*Neitzke v. Williams*,liq
   490 U.S. 319 (1989)...........................................................................20

*Ostergren v. Cuccinelli*,
   615 F.3d 263 (4th Cir. 2010) ............................................................38

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993) ...........................................................14

*Pitt News v. Pappert*,
   379 F.3d 96 (3d Cir. 2004) ...............................................................44

*Planned Parenthood of Cent. N.J. v. Verniero*,
   41 F. Supp. 2d 478 (D.N.J. 1998).....................................................48

*Publius v. Boyer-Vine*,
   237 F. Supp. 3d 997 (E.D. Cal. 2017) ........................................*passim*

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015).............................................................22, 23, 25

*Reno v. Am. Civ. Liberties Union*,
   521 U.S. 844 (1997)....................................................................40, 46

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995)...................................................................45

*Schrader v. Dist. Att'y of York Cnty.*,
74 F.4th 120 (3d Cir. 2023) ...........................................22, 26, 34, 40

*Sheehan v. Gregoire*,
272 F. Supp. 2d 1135 (W.D. Wash. 2003) ...................................*passim*

*Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*,
502 U.S. 105 (1991)...................................................................30

*Smith v. Daily Mail Publishing Company*,
443 U.S. 97 (1979).....................................................................37

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)...............................................................21, 22

*Stone v. JPMorgan Chase Bank, N.A.*,
415 F. Supp. 3d 628 (E.D. Pa. 2019) ..........................................11

*United States v. Playboy Entm't. Grp., Inc.*,
529 U.S. 803 (2000)...............................................................41, 42

*Usachenok v. Dep't of the Treasury*,
313 A.3d 53 (N.J. 2024) ...........................................................21

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982)...................................................................46

*Voter Reference Found., LLC v. Balderas*,
616 F. Supp. 3d 1132 (D.N.M. 2022).............................................28

*Vrdolyak v. Avvo, Inc.*,
206 F. Supp. 3d 1384 (N.D. Ill. 2016)............................................24

*Williams-Yulee v. Fla. Bar*,
575 U.S. 433 (2015)...................................................................37

*Yim v. City of Seattle*,
63 F.4th 783 (9th Cir. 2023) ................................................37, 45

# STATUTES

Cal. Civ. Code § 1798.83.5(b) ...................................................................23

Cal. Gov't Code § 7928.215(c) .................................................................41

N.J.S.A. 47:1A-1–3 ...................................................................................3

N.J.S.A. 47:1B-1–3 .................................................................................38

N.J.S.A. 47:1B-2(a) ...................................................................................8

N.J.S.A. 47:1B-2(b) ...................................................................................9

N.J.S.A. 47:1B-3(5) .................................................................................28

N.J.S.A. 47:1B-3(a)(2) .............................................................................11

N.J.S.A. 47:1B-3(a)(4)(d) ...................................................................11, 39

N.J.S.A. 47:1B-3(a)(5) .............................................................................10

N.J.S.A. 47:1B-3(b) .................................................................................10

N.J.S.A. 56:8-166.1 ....................................................................................3

N.J.S.A. 56:8-166.1(1)(c) (2021)..........................................................7, 35

N.J.S.A. 56:8-166.1(a) .............................................................................49

N.J.S.A. 56:8-166.1(a)(1) ..................................................................*passim*

N.J.S.A. 56:8-166.1(a)(1) (2021)....................................................7, 9, 41

N.J.S.A. 56:8-166.1(a)(1) (2023) .............................................................9

N.J.S.A. 56:8-166.1(a)(2) .....................................................................4, 16

N.J.S.A. 56:8-166.1(b) (2023) .................................................................13

N.J.S.A. 56:8-166.1(c) .............................................................................16

N.J.S.A. 56:8-166.1(c) (2016) .................................................................36

N.J.S.A. 56:8-166.1(c)(1) ................................................................6, 33, 34

N.J.S.A. 56:8-166.1(d)..................................................................4, 5, 27, 47

N.J.S.A. 56:8-166.1(e) ...........................................................................11

N.J.S.A. 56:8-166.2(1)(c) (2021)........................................................7, 35

N.J.S.A. 56:8-166.2(2)(c) (2020)........................................................7, 35

N.J.S.A. 56:8-166.3...............................................................................25

## CONSTITUTIONAL PROVISIONS

N.J. Const. art. I, ¶ 6 ...........................................................................21

## OTHER AUTHORITIES

2023 NJ Sess. Law Serv. Ch. 113 (WEST) ...........................................33

New Jersey Election Law Enforcement Commission, 2023 Annual Report at
    9 (April 2024), https://www.elec.nj.gov/pdffiles/
    annual_reports/annual2023.pdf...........................................................40

*The Right to Privacy and to Attend the Mini Convention*, N.J. COPS MAG.
    (Apr. 5, 2023), http://njcopsmagazine.com/the-right-to-privacy-and-to-
    attend-the-mini-convention..................................................................14

xix

## I.      INTRODUCTION

Daniel's Law started as a laudable effort by the State of New Jersey to enhance the safety of judges, law enforcement, and other public officials, but the statute in its current form—particularly as most recently amended through lobbying efforts by Plaintiffs' counsel—is not appropriately tailored to this end.  The statute provides that, upon receipt of a notification provided by a covered person, "any person or business association" shall not "disclose" or "otherwise make available" the covered person's home address or phone number.  But the statute's sweeping definition of "disclose" encompasses *any* transfer of this information of any kind, including transfers between businesses, or even within *the same* business; and the catchall phrase "otherwise make available" makes the statute even *more* open-ended and hopelessly vague.  On top of this, the statute imposes "liquidated damages" triggered by a short and arbitrary compliance deadline, without any consideration of fault or extenuating circumstances.  At the same time, the statute contains broad-reaching exceptions—most significantly for disclosure of records by public agencies—that undermine the very purpose the statute was intended to serve.  For all these reasons, the statute is facially unconstitutional under the First Amendment and the New Jersey Free Speech Clause.

Contrary to Plaintiffs' assertions, Defendants do not bring this challenge because they seek to profit at the expense of the safety of public officials.  It is instead

1

the lead Plaintiff, Atlas Data Privacy, that is pursuing profit here instead of seeking to protect anyone's safety.  Having lobbied the legislature for a bespoke assignment provision, Atlas and its counsel launched this litigation project by cynically abusing that provision.  They recruited over 19,000 alleged covered persons to purportedly assign their Daniel's Law claims to Atlas through a mass-marketing campaign, took no action for *months* while this recruitment effort was conducted (belying any concern for the safety of the "assignors"), and then bombarded well over a hundred companies with thousands of takedown requests over a short period of time, including over the year-end holidays, in an attempt to frustrate the companies' ability to comply within the ostensible statutory deadline—all to gin up claims for "liquidated damages."  Notably, many unsuspecting defendants named in these cases are small businesses, some of which cannot afford to defend these cases, let alone survive the astronomical damages Atlas indiscriminately seeks.

Atlas's misuse of Daniel's Law only highlights the statute's excessive breadth—making it *susceptible* to abuse—and the corresponding justification for invalidating the statute under the First Amendment.  The statute imposes content-based restrictions on protected speech and is thus subject to strict scrutiny—which the statute cannot survive because it is not narrowly tailored to the state interest it is supposed to serve.  Even if analyzed under an intermediate-scrutiny standard, Daniel's Law would fail, because it is not even *reasonably* tailored to the state's

2

interest.  The statute is also unconstitutionally vague, because it does not provide sufficient notice of what it prohibits and invites arbitrary enforcement.  Accordingly, the statute should be invalidated, and this litigation dismissed, with prejudice.

## II.    BACKGROUND

### A.    Daniel's Law

#### 1.    The Statute Imposes Sweeping Prohibitions, Rigid Deadlines, and Harsh Penalties on Private Businesses

In July 2020, United States District Judge Esther Salas's only son, Daniel Anderl, was murdered at Judge Salas's home by a disgruntled lawyer who had litigated before her.  Compl. ¶ 5.[1]  In response to that unspeakable tragedy, the New Jersey State Legislature enacted Daniel's Law, P.L. 2020, c. 125 (codified at N.J.S.A. 47:1A-1–A-3 and N.J.S.A. 56:8-166.1), aimed at protecting the safety of certain government officials.  Compl. ¶ 8.

The civil provisions of Daniel's Law provide that, upon "notification" made by a "covered person"—defined to include active and retired judges, law enforcement officers, and certain other public officials, as well as any immediate family member residing in the same household—a "person, business or association"

_____

[1] All docket citations are to the Complaint filed against Defendant Blackbaud, Inc., et al. (hereafter, "Compl."), Ex. 1, and to the docket in *Atlas Data Privacy Corp. et al v. Blackbaud Inc., et al*, No. 1:24-cv-03993-HB (D.N.J).  All other Complaints filed by Atlas are materially the same.  All citations to exhibits are to those attached to the Declaration of Serrin Turner, submitted herewith.

3

shall not "disclose or re-disclose or otherwise make available" the covered person's "home address or unpublished home telephone number." N.J.S.A. 56:8-166.1(a)(1), (d). The statute does not specify how such a non-disclosure "notification" is to be made, other than stating that it must be a "written notice . . . requesting that the person [to whom the notice is directed] cease the disclosure of [the covered person's protected home address or unpublished telephone number] and remove the protected information from the Internet or where otherwise made available." N.J.S.A. 56:8-166.1(a)(2). The statute instructs that such notifications "shall" be "provide[d]" by the covered persons themselves, except in certain limited situations not applicable here (e.g., where a covered person is medically incapacitated or a minor). N.J.S.A. 56:8-166.1(a)(2), (d). The statute does not require any form of verification that the person seeking non-disclosure truly qualifies as a "covered person," however, but rather only requires the notification to state that the person providing it is in fact a covered person (or someone authorized to act on their behalf, where applicable). N.J.S.A. 56:8-166.1(a)(2).

While the statute ostensibly requires the recipient of a notification not to "disclose" a person's home address or unpublished phone number "on the Internet," it includes a sweeping definition of the term "disclose" that covers a far broader range of conduct than the ordinary meaning of the term encompasses. Specifically, the statute defines the term "disclose" to mean

> to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed.

N.J.S.A. 56:8-166.1(d).  Thus, on its face, the statute applies to virtually any type of transmission or transaction involving a covered person's information—even if the transmission or transaction is purely between two businesses, or even between two people within the *same* business.  Further, the statute does not even stop at prohibiting all those forms of conduct broadly defined to constitute "disclosure," but also includes catchall language providing that the recipient of a notification shall not "otherwise make available" the covered person's information, without defining or limiting this phrase in any way.

This far-reaching prohibition is coupled with a rigid compliance deadline. Specifically, the statute provides that, "[u]pon notification," the recipient of the notification must comply with the non-disclosure request "not later than 10 business days following receipt thereof."  N.J.S.A. 56:8-166.1(a)(1).  The statute does not build any exceptions or flexibility into this deadline.  For example, it takes no account of whether the notification is directed to a person or to an inbox designated for receiving such notifications, or whether the notification contains sufficient information for the business to identify the covered person's information in its records (e.g., the person's applicable username or the correct variant of the person's

5

name or address), or whether there are any extenuating circumstances that make it unreasonable to expect the recipient to process the notification within 10 business days—such as when tens of thousands of notifications are intentionally sent *en masse* within a short time period in a purposeful effort to frustrate timely compliance, as Atlas did here.

Failure to meet the statute's rigid compliance deadline in turn exposes companies to monetary damages, regardless of the circumstances.  The statute provides that a "court *shall* award" "actual" damages that are "not less than" what the statute calls "liquidated damages" of "$1,000 for each violation of this act"—without regard to whether the "violation" involved intentional misconduct or even negligence by the defendant.  N.J.S.A. 56:8-166.1(c)(1).  Notably, this is a recent addition to the statute, enacted in 2023—merely six months before these Complaints were filed—together with the assignment provision on which Atlas is relying to bring this litigation.  The damages provision reached its current form in several steps:

- As originally enacted in 2020, Daniel's Law permitted a covered person to seek only an injunction in the event of non-compliance with a non-

6

disclosure notification, and to recover fees and costs if successful, N.J.S.A. 56:8-166.2(2)(c) (2020).[2]

- In 2021, the statute was amended to provide that a court "may" award $1,000 in "liquidated damages" based on a violation of the notification provision—providing a court with discretion to award such damages where it deemed them warranted. N.J.S.A. 56:8-166.1(1)(c) (2021). At the same time, the legislature balanced this discretionary damages provision with a new requirement for a covered person to obtain "approval from the [New Jersey] Office of Information Privacy" before making a non-disclosure notification—thereby protecting against abusive requests. N.J.S.A. 56:8-166.1(a)(1) (2021).

- In 2023, however, the legislature removed the discretionary element of the damages provision by changing "may" to "shall." Yet it simultaneously

_____

[2] At the time Daniel's Law was enacted, "liquidated damages" of $1,000 per violation were already available under a separate provision of law, unrelated to non-disclosure notifications submitted by covered persons, in the event of a disclosure of any law enforcement officer's home address or phone number in circumstances where "a reasonable person would believe" that doing so would cause harm. N.J.S.A. 56:8-166.1(1)(c) (2016). The legislature was clearly aware of this provision when it enacted Daniel's Law: As part of the enactment, that provision was amended to cover judges and prosecutors in addition to law enforcement officers. Yet the legislature did not incorporate any damages provision of any kind into the new notification-based provision. N.J.S.A. 56:8-166.2(1)(c) (2020).

7

eliminated the requirement that a covered person obtain approval from the Office of Information Privacy before making a non-disclosure notification.

The legislature did not explain the rationale for ***any*** of these changes. In particular, the legislative history contains no explanation of why the legislature ultimately considered a strict liability regime—unaccompanied by any governmental screening of notifications—to be necessary to effectuate the statute's aims, as opposed to injunctive relief or a discretionary fine. These changes appear only to have maximized the value of a potential extortive lawsuit by Atlas rather than to have done anything to increase the safety of covered persons.

### 2. The Statute Does Not Impose Similarly Stringent Requirements on Governmental Agencies Even Though Public Records Present Similar Safety Risks

The foregoing provisions—which apply to non-disclosure notifications made to private businesses—stand in marked contrast to the other provisions of Daniel's Law applicable to public agencies, which provide a mechanism for covered persons to seek "the redaction or nondisclosure of [their] home address" (but not phone number) from certain public records. N.J.S.A. 47:1B-2(a).

First, for a covered person to obtain redaction of public records, the request must first be "submitted to and approved by the Director of the Office of Information Privacy." *Id.* As noted above, the statute previously included a similar approval requirement for private non-disclosure requests, but that statutory provision was

8

removed in 2023, without explanation—eliminating a neutral, independent means of verifying that a requesting individual is in fact a covered person and an important check against abusive requests.  *Compare* N.J.S.A. 56:8-166.1(a)(1) (2021), *with* N.J.S.A. 56:8-166.1(a)(1) (2023).

Second, even though the safety implications of the disclosure of a covered person's home address or phone number would presumably be the same regardless of whether disclosure is made by a public agency or a private business, public agencies—unlike private businesses—are not required to implement a non-disclosure request within 10 business days.  Again, the request must be approved by the Office of Information Privacy first—and the statute imposes no deadline by which the Office of Information Privacy must act.  Even after approval, public agencies have 30 days, rather than 10 days, to implement the approved request.  *See* N.J.S.A. 47:1B-2(b).  The statute does not provide any specific judicial remedy—much less "liquidated damages"—if a public agency fails to meet this (more generous) statutory deadline.  And there is no ability for covered persons to require public agencies to cease disclosure of phone numbers at all.

Third, public agencies are allowed to use and share home address information in their ordinary course of business (and unpublished phone number information for any purpose), notwithstanding their receipt of non-disclosure requests, while the statute affords private businesses no such leeway.  Thus, the statute provides that

9

"[a] public agency may share unredacted information with any vendor, contractor, or organization to carry out the purposes for which the public agency entered into an agreement with the vendor, contractor, or organization."   N.J.S.A. 47:1B-3(a)(5). Likewise, the statute provides that it shall not be construed to "require redaction or nondisclosure of any information in any document, record, information, or database shared with or otherwise provided to any other government entity." N.J.S.A. 47:1B-3(b).  By comparison, a *private* entity receiving a non-disclosure notice may not "give," "provide," "circulate," "disseminate," or "otherwise make available" a covered person's home address or unpublished phone number to anyone—*without exception*—even if the recipient is a vendor, contractor, or organization that has contracted with the entity, the "disclosure" is private (i.e., business-to-business), and the information is needed (and would only be used) to perform a contract.

### 3. The Statute Contains Substantial Exceptions to Non-Disclosure That Undercut Its Legislative Purpose

At the same time that Daniel's Law imposes sweeping prohibitions on private companies, accompanied by rigid deadlines and harsh penalties, it also contains significant exceptions to non-disclosure requirements—meaning that private businesses can be punished for failing to take down a covered person's information within a strict time limit, even though the same information remains readily accessible through other sources within the public domain.

Most significantly, the statute provides that records held by public agencies "evidencing any lien, judgement, or other encumbrance upon real or other property"—which encompasses mortgage records—are not subject to requests for redaction or non-disclosure. N.J.S.A. 47:1B-3(a)(4)(d).  Similarly, a title insurance company, real estate broker, or title search company may receive from a public agency, unredacted, "a document affecting the title to real property" and then re-disclose the information in their ordinary course of business—even if they have received a non-disclosure notification from a covered person.  N.J.S.A. 47:1B-3(a)(2); N.J.S.A. 56:8-166.1(e).  The availability of mortgage and title records on the internet, where the records are searchable by name, can provide an easy way to find the home address of a covered person even if it has been taken down from other sources.  For example, the home addresses of *at least four of the six individually identified Plaintiffs* can easily be looked up in property records presently made available on the internet by New Jersey county agencies, through databases that are searchable by name.  *See* Mortgage, Ex. 2; Mortgage, Ex. 3; Notice of Settlement and Mortgage, Ex. 4 (address information has been redacted).[3]

---

[3] The Court may take judicial notice of these public records on a motion to dismiss. *See, e.g.*, *Anspach ex rel. Anspach v. City of Phila. Dep't of Public Health*, 503 F.3d 256, 273 n. 11 (3d Cir. 2007) ("Courts ruling on Rule 12(b)(6) motions may take judicial notice of public records."); *Stone v. JPMorgan Chase Bank, N.A.*,

Relatedly, Daniel's Law does not require a covered person to provide a non-disclosure request to public agencies before (or even after) providing a non-disclosure request to private businesses.  A covered person's information can thus remain available online through governmental sources even when it is subject to a non-disclosure request and even when such a request has been made to private businesses, just as public records reflect here for four of the six individually identified Plaintiffs.  And a covered person's information can even be publicized elsewhere by the covered person themselves—as they are not required to represent that they have refrained from self-publishing their information when they provide a non-disclosure notification to others.[4]

---

415 F. Supp. 3d 628, 631–32 (E.D. Pa. 2019) (taking judicial notice of mortgage assignment record that was publicly filed with county recorder of deeds).

[4] For example, some of the Plaintiffs have self-published some of the very information included in the non-disclosure notifications Atlas provided putatively on their behalf.  For example, Plaintiff Maldonado lists his phone number in his public LinkedIn profile, *see* Ex. 5, as well as on websites promoting his real estate company, *see* Ex. 6.  Plaintiff Colligan listed his phone number in a press release, Ex. 7, and in a publicly available retirement party announcement, Ex. 8.  And Plaintiff Andreyev made one of his phone numbers publicly available via his wife's corporate web page, *see* Ex. 9.

**B.     Atlas's Attempt to Exploit the Excessive Breadth and Punitiveness of Daniel's Law**

In 2023—again, at the same time the language of the "liquidated damages" provision was changed from "may" to "shall"—Daniel's Law was curiously amended to include an unusual provision allowing for the "assignment" of civil claims under the statute.  The provision now states that a person in violation of the statute "shall be liable to the covered person *or the covered person's assignee*, who may bring a civil action in the Superior Court."   N.J.S.A. 56:8-166.1(b) (2023) (emphasis added).   The amendment was made with no rationale or explanation. Notably, attorneys from Genova Burns LLC (who are now at Pem Law LLP)—one of the law firms representing Atlas—reported they were lobbyists for Atlas in New Jersey in April 2023, four months before the assignment provision was enacted.  *See* Genova Burns Annual Report of Governmental Affairs Agent, Ex. 10.

Atlas was incorporated in April 2021, shortly after the original version of Daniel's Law was passed.   *See* Atlas Data Privacy Corporation Certificate of Authority, Ex. 11.  Atlas claims to offer services to individuals aimed at removing their sensitive identifying information from the internet.   *See* Atlas, https://www.atlas.net, Ex. 12.  According to the Complaints filed here, Atlas "works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association ("NJSPBA"), the Metropolitan Transportation

Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others."  Compl. ¶ 31.

Atlas solicited members from these organizations to sign up for Atlas's services at least as early as April 5, 2023.  *See The Right to Privacy and to Attend the Mini Convention*, N.J. COPS MAG. (Apr. 5, 2023), http://njcopsmagazine.com/the-right-to-privacy-and-to-attend-the-mini-convention ("The time is now to sign up for protection under Daniel's Law through Atlas Privacy."), Ex. 13.  As part of Atlas's terms of service in effect at the time, anyone who signed up for its services agreed in advance to "irrevocably assign[] to [Atlas] all of [their] rights to bring a claim (and seek damages … ) for violations of [their] rights under [Daniel's Law]."  See Atlas Terms of Service at 6, Ex. 14 ("Terms").[5] The Terms provided that Atlas could unilaterally "trigger" this assignment by sending "Assignment Confirmations" to the covered persons if, at its "discretion,"

---

[5] On April 18, 2024, the Court ordered the Plaintiffs to produce the Terms as part of the evidence reflecting the assignments allegedly made to Atlas.  ECF No. 28. Because the alleged assignments, as well as Atlas's signup process, are incorporated by reference in Atlas's Complaints, *see* Compl. ¶¶ 32–36, the Court can consider the Terms on this motion to dismiss.  *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

Atlas decided to bring "civil litigation whereby individual claims are aggregated and prosecuted by Atlas." *See id.*[6]

Even though Atlas solicited assignors *for months* over the course of 2023, it did not send Defendants purported non-disclosure notifications on behalf of these individuals as they signed up—as one would expect had Atlas truly had their safety at heart. Instead, Atlas *waited months* until it had amassed more than 19,000 assignors, and only then began sending purported non-disclosure notifications on their behalf during the December 2023 holiday season, in enormous email blasts of thousands of emails at a time, directed at well over 100 companies.[7] Compl. ¶ 51 (alleging that non-disclosure requests for "all of the Covered Persons (who assigned claims to Atlas))" were sent "using AtlasMail" "[s]tarting on or about December 30, 2023").[8]

---

[6] Defendants do not concede that there has been a lawful or valid assignment to Atlas of any covered person's purported claims.

[7] As any reasonable person would know—particularly Atlas, which purports to provide data privacy services—such email blasts create a risk of triggering spam filters that would prevent the information from being successfully delivered.

[8] The Complaints brought against Defendants specify different start dates for the email blasts directed at each respective Defendant or group of Defendants. *See, e.g.*, Compl. ¶ 51, *Atlas Data Privacy Corp. v. CoStar Group Inc.*, No. 1:24-cv-04111-HB (D.N.J) ("CoStar Complaint"); ("Starting on or about December 28, 2023…"); Compl. ¶ 53, *Atlas Data Privacy Corp. v. TransUnion*, No. 1:24-cv-04288-HB (D.N.J) ("TransUnion Complaint") ("Starting on or about January 2, 2024…"). However, the start dates all are from late December 2023 or later—months after Atlas began soliciting assignors.

While the Complaints filed against Defendants allege in conclusory fashion that the "Covered Persons sent Defendants a takedown notice," Compl. ¶ 34; *see also* ¶ 51, it is abundantly clear that the notifications at issue were sent *by Atlas*, putatively *on behalf* of covered persons. The requests all followed the same template and all originated from email addresses associated with "Atlas Mail" ("@AtlasMail.com"), Compl. ¶¶ 33–35, and they were sent to each Defendant in consolidated email blasts, with the individual emails within each blast sent within seconds of one another.[9] Obviously, 19,000+ covered persons did not separately send emails at the same time; Atlas was necessarily the one pressing the button.[10]

Beginning in February 2024, Atlas (as alleged assignee for over 19,000 covered persons) and several individual Plaintiffs brought nearly identical suits

_____

[9] A spreadsheet reflecting the timestamps of a sample of the emails directed to one Defendant reflects this pattern. *See* Ex. 15. Because the emails sent from Atlas Mail are incorporated by reference into the Complaints, the Court may consider this exhibit on a motion to dismiss. *See Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim …." (cleaned up)).

[10] This is despite the fact that the assignment provision, added in 2023, did nothing to change the statute's requirement that a non-disclosure notification must be "provided" by a covered person *themself*—save in limited circumstances not alleged to be applicable here. *See* N.J.S.A. 56:8-166:1(a)(2), (c). Nothing in the statute, even as most recently amended, allows a putative *assignee* to provide a non-disclosure request on behalf of an assignor, which is precisely what Atlas did. Defendants reserve all rights to challenge the validity of the purported non-disclosure notifications at issue at a later time.

16

against 143 companies that received Atlas's email blasts, including the Defendants, in New Jersey Superior Court.  Subsequently, 73 of these cases were removed to federal court.  The Complaints allege violations of Daniel's Law for failure to take down the personal information of the thousands of covered persons at issue within 10 business days of receiving notifications.  Compl. ¶¶ 51, 59.  The Complaints seek all forms of relief permitted by Daniel's Law, including "liquidated damages" and even punitive damages.  Compl. ¶ 61.

### C.   The Parties

#### 1.   Plaintiffs

The lead Plaintiff in this litigation is Atlas, which brings suit as the purported assignee of over 19,000 covered persons' claims under Daniel's Law.[11]  Compl. ¶ 26. Having sent thousands of purported non-disclosure notifications on behalf of these "assignors," Atlas now seeks millions of dollars from each Defendant.  *Id.* ¶ 61.

The Complaints also name eight current and former law enforcement officials (including two Jane Does) as individual Plaintiffs, including current and former leaders of the NJSPBA.  Compl. ¶¶ 15–18, 22–24.

---

[11] Each Complaint is brought by Atlas on behalf of at least 10,000 alleged assignors, and in some cases more than 19,000.  The exact number varies by Complaint.

17

### 2.   The Defendants

There are over 105 Defendants in the cases before this Court, representing a wide variety of industries and services.[12]  They include, among other entities, real estate businesses;[13] direct-mailing and marketing companies;[14] data brokers;[15] entities that provide fundraising solutions to charities and other nonprofits;[16] credit

---

[12] The Court may consider the websites below, Exs. 16-30, as they are incorporated by reference in the Complaints.  *See, e.g.*, *Kickflip, Inc. v. Facebook, Inc.*, 999 F. Supp. 2d 677, 682 (D. Del. 2013) (considering website pages that were "directly cited in the Complaint by their internet addresses").

[13] *See, e.g.*, CoStar, https://www.costar.com/ (providing a "commercial real estate information, analytics and news platform"), *cited in* CoStar Complaint ¶ 39; Lightbox, https://www.lightboxre.com/ (providing services to "empower decision makers in the commercial real estate market"), *cited in* Compl. ¶ 39, *Atlas Data Privacy Corp. v. Lightbox Parent, L.P.,* No. 1:24-cv-04105-HB (D.N.J) ("Lightbox Complaint"); Zillow, https://www.zillow.com/ (providing options to "[f]inance a home," "[b]uy a home," or "[r]ent a home"), *cited in* Compl. ¶ 39, *Atlas Data Privacy Corp. v. Zillow, Inc.*, No. 1:24-cv-04256-HB (D.N.J); RE/MAX, https://www.remax.com/ ("The right time to move is when you're with the right agent—nobody sells more real estate than RE/MAX."), *cited in* Compl. ¶ 39, *Atlas Data Privacy Corp. v. RE/MAX LLC,* No. 1:24-cv-04114-HB (D.N.J) ("RE/MAX Complaint").

[14] *See, e.g.*, DM Group, https://www.dmgroup.com/ ("[W]e offer a full range of services to help our clients achieve their marketing goals."), *cited in* Compl. ¶ 33, *Atlas Data Privacy Corp.  v. DM Group Inc.*, No. 1:24-cv 04075-HB (D.N.J).

[15] *See, e.g.*, Axicom, https://www.acxiom.com/ (enabling businesses to "integrate our data and identity solutions to help brands build the right data foundation for improved marketing performance."), *cited in* Compl. ¶ 40, *Atlas Data Privacy Corp. v. Axiom LLC*, No. 1:24-cv-04107-HB (D.N.J).

[16] *See* Blackbaud, https://www.blackbaud.com/ (offering "[s]oftware built for fundraising, nonprofit accounting, education, CSR and more"), *cited in* Compl. ¶ 39.

reporting agencies regulated under the Fair Credit Reporting Act;[17] and entities that provide voter information to political campaigns, government offices, news media outlets, and universities.[18]

The panoply of businesses targeted in the Complaints only underscores the breadth of conduct that an abusive plaintiff like Atlas could argue falls within the expansive terms of Daniel's Law.[19]  Many Defendants targeted in these Complaints do not make home addresses or phone numbers publicly searchable by name or otherwise disclose this information on the internet.  For example, numerous Defendants provide data only to other businesses, not to the general public.  *See, e.g.*, Oracle, https://www.oracle.com/ (explaining that its products are for "business[es]"

---

[17] *See* TransUnion, https://www.transunion.com/ (providing credit reporting services), *cited in* TransUnion Complaint ¶ 40; Equifax, https://www.equifax.com/ (similar), *cited in* Compl. ¶ 40, *Atlas Data Privacy Corp. v. Equifax Inc.*, No. 1:24-cv-04298-HB (D.N.J); Innovis, https://innovis.com/ (similar), *cited in* Compl. ¶ 39, *Atlas Data Privacy Corp. v. Innovis Data Solutions Inc.*, No. 1:24-cv-04176-HB (D.N.J).

[18] *See, e.g.*, E-Merges.com, Inc., https://www.emerges.com/ (providing "registered voter lists to political campaigns, pollsters, committees, universities, and researchers"), *cited in* Compl. ¶ 39, *Atlas Data Privacy Corp. v. E-Merges.com Inc.*, No. 1:24-cv-04434-HB (D.N.J) ("E-Merges Complaint").

[19] Defendants reserve all rights to argue, at a later date, that their conduct is not covered by Daniel's Law, whether because it does not fall within the statutory definition of "disclose," or because it falls within one of the statutory exceptions, or for any other reason.

and "enterprise[s]")[20]; Lightbox, https://www.lightboxre.com/ (explaining that it provides data to "decision makers in the commercial real estate market"); PostcardMania, https://www.postcardmania.com/products-services/ (explaining that it offers "postcard marketing services" for businesses).[21]  As another example, some businesses have services that provide information about *an already identified* address or phone number, but do not enable a user to *find* someone's address or phone number by looking up their name.  *See, e.g.*, Homes.com, https://www.homes.com/ (allowing search by "place," but not by name).[22]

## III.   LEGAL STANDARD

A Rule 12(b)(6) motion allows "a court to dismiss a claim on the basis of a dispositive issue of law" before the parties become mired in "needless discovery and factfinding."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  In general, a court considering such a motion may not "go beyond the facts alleged in the Complaint and the documents on which the claims made therein are based."  *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (alterations in original).  "The court

---

[20] *Cited in* Compl. ¶ 41, *Atlas Data Privacy Corp. v. Oracle International Corp.*, No. 1:24-cv-04112-HB (D.N.J) ("Oracle Complaint").

[21] *Cited in* Joy Rockwell Complaint ¶ 39.

[22] *Cited in* CoStar Complaint ¶ 39.

may, however, rely upon 'exhibits attached to the complaint and matters of public record.'" *Id.* (citation omitted).

## IV.   ARGUMENT

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018).   The New Jersey State Constitution likewise provides that "[n]o law shall be passed to restrain or abridge the liberty of speech or of the press."   N.J. Const. art. I, ¶ 6.   "The 'State Constitution's free speech clause is generally interpreted as co-extensive with the First Amendment,'" and in fact "affords greater protection than federal law in certain areas relating to free speech." *Usachenok v. Dep't of the Treasury*, 313 A.3d 53, 60 (N.J. 2024) (citations omitted).

The speech protected by the First Amendment sweeps broadly. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).   Very few categories of speech "lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado*, 600 U.S. 66, 72 (2023).   None of those narrow categories—"incitement," "defamation," "obscenity," and "true threats"—is at issue here. *Id.* at 73–74.   Rather, Daniel's Law restricts the "dissemination of information"—i.e., address and phone number information—which under settled law constitutes "speech within the meaning of the First Amendment." *Sorrell*, 564 U.S. at 570.   Although Daniel's Law was intended

to serve the state's interest in enhancing the safety of judges, law enforcement officers, and other public officials, it is not sufficiently tailored to advancing that purpose, as required by the Constitution, and it is also unconstitutionally vague in critical respects.

### A.   Daniel's Law Is a Content-Based Speech Restriction Subject to Strict Scrutiny

Content-based restrictions on speech are "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  In general, such restrictions can overcome the presumption of unconstitutionality only by satisfying "strict scrutiny," which requires "the government [to] prove[] that [the restrictions] are narrowly tailored to serve compelling state interests."  *Id.* at 164 (citations omitted).  This is a "daunting burden," *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 127 (3d Cir. 2023).  It is thus "rare that a regulation restricting speech because of its content will ever be permissible."  *Brown v. Entm't. Merchs. Ass'n*, 564 U.S. 786, 799 (2011) (citation omitted).

Content-based restrictions are those "that target speech based on its communicative content."  *Reed*, 576 U.S. at 163.  Any law that is "targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter."  *Id*. at 169.  Laws that impose "'restraints on the way in which [certain] information might be used' or disseminated'" are prime examples of content-based restrictions.  *Sorrell*, 564 U.S. at 568 (citation omitted).

22

The Ninth Circuit, for example, recently held that a California state law restricting the "dissemination" of "'date of birth or age information'" was a content-based restriction. *IMDb.com v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020) (quoting Cal. Civ. Code § 1798.83.5(b)).

Daniel's Law is plainly a content-based restriction. By prohibiting persons from "disclos[ing]" or "mak[ing] available" a certain type of information—i.e, "the home address or unpublished home telephone number of any covered person," N.J.S.A. 56:8-166.1(a)(1)—the statute restricts speech based on its communicative content. In other words, the statute "asks what a person said" and, depending on the answer, either allows or prohibits the speech. *Reed*, 576 U.S. at 169. That is the hallmark of a content-based restriction. *Id.*

Other courts have concluded that statutes designed to restrict dissemination of personal information of government officials are content-based speech restrictions. In *Brayshaw v. City of Tallahassee*, for example, the district court concluded that a state law prohibiting the malicious "publish[ing] or disseminat[ion]" of "the residence address or telephone number of any law enforcement officer" was "clearly content-based, as it restricts speech based [on] its subject." 709 F. Supp. 2d 1244, 1249–50 (N.D. Fla. 2010). Likewise, in *Sheehan v. Gregoire*, the district court found that a prohibition on maliciously disseminating the personal information of law enforcement or court personnel was content-based, as it regulated speech "based

solely on the subjects addressed by that speech—whether the information identifies law enforcement-related, corrections officer-related, or court-related employees." 272 F. Supp. 2d 1135, 1146 (W.D. Wash. 2003). And in *Publius v. Boyer-Vine*, the district court found that a statute allowing certain government officials to demand takedowns of their home address or phone number was "content-based on its face" because "it applies only to speech that contains certain content—the 'home address or telephone number of any elected or appointed [California] official.'" 237 F. Supp. 3d 997, 1012–13 (E.D. Cal. 2017) (citations omitted).

A narrow exception to the general rule described above has traditionally been applied to what the Supreme Court has referred to as "commercial speech." *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980). But "commercial speech" refers to "speech that does no more than propose a commercial transaction." *Harris v. Quinn*, 573 U.S. 616, 648 (2014). The speech restricted by Daniel's Law does not propose a commercial transaction at all. While Defendants may have an "economic motivation" in the restricted speech, such motivation is "clearly [] insufficient by itself to turn [the speech] into commercial speech." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983). Indeed, courts routinely hold that address and phone number information, even when disseminated by a for-profit business, constitutes non-commercial speech. *See, e.g.*, *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386, 1389 (N.D. Ill. 2016) (holding

24

that attorney profile website containing address and phone number information is non-commercial speech); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 962 (9th Cir. 2012) (holding that phone numbers and community information in telephone directory constitute non-commercial speech); *IMDb.com*, 962 F.3d at 1122 (holding that online database containing age and date of birth information was "encyclopedic, not transactional," and therefore not commercial speech).

Because Daniel's Law is a content-based restriction on non-commercial speech, it must be analyzed under strict scrutiny.

### B.   Daniel's Law Cannot Satisfy Strict Scrutiny

Under strict scrutiny, a content-based restriction must "further[] a compelling interest." *Reed*, 576 U.S. at 171 (citation omitted). Here, Daniel's Law was enacted to "enhance the safety and security of certain public officials in the justice system" and thereby "foster the ability of these public servants . . . to carry out their official duties without fear of personal reprisal." N.J.S.A. 56:8-166.3. However, even assuming this interest is compelling, strict scrutiny demands that the *means* chosen by the legislature must be "narrowly tailored" to achieve this interest. *Reed*, 576 U.S. at 171. In other words, the legislature must "curtail speech as little as possible" in order to accomplish its goal. *Camp Hill Borough Republican Ass'n v. Borough of Camp Hill*, 101 F.4th 266, 271 (3d Cir. 2024).

Multiple district courts across the country have found statutes restricting disclosure of government officials' personal information to be unconstitutional based on tailoring deficiencies. *See Publius*, 237 F. Supp. 3d at 1019 (granting preliminary injunction to block enforcement of statute allowing government officials to request takedown of address or phone number information, because even assuming state had compelling interest in protecting officials' safety, "the statute is not narrowly tailored to further that interest"); *Brayshaw*, 709 F. Supp. 2d at 1247, 1249 (concluding that a state law prohibiting the "publish[ing] or disseminat[ion]" of "the residence address or telephone number of any law enforcement officer" was unconstitutional because it was not "narrowly tailored" to serve "the state interest of protecting police officers from harm"); *Sheehan*, 272 F. Supp. 2d at 1139, 1146 (finding law prohibiting any "person or organization" to "sell, trade, give, publish, distribute, or otherwise release" address or phone number information of members of law enforcement and certain other public officials was not "narrowly tailored").

Daniel's Law similarly fails because it restricts substantially more speech than necessary to achieve its goal of enhancing the safety of public officials. As explained below, the statute is both substantially over-inclusive and under-inclusive, and disregards "available, effective, alternatives" that curtail far less speech and that the legislature could have enacted instead. *Schrader*, 74 F.4th at 127.

26

### 1. Daniel's Law Restricts Significantly More Speech Than Necessary to Protect the Government's Interest

Daniel's Law prohibits a wide array of conduct that does not implicate safety concerns. The statute therefore is not sufficiently tailored to achieve the state's interest in enhancing the safety of public officials. *See, e.g.*, *Brown*, 564 U.S. at 804 (2011) (finding restriction on children's access to violent video games "vastly overinclusive" as compared to "the Act's purported aid to parental authority"); *ACLU v. Ashcroft*, 322 F.3d 240, 257 (3d Cir. 2003), *aff'd*, 542 U.S. 656 (2004) (finding regulation of pornography, aimed at protecting minors, overbroad because it also "prohibits a wide range of protected expression").

### a) The Definition of "Disclose" Restricts More Speech Than Is Necessary

The problems with Daniel's Law begin with its sweeping definition of "disclose." As explained above, the term "disclose" is given an exceedingly broad scope that, on its face, encompasses many uses of address or phone number information that have no apparent connection to the safety concerns motivating the statute. The term is defined to mean "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer," and includes "making available or viewable within a searchable list or database, *regardless* of whether a search of such list or database is actually performed." N.J.S.A. 56:8-166.1(d) (emphasis added). Nothing in the

statute limits the prohibition to disclosures to the public, as opposed to purely private disclosures to other businesses or within a business. Even the fact that the disclosure must occur "on the Internet," N.J.S.A. 56:8-166.1(a)(1), is not a significant limitation, as all manner of activity occurs over the internet—including email, messaging, remote access to corporate networks, cloud hosting, business applications, and countless other forms of communication and data processing.

For example, under the broad definition of "disclose," the statute could prohibit a business or entity from:

- "selling" (or even "offering") address information to another business for use in mail-marketing campaigns—even if the underlying contract disallows use of the information for any other purpose;[23]

- "disseminating" voter addresses to political campaigns or advocacy organizations, even when the applicable terms of use forbid further dissemination;[24]

---

[23] Notably, the Daniel's Law provisions addressed to public agencies allow those agencies to share covered persons' information with contractors or other agencies as part of their ordinary course of business, N.J.S.A. 47:1B-3(5)—which only underscores the overinclusive nature of the provisions addressed to private businesses, which operate to prohibit such harmless conduct.

[24] By restricting campaigns from using, disclosing, and sharing voter information, the statute infringes on both campaigns' and voters' rights to engage in protected political speech. *See Voter Reference Found., LLC v. Balderas*, 616 F. Supp. 3d

- "giving" a customer address list to an acquiring company in a merger, even if the acquiring company is simply taking on the target company's information;

- "providing" a covered person's address or phone number to a vendor—e.g., a shipper used by an online store—even if the vendor needs the information to perform its contract with the store;

- "transferring" a person's address to a cloud storage service that the business uses to store its customer information; and

- merely *maintaining* an *internal* database containing a covered person's information that the company's employees can access remotely, insofar as that would make the information "available or viewable" to the employees "on the Internet" in "a searchable list or database, regardless of whether a search of such list or database is actually performed."

The statute's indiscriminate definition of "disclose" is highly problematic from a constitutional perspective. It is difficult to understand—and the legislature failed to explain—how prohibiting these sorts of "disclosures" would meaningfully and directly advance the state's interest in the safety of public officials. Even worse,

---

1132, 1261 (D.N.M. 2022) (voter rolls are "the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs" (citation omitted)).

the statute goes *beyond* this definition and prohibits "otherwise mak[ing] available" covered persons' information—adding even greater sweep to the statute and correspondingly greater question as to how it advances safety. This "overinclusive" breadth of the statute violates the First Amendment. *Brayshaw*, 709 F. Supp. 2d at 1249–50 (finding statute restricting disclosure of law enforcement information "overinclusive in proscribing speech that is not a true threat"); *see generally Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 120–21 (1991) (declaring statute "significantly overinclusive" because, among other things, statute's definition of "person convicted of crime" swept in range of behavior implicating "little if any [state] interest"); *Carey v. Wolnitzek*, 614 F.3d 189, 205 (6th Cir. 2010) (finding narrow-tailoring problem where statute's definition of "solicitation" encompassed "methods of solicitation" that "present little or no risk" to the purported state interest); *Ams. for Prosperity v. Grewal*, No. 19-cv-14228-BRM-LHG, 2019 WL 4855853, at *17 (D.N.J. Oct. 2, 2019) (granting preliminary injunction of campaign finance law on First Amendment grounds because "the broad inclusiveness of the Act's definition of media bears little relation to what media are actually used" for electioneering purposes, and as a result "practically any media spending appears to trigger the Act's disclosure and reporting regime").

The statute's tailoring deficiencies continue with its seemingly categorical prohibition on disclosing a covered person's home address or phone number—even

when the disclosure does not include any information linking the address or phone number *to the covered person*. *See* N.J.S.A. 56:8-166.1(a)(1) (imposing blanket restriction on any "disclosure" of "the home address or unpublished home telephone number of any covered person"). This would appear to imply, for example, that were Google to receive a non-disclosure notification from a covered person, it would have to remove the individual's address from Google Maps, even though the address would not appear in any way that links it to the covered person. Courts routinely find speech restrictions unconstitutional when they encompass behavior that has no significant nexus to the state's purported interest. *See Brown*, 564 U.S. at 804; *ACLU*, 322 F.3d at 267–68.[25]

---

[25] Compounding the statute's tailoring problems, Daniel's Law does not include any exception for reporting, news-gathering, or other activities intended to inform the public on matters of public concern. Courts have held that publication of the type of information at issue here—individuals' home addresses and phone numbers—can be in the public interest in certain circumstances. *See, e.g.*, *Publius*, 237 F. Supp. 3d at 1014; *Brayshaw*, 709 F. Supp. 2d at 1249. Yet Daniel's Law makes no accommodation for such situations, even where the information is obtained from public sources. *See Bartnicki v. Vopper*, 532 U.S. 514, 533–34 (2001) (laws that "impose[] sanctions on the publication of truthful information of public concern" implicate the "core purposes of the First Amendment"); *Bowley v. City of Uniontown Police Dep't*, 404 F.3d 783, 789 (3d Cir. 2005) ("[W]hen the government is ultimately responsible for the disclosure of information, imposing civil liability upon a newspaper for the subsequent publication of that information is not the most narrowly tailored means of serving any purported interest.").

31

**b)** **The Lack of a Verification Process Restricts More Speech Than Necessary**

The statute's tailoring problems are exacerbated by the lack of any process to verify whether a purported "covered person" is indeed a "covered person" who is entitled to the statute's protections.  Absent such a process, the statute contains no means to ensure that its protections—and the concomitant restrictions on speech—are reserved for those individuals whom the statute was intended to protect.  In contrast, the process for requesting non-disclosure of covered information from *public agency* sources includes such a verification requirement, as it makes fulfilment of non-disclosure requests contingent on seeking and receiving approval from the Office of Information Privacy.  As explained above, prior to the most recent amendments to Daniel's Law, there was a similar requirement for non-disclosure requests directed to private persons or entities, but in 2023 the statute was amended—without any explanation—to *remove* that verification requirement and its protections, again unnecessarily extending the statute's sweep.

The state's interest in protecting the addresses and phone numbers of "covered persons" is the same whether a private person or business possesses the information or whether a government agency does.  There is thus no good reason to impose a verification requirement only for requests to government agencies.  And the fact that the process for requesting nondisclosure from government agencies includes a verification requirement precludes any argument that a similar requirement for non-

32

disclosure requests directed to private companies would undermine the state's safety interests. *See Publius*, 237 F. Supp. 3d at 1019 (finding that statute allowing government officials to request takedown of address or phone number information was not narrowly tailored because, among other things, it did "not require that the threat be credible or that a third-party review whether the official's request is well-founded" (internal citations omitted)).

The potential for improper chilling of protected speech based on the lack of a verification requirement is particularly worrisome given the legislature's decision to amend Daniel's Law in 2023 to allow for the "assignment" of claims. 2023 NJ Sess. Law Serv. Ch. 113 (WEST); *supra* at 13. The combination of the lack of a verification requirement with the ability to easily assign claims to opportunistic plaintiffs' lawyers incentivizes potentially abusive requests, utterly divorced from the core concerns of the statute. Yet, Defendants and others have no choice but to quickly comply with any requests received or risk lawsuits seeking to impose extensive civil liability. That chills far more speech than is necessary to achieve the state's interest in enhancing the safety of public officials.

### c) The "Liquidated Damages" Provision Restricts More Speech Than Is Necessary

Finally, Daniel's Law goes further than necessary in providing that a court "shall" award "actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act." N.J.S.A. 56:8-166.1(c)(1). This

provision does not merely apply to the intentional or negligent disregard of a non-disclosure notification; rather by its terms it applies to any "violation" of the statute, even if purely technical and inadvertent, and even if *induced by the plaintiff themself*, as Atlas has sought to do here.  N.J.S.A. 56:8-166.1(c)(1).

The imposition of a harshly punitive remedy where a lesser remedy is sufficient to achieve the state's interest further highlights the legislature's insensitivity to free speech concerns and is relevant to the First Amendment analysis. *Schrader*, 74 F.4th at 128.  Just last year, the Third Circuit disallowed a criminal prosecution for violation of a law prohibiting the publication of information from a government database, when the district attorney "offered little more than assertion and conjecture to support [his] claim that without criminal sanctions the objectives of [the law] would be seriously undermined."  *Id.* (quoting *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841 (1978)) (alterations in original).  In the Third Circuit's view, the availability of less punitive measures—for example, issuing a protective order preventing the sharing of the information at issue—doomed the state's attempt to impose the harsher consequence of criminal sanctions.  *Id.*

The same logic applies to the harsh and inflexible damages provision at issue here.  The objectives of Daniel's Law would be similarly served if the remedy for a civil violation were an injunction (like the protective order in *Schrader*), instead of a "liquidated damages" provision triggered by a short deadline, which takes no

34

account of whether the defendant is at fault for any failure to meet it.  The legislature was clearly aware of less punitive alternatives.   As originally enacted, the notification provision of Daniel's Law only provided for an injunction plus an award of fees and costs in the event of non-compliance, N.J.S.A. 56:8-166.2(2)(c) (2020); and even when the 2021 amendments introduced the possibility of "liquidated damages" in the notification provision, the statute provided only that a court "may" award such damages, leaving imposition to the sound discretion of the judge, N.J.S.A. 56:8-166.2(1)(c) (2021).  No explanation was provided for the subsequent amendment in 2023 that changed "may" to "shall."  Moreover, the legislature was also aware of a pre-existing provision of New Jersey law that made "liquidated damages" available for disclosure of certain personal information of law enforcement officers under circumstances where "a reasonable person would believe that doing so would cause harm." *See supra* n.2 (citing N.J.S.A. 56:8-166.1(1)(c) (2016)).  Yet the liquidated damages provision of the notification provision of Daniel's Law has no nexus to such circumstances.  No explanation was given in 2023 for why the legislature provided for "liquidated damages" in the notification provision in the absence of such belief.

All this "raise[s] concern that [the state] has too readily foregone options that could serve its interests just as well, without substantially burdening the kind of speech in which petitioners wish to engage." *McCullen v. Coakley*, 573 U.S. 464,

490 (2014).  Indeed, the district court in *Publius* found a statute similar to Daniel's Law unconstitutional in part on the ground that the statute imposed mandatory attorney's fees and costs in the event that a defendant failed to timely comply with a covered official's request to take down the official's address or phone number information.  237 F. Supp. 3d at 1019–20.  Even though only *attorney's fees and costs* were imposed by the statute at issue there, the court found that such "automatic liability" would have a "chilling effect on First Amendment rights" and compounded the narrow-tailoring concerns raised by the statute.  *Id.* (citation omitted).  This reasoning applies with even more force here, where so-called "liquidated damages" are available *in addition to* fees and costs.

\*     \*     \*

In sum, by its plain terms, Daniel's Law prohibits broad categories of behavior that do not significantly implicate safety concerns.  It also chills more speech than necessary by failing to include any verification mechanism and by providing for "liquidated damages" for violations.  Thus, the statute is significantly over-inclusive and is insufficiently tailored to achieve its stated interest in enhancing the safety of public officials, and therefore fails strict scrutiny.

### 2.  Daniel's Law Does Not Materially Advance the State's Safety Interests

Daniel's Law fails constitutional scrutiny for another reason.  Not only does the law capture too *much* speech, it also captures too little, as the law allows many

36

entities, including public agencies, to continue publishing the same information that it punishes others for providing. These contradictions and holes in the statute's coverage imply that, as currently constructed, Daniel's Law is not effectively designed to reduce danger to public officials.

As the Supreme Court has noted, the "[u]nderinclusiveness" of a speech restriction is evidence "that a law does not actually *advance* a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015); *see Yim v. City of Seattle*, 63 F.4th 783, 795 (9th Cir. 2023) ("[A] statute cannot meaningfully advance the government's stated interests if it contains exceptions that 'undermine and counteract those goals" (citation omitted)). Based on this principle, the Supreme Court in *Smith v. Daily Mail Publishing Company* struck down a statute prohibiting newspapers from releasing the names of juvenile defendants, when that prohibition did not extend to electronic media. 443 U.S. 97, 104-05 (1979). In light of the gaping hole in the statute's coverage, the Court concluded that the law "did not advance its stated purpose of protecting youth privacy." *Williams-Yulee*, 575 U.S. at 449 (summarizing *Daily Mail Publ'g*).

Daniel's Law suffers from similar under-inclusiveness concerns. For starters, the statute requires a private business or individual receiving a non-disclosure request to comply within 10 business days—regardless of whether the covered information will remain readily available in public records after that deadline.

37

Although Daniel's Law includes a separate process for removing certain covered information from public sources, *see* N.J.S.A. 47:1B-1–3, nothing requires a covered person to take advantage of that process before (or even after) sending a non-disclosure request to a business or a private person.  In fact, the names and addresses of **at least four of the individually identified Plaintiffs** can readily be found online through name-based lookups of state property records.  *See* Exs. 2–4.

Because many businesses obtain information about individuals' names, addresses, and phone numbers *from* New Jersey public agencies, which Daniel's Law does *not* require to remove information in parallel with any non-disclosure notification requests made to private businesses, the law is self-defeating.  That under-inclusiveness contributes to the unconstitutionality of the statute.  "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release."  *Florida Star v. B.J.F.*, 491 U.S. 524, 535 (1989); *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 286–87 (4th Cir. 2010) ("We cannot conclude that prohibiting [the defendant] from posting public records online would be narrowly tailored to protecting individual privacy when Virginia currently makes those same records available …."); *Publius*, 237 F. Supp. 3d at 1020–21 (finding statute under-inclusive insofar as it proscribed dissemination of a covered official's home address and phone number "regardless

of the extent to which it is available or disseminated elsewhere"); *Brayshaw*, 709 F. Supp. 2d at 1250 (similar); *Sheehan*, 272 F. Supp. 2d at 1147 (similar).[26]

What is more, large categories of information—most significantly, "records evidencing any lien, judgement, or other encumbrance upon real or other property"—are not at all subject to redaction or non-disclosure under the statute. N.J.S.A. 47:1B-3(a)(4)(d). Thus, even if a covered person *does* make non-disclosure notifications to both private entities and public agencies, their information could still be made available through these real estate records, in an online form searchable by name (like the property records containing the individual Plaintiffs' information). Under these circumstances, prohibiting the "dissemination of information which is already publicly available is relatively unlikely to advance the interests in the service of which the State seeks to act." *Fla. Star*, 491 U.S. at 535. Where "the government has failed to police itself in disseminating information," the imposition of a restriction on the dissemination of similar information by private entities "can hardly

---

[26] Moreover, the private enforcement regime of Daniel's Law can result in a covered person's information remaining available on some websites but not on others, where covered persons themselves choose to self-publish the information and fail to take it down, as has occurred here, *see supra* n.4. The lack of any requirement for the covered person to certify that they have not themselves published the information that they are requesting not to be disclosed, or have made every effort to remove information that was self-published previously, further adds to the statute's under-inclusiveness.

be said to be a narrowly tailored means of safeguarding" the state's purported interests. *Schrader*, 74 F.4th at 127 (quoting *Fla. Star*, 491 U.S. at 538); *Sheehan*, 272 F. Supp. 2d at 1147 (finding that, having "inject[ed] personal identifying information into the public domain," the government "cannot credibly take the contradictory position" that other dissemination "offends a compelling state interest").[27]

Accordingly, the under-inclusiveness of Daniel's Law undermines any argument that the statute materially advances the state's purported interest, as required under the First Amendment.

### 3. The Legislature Has Less Restrictive Alternatives to Achieve Its Interest

This lack of tailoring in Daniel's Law is particularly "unacceptable" because the legislature ignored "less restrictive alternatives [that] would be at least as effective" in advancing its interest in enhancing public officials' safety. *Reno v. Am. Civ. Liberties Union*, 521 U.S. 844, 845–46 (1997). That is anathema to the First Amendment. "If a less restrictive alternative would serve the Government's purpose,

---

[27] Beyond exceptions to the statute that are specifically included in Daniel's Law itself, there may be other exceptions that arise by operation of other statutes. Indeed, at least one public agency has said that it likely cannot comply with Daniel's Law, because it is required by other laws to disclose certain information on campaign expenditures. New Jersey Election Law Enforcement Commission, 2023 Annual Report at 9 (April 2024), https://www.elec.nj.gov/pdffiles/ annual_reports/annual2023.pdf, Ex. 31.

the legislature *must* use that alternative." *United States v. Playboy Entm't. Grp., Inc.*, 529 U.S. 803, 813 (2000) (emphasis added) (citation omitted).

The New Jersey legislature had, and continues to have, ample reasonable options to craft a more narrowly tailored statute aimed at enhancing the safety of public officials. Perhaps most saliently, it could enact a far more targeted prohibition than one that encompasses every type of "disclosure" imaginable, even where there has been no actual publication of the information at all. Further, the legislature could include—similar to what was in place before the 2023 amendments—a verification requirement for non-disclosure notices to private entities, to ensure that the individual is in fact a covered person. *See* N.J.S.A. 56:8-166.1(a)(1) (2021); *cf.* Cal. Gov't Code § 7928.215(c) (requiring non-disclosure demand to "include a statement describing a threat or fear for the safety" of the requesting official). The legislature could also include penalty provisions, if at all, that are based on fault—again, similar to what was in place before the 2023 amendments—and that do not create the potential for the statute to be used as an extortion instrument as Plaintiffs are seeking to use it here.[28]

---

[28] Defendants do not concede that these changes would be sufficient to render the statute constitutional. Rather, the point is that the Legislature was bound to consider these less restrictive alternatives and explain why they were insufficient.

41

"When plausible, less restrictive alternative[s] [are] offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative [would] be ineffective to achieve its goals." *Playboy Entm't. Grp.*, 529 U.S. at 816. The legislature has not met that burden here. It has never attempted to explain why it did not pursue these obvious, less restrictive options. Nor has it explained why, in a series of amendments with no supporting legislative history, it has made the law consistently broader and harsher, and abandoned less speech-chilling alternatives that would effectively advance the state's interest.

Ultimately, the "Government's burden is not merely to show that a proposed less restrictive alternative has some flaws; its burden is to show that it is less effective." *Ashcroft v. ACLU*, 542 U.S. 656, 669 (2004) (citation omitted). In order to do so, the state "would have to show either that substantially less-restrictive alternatives were tried and failed, or that the alternatives were closely examined and ruled out for good reason." *Bruni*, 824 F.3d at 369-70 (reversing district court's dismissal of First Amendment challenge to buffer-zone ordinance where city did not show it considered less restrictive alternatives to achieving its interest). Absent a "meaningful" explanation as to why "alternative measures that burden substantially less speech would fail to achieve the government's interests"—an explanation that common sense suggests the legislature would never be able to furnish—Daniel's Law fails constitutional scrutiny. *Id.*

42

### C.   Daniel's Law Fails Even Intermediate Scrutiny

As explained above, Section IV.A, Daniel's Law is subject to strict scrutiny as a content-based restriction.   But even if this Court somehow concludes that Daniel's Law is subject to intermediate scrutiny, the result should be the same. Intermediate scrutiny also has a heightened fit requirement that requires a speech restriction to be "narrowly drawn" to advance the state's "substantial" interest. *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 565-66 .  Like strict scrutiny, intermediate scrutiny demands that a speech restriction advance the stated interest "to a material degree*." 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996) (citation omitted).  The existence of "less-burdensome alternatives" is also a crucial factor to consider in analyzing a speech restriction under intermediate scrutiny.   *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.13 (1993).

Under this standard, "the 'fit' between the proposed restriction and the government's interest need not be the least restrictive means," but there still needs to be a "reasonable fit between the legislature's ends and the means chosen to accomplish those ends." *See Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 138 (3d Cir. 2020) (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 528 (2001)).  That means that the government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *McCullen*, 573 U.S. at 490 (citation omitted); *see Bd. of Trs. of*

*State Univ. of N.Y. v. Fox*, 492 U.S. 469, 479 (1989) (amount of speech prohibited under intermediate scrutiny may not be "substantially excessive" in relation to the state's purported interest).

For much the same reasons that Daniel's Law fails strict scrutiny, *see* Section IV.B, it easily fails intermediate scrutiny, too. Because of the tailoring problems detailed above, Daniel's Law prohibits far more speech than is necessary to achieve the state's interest, and its restrictions are not a "reasonable fit . . . narrowly tailored to achieve the desired objective" of enhancing public officials' safety. *Lorillard Tobacco Co.*, 533 U.S. at 561. And as explained at length above, the substantial under-inclusiveness of Daniel's Law prevents it from advancing the state's interest "to a material degree." *Liquormart*, 517 U.S. at 505 (citation omitted).

When, as here, speech restrictions are demonstrably over- or under-inclusive or leave significant holes in their coverage, courts do not hesitate to strike them down under intermediate scrutiny. In *Pitt News v. Pappert*, for example, the Third Circuit applied intermediate scrutiny to invalidate a statute prohibiting alcohol advertising to college students by media outlets affiliated with educational institutions, which was aimed at combatting underage alcohol consumption. 379 F.3d 96, 102 (3d Cir. 2004). The Court explained that the statute was "both severely over- and under-inclusive." *Id.* at 108. The statute was fatally over-inclusive because it also prevented certain communications with many adults "over the legal drinking age."

44

*Id.*  And the statute was also under-inclusive—and so could not be said to advance the state's interest "to a material degree"— because minors would still be "exposed to a torrent" of "ads on television and the radio" and other forms of media.  *Id.* at 107 (first citation omitted); *see also Rubin v. Coors Brewing Co.*, 514 U.S. 476, 488–89 (1995) (employing intermediate scrutiny to strike down under-inclusive statute); *Yim*, 63 F.4th at 795–96 (employing intermediate scrutiny to strike down over-inclusive statute).

The same considerations apply to Daniel's Law, given the substantial over-inclusiveness and under-inclusiveness of the statute, and the clear existence of less restrictive alternatives.  *See supra* Part IV.B.  Accordingly, even if this Court concludes that intermediate scrutiny applies, it should find the law unconstitutional.

### D.     Daniel's Law Is Unconstitutionally Vague

In addition to its other constitutional infirmities, Daniel's Law is also unconstitutionally vague.  The law's provisions leave regulated parties unable to forecast what conduct could be punishable by harsh penalties and invite arbitrary enforcement.

A law is void for vagueness if it fails to provide sufficient notice of the conduct that is prohibited, such that "regulated parties [do not] know what is required of them," or is otherwise susceptible to arbitrary enforcement.  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012).  Statutes must be written

clearly enough to "enable the ordinary citizen to conform his or her conduct to the law," as forcing parties to guess what conduct might be prohibited offends basic notions of fundamental fairness. *City of Chi. v. Morales*, 527 U.S. 41, 59 (1999). Requiring that a law provide "clear guidelines" to those responsible for enforcing it "ensure[s] fair and non-discriminatory application of the law[]." *N.J. Freedom Org. v. City of New Brunswick*, 7 F. Supp. 2d 499, 514–15 (D.N.J. 1997) (quoting *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1266 (3d Cir. 1992)).

"When speech is involved," statutes must "rigorous[ly] adher[e]" to these requirements. *FCC*, 567 U.S. at 253–54. Vagueness in "content-based" speech regulations "raise[s] special First Amendment concerns because of [the] obvious chilling effect." *Reno*, 521 U.S. at 845–46. For this reason, courts apply "a more stringent" vagueness test to laws that restrict speech. *Franklin v. Navient Inc.*, 534 F. Supp. 3d 341, 347 (D. Del. 2021) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982)).

Due to the sweeping breadth of its prohibition, Daniel's Law fails to provide sufficient notice of what is prohibited. As explained above, the statute's definition of "disclose" by itself encompasses a seemingly boundless range of conduct, potentially encompassing any type of "transfer" of a covered person's home address or phone number. N.J.S.A. 56:8-166.1(d). Again, the fact that the disclosure must occur "on the Internet," N.J.S.A. 56:8-166.1(a)(1), is not a significant limitation, as

46

the internet encompasses a vast variety of communications and data processing, not simply publishing content on a website.  But making matters worse, the statutory prohibition does not stop with the phrase "disclose … on the Internet."  It goes on to proscribe "otherwise mak[ing] available" a covered person's information—a completely undefined, open-ended phrase that, unlike "disclose," is not even modified by the phrase "on the Internet."  N.J.S.A. 56:8-166.1(a)(1).

The statutory prohibition thus has no obvious limitation and leaves reasonable minds to guess at what conduct might be deemed to be barred by the statute. Someone in receipt of a non-disclosure notification made under the statute cannot be sure of all the things they need to do, or not do, to avoid potential liability.  For example, is it permissible for a business to maintain a covered person's information in a file or database kept on a corporate share drive?  The data is "available" to corporate employees in that circumstance.  Is it permissible for a business to mail a letter or a package to the covered person at their home address?  Or for Amazon to deliver a package?  Putting the person's name and address on the envelope or the box could make it "available" to anyone in the mailroom or the warehouse.  What about an employee writing the person's information on a post-it note and leaving it on their desk?  It is "available" in that circumstance to anyone who walks by.

The poorly drawn terms of the statutory prohibition may cause businesses to refrain from *any* uses of a covered person's address or phone information, well

47

beyond any conduct that the legislature may have intended to prohibit—such as by purging the covered person's information from their records or refusing to do business with the person at all.  Where a statute's ambiguities cause regulated parties to "steer far wider of the unlawful zone" by curtailing constitutionally protected conduct, its "vagueness cannot be tolerated."  *Planned Parenthood of Cent. N.J. v. Verniero*, 41 F. Supp. 2d 478, 493–94 (D.N.J. 1998) (citations omitted).

The lack of definitional clarity also invites arbitrary—and abusive— enforcement.   Countless businesses collect or use phone number or address information in one way or another, in the form of customer lists, account information, or otherwise, and often need that information to be "available" to various persons— such as employees, vendors, or business partners—as part of their everyday operations.  Unbounded statutory terms mean that a litigation vehicle like Atlas has an endless set of businesses it can select as targets for abusive non-disclosure notifications and subsequent lawsuits like those brought here.  That is precisely the sort of unpredictable enforcement that the void-for-vagueness doctrine exists to prevent.  *See N.J. Freedom Org.*, 7 F. Supp. 2d at 515–16 (invalidating ordinance that would have required permit for any event of a certain size where money was solicited, because its breadth rendered it susceptible to selective enforcement); *cf. Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 576 (1987) (law that potentially captured all speech in airport terminal violated First Amendment because

"[t]he opportunity for abuse, especially where a statute has received a virtually open-ended interpretation, is self-evident" (citation omitted)).

Likewise, the requirement that businesses take down "*unpublished* home telephone numbers" of covered persons, N.J.S.A. 56:8-166.1(a) (emphasis added), provides insufficient notice of the conduct prohibited by the statute.  The statute provides no definition of what it means for a home telephone number to be "unpublished."  And, in this day and age, no standard exists to distinguish "published" telephone numbers from "unpublished" numbers:  The terms are an anachronism tied to local telephone directories, which are largely a thing of the past.  Accordingly, the recipient of a non-disclosure request under Daniel's Law has no way to determine whether a telephone number is "unpublished"—and therefore subject to the statute—or "published"—and therefore not.  This provision is therefore also unconstitutionally vague.

## V.    CONCLUSION

For these reasons, Daniel's Law violates the First Amendment and the Free Speech Clause of the New Jersey State Constitution, and is unconstitutionally vague. This Court should therefore grant Defendants' motion and dismiss Plaintiffs' claims with prejudice.

Dated: June 10, 2024

**LATHAM & WATKINS LLP**

/s/ *Kevin M. McDonough*

Kevin M. McDonough (ID: 41892005)
Serrin Turner (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
        serrin.turner@lw.com

Bradley M. Baglien (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email: bradley.baglien@lw.com

*Attorneys for Defendants LightBox Parent, L.P. and LightBox Holdings, L.P.*

50

Dated: June 10, 2024

**CARLTON FIELDS**

/s/ *Michael T. Hensley*

Michael T. Hensley
Jorkeell Echeverria
180 Park Avenue, Suite 106
Florham Park, New Jersey 07932
Tel: 973.828.2613
Fax: 212.430.5501
MHensley@carltonfields.com
JEcheverria@carltonfields.com

**PARKER POE ADAMS & BERNSTEIN LLP**

Sarah F. Hutchins (*pro hac vice*)
Corri A. Hopkins (*pro hac vice*)
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Tel: 704.335.6639
sarahhutchins@parkerpoe.com
corrihopkins@parkerpoe.com

*Attorneys for Defendant Blackbaud, Inc.*

Dated: June 10, 2024

**VEDDER PRICE P.C.**

/s/ *Blaine C. Kimrey*

Blaine C. Kimrey (*pro hac vice*)
bkimrey@vedderprice.com
Bryan K. Clark (*pro hac vice*)
bclark@vedderprice.com
222 N. LaSalle Street
Chicago, IL 60601
T: +1 312 609 7500
F: +1 312 407 5005

Jean A. Occhiogrosso
jocchiogrosso@vedderprice.com

51

Vedder Price P.C.
1633 Broadway, 31st Floor
New York, New York 10019
T: +1 212 407 7700
F: +1 212 407 7799

*Attorneys for Defendant Whitepages, Inc.*

Dated: June 10, 2024          **VEDDER PRICE P.C.**

/s/ *Blaine C . Kimrey*
Blaine C. Kimrey (*pro hac vice*)
bkimrey@vedderprice.com
Bryan K. Clark (*pro hac vice*)
bclark@vedderprice.com
222 N. LaSalle Street
Chicago, IL 60601
T: +1 312 609 7500
F: +1 312 407 5005

Jean A. Occhiogrosso
jocchiogrosso@vedderprice.com
Vedder Price P.C.
1633 Broadway, 31st Floor
New York, New York 10019
T: +1 212 407 7700
F: +1 212 407 7799

*Attorneys for Defendant Hiya, Inc.*

Dated: June 10, 2024          **SEYFARTH SHAW LLP**

/s/ *Robert T. Syzba*
Robert T. Szyba
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018-1405
Telephone: (212) 218-5500
Email: rszyba@seyfarth.com

52

*Attorneys for Defendant We Inform,*
*LLC*

Dated: June 10, 2024                    **SEYFARTH SHAW LLP**

                                        /s/ *Robert T. Syzba*
                                        Robert T. Szyba
                                        SEYFARTH SHAW LLP
                                        620 Eighth Avenue, 32nd Floor
                                        New York, NY 10018-1405
                                        Telephone: (212) 218-5500
                                        Email: rszyba@seyfarth.com

                                        *Attorneys for Defendant Infomatics,*
                                        *LLC*

Dated: June 10, 2024                    **SEYFARTH SHAW LLP**

                                        /s/ *Robert T. Syzba*
                                        Robert T. Szyba
                                        SEYFARTH SHAW LLP
                                        620 Eighth Avenue, 32nd Floor
                                        New York, NY 10018-1405
                                        Telephone: (212) 218-5500
                                        Email: rszyba@seyfarth.com

                                        *Attorneys for Defendant The People*
                                        *Searchers, LLC*

Dated: June 10, 2024                    **DENTONS US LLP**

                                        /s/ *Stephen M. Turner*
                                        Stephen M. Turner, Esq.
                                        DENTONS US LLP
                                        101 JFK Parkway, 4th Floor
                                        Short Hills, NJ 07078
                                        Telephone: (973) 912-7146
                                        Email: stephen.turner@dentons.com

Bety Javidzad, Esq. (*pro hac vice*)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone: (213) 243-6115
Email: bety.javidzad@dentons.com

*Attorneys for Defendant Commercial Real Estate Exchange, Inc.*

Dated: June 10, 2024

**TROUTMAN PEPPTER HAMILTON SANDER LLP**

/s/ Angelo A. Stio III
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
        melissa.chuderwicz@troutman.com

*Attorneys for Defendant DM Group.Inc.*

Dated: June 10, 2024

**TROUTMAN PEPPTER HAMILTON SANDER LLP**

/s/ Angelo A. Stio III
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227

Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
      melissa.chuderwicz@troutman.
      com

*Attorneys for Defendant Carco Group
Inc.*

Dated: June 10, 2024

**TROUTMAN PEPPTER
HAMILTON SANDER LLP**

/s/ Angelo A. Stio III
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
      melissa.chuderwicz@troutman.
      com

*Attorneys for Defendant Deluxe Corp.*

Dated: June 10, 2024

**ORRICK, HERRINGTON &
SUTCLIFFE LLP**

/s/ Camille Joanne Rosca
Camille Joanne Rosca
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Telephone: +1 212 506 5000
Email: crosca@orrick.com

55

*Attorneys for Defendant*
*TWILIO INC.*

Dated: June 10, 2024                    **SPIRO HARRISON & NELSON**

                                        /s/ Thomas M. Kenny
                                        Thomas M. Kenny, Esq.
                                        Francesca Simone, Esq.
                                        363 Bloomfield Avenue, Suite 2C
                                        Montclair, NJ 07042

                                        *Attorneys for Defendants Quantarium*
                                        *Alliance, LLC and Quantarium*
                                        *Group, LLC*

Dated: June 10, 2024                    **QUINN EMANUEL URQUHART**
                                        **& SULLIVAN, LLP**

                                        /s/ Anthony J. Staltari
                                        Anthony J. Staltari (ID No.
                                        233022017)
                                        51 Madison Avenue, 22nd Floor
                                        New York, New York 10010
                                        Tel.: (212) 849-7000
                                        Email:
                                        anthonystaltari@quinnemanuel.com

                                        Viola Trebicka (*pro hac vice*)
                                        John Wall Baumann (*pro hac vice*)
                                        865 S. Figueroa Street, 10th Floor
                                        Los Angeles, CA 90017
                                        Telephone: (213) 443-3000
                                        violatrebicka@quinnemanuel.com
                                        jackbaumann@quinnemanuel.com

                                        Ella Hallwass (*pro hac vice*)
                                        555 Twin Dolphin Drive, 5th Floor
                                        Redwood Shores, CA 94065
                                        Telephone: (650) 801-5000
                                        ellahallwass@quinnemanuel.com

56

Xi ("Tracy") Gao (*pro hac vice* )
1300 I Street NW, Suite 900
Washington D.C., 20005
Telephone: (202) 538-8000
tracygao@quinnemanuel.com

*Attorneys for Defendant Yardi
Systems, Inc.*

Dated: June 10, 2024          **CLARK HILL PLC**

                             */s/ Myriah V. Jaworski*
                             Myriah V. Jaworski (*pro hac vice*)
                             Chirag H. Patel (*pro hac vice*)
                             Steven Richman, Esq.
                             210 Carnegie Center, Suite 102
                             Princeton, NJ 08540
                             (609) 785-2911
                             Email: mjaworski@clarkhill.com
                                    cpatel@clarkhill.com
                                    srichman@clarkhill.com

                             *Attorneys for Defendant
                             6sense Insights, Inc.*

Dated: June 10, 2024          **CLARK HILL PLC**

                             */s/ Myriah V. Jaworski*
                             Myriah V. Jaworski (*pro hac vice*)
                             Chirag H. Patel (*pro hac vice*)
                             Steven Richman, Esq.
                             210 Carnegie Center, Suite 102
                             Princeton, NJ 08540
                             (609) 785-2911
                             Email: mjaworski@clarkhill.com
                                    cpatel@clarkhill.com
                                    srichman@clarkhill.com

                             *Attorneys for Defendant*

57

*Search Quarry LLC*

Dated: June 10, 2024

**TROUTMAN PEPPTER
HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendant Acxiom LLC*

Dated: June 10, 2024

**TROUTMAN PEPPTER
HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendants Enformion,
LLC and Enformion Holdco, Inc.*

58

Dated: June 10, 2024            **LATHAM & WATKINS LLP**

/s/ *Kevin M. McDonough*

Kevin M. McDonough (ID: 41892005)
Serrin Turner (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
      serrin.turner@lw.com

Bradley M. Baglien (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email: bradley.baglien@lw.com

*Attorneys for Defendants CoStar Group, Inc. and CoStar Realty Information, Inc.*

Dated: June 10, 2024            **LATHAM & WATKINS LLP**

/s/ *Kevin M. McDonough*

Kevin M. McDonough (ID: 41892005)
Serrin Turner (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com
      serrin.turner@lw.com

Jennifer C. Archie (*pro hac vice*)
Bradley M. Baglien (*pro hac vice*)

59

LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email: jennifer.archie@lw.com
bradley.baglien@lw.com

Robert C. Collins (*pro hac vice*)
LATHAM & WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

*Attorneys for Defendants Oracle*
*International Corporation, Oracle*
*America, Incorporated, and Oracle*
*Corporation*

Dated: June 10, 2024

**TROUTMAN PEPPTER**
**HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendant Red Violet,*
*Inc.*

Dated: June 10, 2024

**KELLEY DRYE & WARREN LLP**

_/s/ Lauri A. Mazzuchetti_
Lauri A. Mazzuchetti
Whitney M. Smith
Aaron J. Gold
KELLEY DRYE & WARREN LLC
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Tel: (973) 503-5900
Fax: (973) 503-5950
lmazzuchetti@kelleydrye.com
wsmith@kelleydrye.com
agold@kelleydrye.com

_Counsel for Defendant_
_RE/MAX, LLC_

Dated: June 10, 2024

**FAEGRE DRINKER BIDDLE &**
**REATH LLP**

_/s/ Ross A. Lewin_
Ross A. Lewin
Faegre Drinker Biddle & Reath LLP
105 College Road East
Princeton, New Jersey 08542

Kevin DeMaio
600 Campus Drive
Florham Park, New Jersey 07932
ross.lewin@faegredrinker.com
kevin.demaio@faegredrinker.com

**HARRISON LAW LLC**
Rachel B. Niewoehner *(pro hac vice)*
Katherine A.G. Sobiech *(pro hac vice)*
141 West Jackson Boulevard,
Suite 2055
Chicago, Illinois 60604
(312) 638-8776

*Attorneys for Defendants*
*Epsilon Data Management, LLC,*
*Conversant LLC, and*
*Citrus Ad International, Inc.*

Dated: June 10, 2024

**STARR, GERN, DAVISON & RUBIN, P.C.**

*/s/ Richard T. Welch*
Richard T. Welch, Esq. (032982006)
Ronald L. Davison, Esq. (266481971)
Starr, Gern, Davison & Rubin, P.C.
105 Eisenhower Parkway, Suite 401
Roseland, NJ 07068-1640
Tel:  973.403.9200
rwelch@starrgern.com
rdavison@starrgern.com

**ZWILLGEN PLLC**

Jacob Sommer, Esq.
1900 M. Street NW, Suite 250
Washington, DC 20036
Tel: 202.706.5205
jake@zwillgen.com
(Admitted Pro Hac Vice)

Sudhir Rao, Esq.
183 Madison Avenue, Suite 1504
New York, NY 10016

Tel: 646.362.5590
Sudhir.Rao@zwillgen.com
(Admitted Pro Hac Vice)

*Attorneys for Defendant People Data Labs, Inc.*

Dated: June 10, 2024          **STOEL RIVES LLP**

*/s/ Misha Isaak*
Misha Isaak
misha.isaak@stoel.com
James A. Kilcup
james.kilcup@stoel.com
Alexandra Choi Giza
alexandra.giza@stoel.com
STOEL RIVES LLP
760 SW Ninth Ave, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380

Ryan J. Cooper
ryan@cooperllc.com
COOPER, LLC
108 N. Union Ave., Suite 4
Cranford, NJ 07016
Telephone: (908) 514-8830

*Counsel for Defendant Labels & Lists, Inc.*

Dated: June 10, 2024          **GORDON, REES, SCULLY & MANSUKHANI LLP**

*/s/ Douglas Motzenbecker*
Douglas Motzenbecker, Esq.
Joseph Salvo, Esq. (*pro hac vice forthcoming*)
John Mills, Esq. (*pro hac vice forthcoming*)

63

Bianca Evans, Esq. (pro hac vice)
1 Battery Park Plaza
Suite 2801
New York, NY 10004
Telephone: (212) 453-0725
Facsimile: (212) 269-5505
dmotzenbecker@grsm.com
jsalvo@grsm.com
jtmills@grsm.com
bevans@grsm.com

*Attorneys for Defendant Claritas LLC*

Dated: June 10, 2024                **PIERSON FERDINAND LLP**

                                    */s/ Jill A, Guldin*
                                    Jill A. Guldin, Esq. (No. 93657)
                                    One Liberty Place
                                    1650 Market Street, 36th Floor
                                    Philadelphia, PA 19103
                                    Telephone: (856) 896-4096
                                    Facsimile: (856) 494-1566
                                    Email: jill.guldin@pierferd.com

                                    **FISHERBROYLES, LLP**

                                    Jason A. Spak (*admitted pro hac vice*)
                                    6360 Broad Street #5262
                                    Pittsburgh, PA 15206
                                    T:  412-230-8555
                                    F:  412-774-2382
                                    E:  jason.spak@fisherbroyles.com

                                    *Counsel for Defendant Innovis Data
                                    Solutions, Inc.*

64

Dated: June 10, 2024

**CONSTANGY BROOKS, SMITH & PROHPHET LLP**

*/s/ John E. MacDonald*
John E. MacDonald (011511995)
Princeton South Corporate Center
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
Phone: (609) 357-1183
Fax: (609) 844-1102
jmacdonald@constangy.com

*Attorneys for Defendant*
*Accurate Append, Inc.*

Dated: June 10, 2024

**TRESSLER LLP**

*/s/ Timothy M.. Jabbour*
Timothy M. Jabbour (ID:TJ5611)
George Z. Twill (ID: 275292018)
Tressler LLP
163 Madison Avenue, Suite 404
Morristown, NJ 07960
973-848-2901
tjabbour@tresslerllp.com
gtwill@tresslerllp.com

Gregory C. Scaglione (pro hac vice)
Timothy Hutchinson (pro hac vice)
Koley Jessen P.C., L.L.O.
1125 S. 103rd St., Suite 800
Omaha, NE 68124
531-444-0644
Greg.Scaglione@koleyjessen.com
Tim.Hutchinson@koleyjessen.com

*Attorneys for Defendant Data Axle,*
*Inc.*

Dated: June 10, 2024

**TROUTMAN PEPPER**
**HAMILTON SANDER LLP**

*/s/ Angelo A. Stio III*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
            melissa.chuderwicz@troutman.
            com

*Attorneys for Defendant Remine Inc.*

Dated: June 10, 2024

**GORDON, REES, SCULLY &**
**MANSUKHANI LLP**

*/s/ Douglas Motzenbecker*
Douglas Motzenbecker, Esq.
Joseph Salvo, Esq. (*pro hac vice*
*forthcoming*)
John Mills, Esq. (*pro hac vice*
*forthcoming*)

Bianca Evans, Esq. (pro hac vice)
1 Battery Park Plaza
Suite 2801
New York, NY 10004
Telephone: (212) 453-0725
Facsimile: (212) 269-5505
dmotzenbecker@grsm.com
jsalvo@grsm.com
jtmills@grsm.com
bevans@grsm.com

66

*Attorneys for Defendant Lusha Systems Inc.*

Dated: June 10, 2024

**CARLTON FIELDS, P.A.**

/s/ *Douglas Motzenbecker*
Michael D. Margulies (No. 030412008)
CARLTON FIELDS, P.A.
180 Park Avenue, Suite 106
Florham Park, NJ 07932
Telephone: (973) 828-2600
Email: mmargulies@carltonfields.com

*Attorneys for Defendant Teltech Systems, Inc.*

Dated: June 10, 2024

**LATHAM & WATKINS LLP**

/s/ *Kevin M. McDonough*
Kevin M. McDonough (ID: 41892005)
LATHAM & WATKINS LLP
1271 Avenue of Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: kevin.mcdonough@lw.com

Jennifer C. Archie (*pro hac vice*)
Bradley M. Baglien (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Email: jennifer.archie@lw.com
        bradley.baglien@lw.com

Robert C. Collins (*pro hac vice*)

67

LATHAM & WATKINS LLP
330 N. Wabash Ave, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: robert.collins@lw.com

*Attorneys for Defendants
PeopleConnect, Inc., PeopleConnect
Holdings, Inc., Intelius, LLC, and
PeopleConnect Intermediate, LLC*

Dated: June 10, 2024

**TROUTMAN PEPPTER
HAMILTON SANDER LLP**

/s/ Angelo A. Stio III
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
        melissa.chuderwicz@troutman.
        com

*Attorneys for Defendant Corelogic,
Inc.*

68

Dated: June 10, 2024

**McCARTER & ENGLISH, LLP**

*/s/ Scott S. Christie*

Scott S. Christie (ID: 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com

Curtis B. Leitner
McCARTER & ENGLISH, LLP
Worldwide Plaza
825 Eighth Ave., 31st Floor
New York, NY 10019
Telephone: (212) 609-6800
Email: cleitner@mccarter.com

*Attorneys for Defendants Defendants Black Knight Technologies, LLC and Black Knight, Inc.*

Dated: June 10, 2024

**BUCHANAN INGERSOLL & ROONEY P.C.**

*/s/ Samantha  L. Southall*

Samantha L. Southall (admitted pro hac vice)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
215 665 3884 (o)
samantha.southall@bipc.com

Jacqueline M. Weyand
550 Broad Street, Suite 810
Newark, New Jersey 07102
973 273 9800 (o)
jacqueline.weyand@bipc.com

*Attorneys for Defendant Zillow, Inc.*

Dated: June 10, 2024

**GIBBONS P.C.**

*/s/ Frederick W. Alworth*
Frederick W. Alworth
Kevin R. Reich
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Tel:  (973) 596-4500
falworth@gibbonslaw.com
kreich@gibbonslaw.com

*Attorneys for Defendant Equimine, Inc.*

Dated: June 10, 2024

**BALLARD SPAHR LLP**

*/s/ Marcel S. Pratt*
Marcel S. Pratt
Michael Berry (appearance forthcoming)
John W. Scott
Jordan Meyer
1735 Market Street, Fl. 51
Philadelphia, PA 19103-7599
215.864.8605
prattm@ballardspahr.com
berrym@ballardspahr.com
scottj@ballardspahr.com
meyerjl@ballardspahr.com

*Attorneys for Defendants Thomson Reuters Corporation, Thomson Reuters Holdings Inc., Thomson Reuters Canada Limited, and Thomson Reuters Applications Inc.*

70

Dated: June 10, 2024

**BALLARD SPAHR LLP**

*/s/ Alan Schoenfeld*

Alan Schoenfeld (New Jersey Bar No. 285532018)
Marissa M. Wenzel (*pro hac vice*)
Todd Clayton (*pro hac vice*)
WILMER CUTLER PICKERING
      HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
marissa.wenzel@wilmerhale.com
todd.clayton@wilmerhale.com

Christopher Davies (*pro hac vice*)
WILMER CUTLER PICKERING
      HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000 (phone)
(202) 663-6363 (fax)
christopher.davies@wilmerhale.com

*Attorneys for Defendant Choreograph LLC*

Dated: June 10, 2024

**BUCHANAN INGERSOLL & ROONEY P.C.**

*/s/ Samantha  L. Southall*

Samantha L. Southall (admitted pro hac vice)
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
215 665 3884 (o)

71

samantha.southall@bipc.com

Jacqueline M. Weyand
550 Broad Street, Suite 810
Newark, New Jersey 07102
973 273 9800 (o)
jacqueline.weyand@bipc.com

*Attorneys for Defendant Transunion
LLC*

Dated: June 10, 2024

**RIKER DANZIG LLP**

*/s/ Michael P. O'Mullan*
Michael P. O'Mullan (ID 029681996)
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
Telephone: (973) 451-8477
Email: momullan@riker.com

*Attorneys for Defendant
Melissa Data Corporation*

Dated: June 10, 2024

**KING & SPALDING LLP**

*/s/ Thomas J. Scrivo*
Thomas J. Scrivo
King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, NY  10036-2601
Tel: 212-556-2100
Fax: 212-556-2222
Email: tscrivo@kslaw.com

Zachary A. McEntyre*
John C. Toro*
Charles G. Spalding, Jr.**
King & Spalding LLP

72

1180 Peachtree Street
Atlanta, GA  30309
Tel.: (404) 572-4600
Fax: (404) 572-5100
Email: zmcentyre@kslaw.com
Email: jtoro@kslaw.com
Email: cspalding@kslaw.com

*Admitted Pro Hac Vice
**Pro Hac Vice forthcoming

Counsel for Equifax Inc. and Kount Inc.

Dated: June 10, 2024

**SILLS CUMMIS & GROSS P.C.**

/s/ Joshua N. Howley
Joshua N. Howley
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
jhowley@sillscummis.com

Andrew J. Pincus*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

John Nadolenco
Daniel D. Queen
MAYER BROWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 229-9500
jnadolenco@mayerbrown.com

Benjamin D. Bright*
Jonathan D. Stahl*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
bbright@mayerbrown.com

*pro hac vice

*Attorneys for Defendant Spokeo, Inc.*

Dated: June 10, 2024

**STINSON LLP**

/s/ *Richard J.L. Lomuscio*
Richard J.L. Lomuscio
100 Wall Street, Suite 201
New York, New York 10005
Telephone:   646-883-7471
richard.lomuscio@stinson.com

Matthew D. Moderson
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
Telephone:   816-691-2736
matt.moderson@stinson.com

*Attorneys for i360, LLC*

Dated: June 10, 2024

**McCARTER & ENGLISH,  LLP**

/s/ *Scott S. Christie*         .
Scott S. Christie (ID: 37901989)
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: schristie@mccarter.com

74

*Attorneys for Defendant Telnyx LLC*

Dated: June 10, 2024 **GREENBERG TRAURIG, LLP**

/s/ *Arron Van. Nostrand          .*
Aaron Van Nostrand
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 360-7900

*Attorneys for Defendant*
*Gohunt LLC*

Dated: June 10, 2024 **LOWENSTEIN SANDLER LLP**

/s/ *Jennifer Fiorica Delgado.*
Jennifer Fiorica Delgado
Markiana J. Julceus
One Lowenstein Drive
Roseland, New Jersey 07068
646.414.6962
862.926.2707
jdelgado@lowenstein.com
mjulceus@lowenstein.com

*Attorneys for Defendant AccuZIP, Inc.*

Dated: June 10, 2024 **LEWIS BRISBOIS BISGAARD &**
**SMITH, LLP**

/s/ *Thomas C. Regan.*
Thomas C. Regan, Esq.
Matthew S. AhKao, Esq.
LEWIS BRISBOIS BISGAARD &
SMITH, LLP
One Riverfront Plaza, Suite 800
Newark, NJ 07102
Telephone: (973) 577-6260

75

Email:
Thomas.Regan@lewisbrisbois.com
Matthew.AhKao@lewisbrisbois.com

*Attorneys for Defendant Synaptix Technology, LLC*

Dated: June 10, 2024                                    **GREENSPOON MARDER**

/s/ *Kelly M. Purcaro.*
Kelly M. Purcaro, Esq. (ID: 017692009)
Kory Ann Ferro, Esq. (ID: 065932013)
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, New Jersey 07102
Tel.: (732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendants Joy Rockwell Enterprises, Inc. d/b/a PostcardMania PCM LLC*

Dated: June 10, 2024                                    **THOMPSON HINE LLP**

/s/ *J. Timothy McDonald*
J. Timothy McDonald (ID No. 027201990)
Jennifer A. Adler (pro hac vice)
THOMPSON HINE LLP
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, Georgia 30326
Phone: 404.541.2900
Fax: 404.541.2906
Tim.McDonald@thompsonhine.com
Jennifer.Adler@thompsonhine.com

76

Steven G. Stransky (*pro hac vice*)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, Ohio 44114
Phone: 216.566.5500
Fax: 216.566.5800
Steve.Stransky@thompsonhine.com

*Attorneys for Defendant Fortnoff Financial, LLC*

Dated: June 10, 2024

**MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP**

/s/ *Nicholas K. Lagemann*
Nicholas K. Lagemann
MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel: (973) 425-8210
NLagemann@mdmc-law.com

Jacquelyn Fradette (*pro hac vice*)
Alan Charles Raul (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8822
jfradette@sidley.com
araul@sidley.com

Tyler J. Domino (*pro hac vice*)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

77

tdomino@sidley.com

*Attorneys for Defendants MyHeritage Ltd. and MyHeritage (USA), Inc.*

Dated: June 10, 2024

**RKW, LLC**

/s/ *Stacy Torres                .*
H. Mark Stichel*
Stacey Torres (293522020)
10075 Red Run Blvd, Ste 401
Owings Mills, Maryland 21117
(443) 379-8941
storres@rkwlawgroup.com

*Admitted pro hac vice

*Attorneys for Defendant
  eMerges.com Inc.*

Dated: June 10, 2024

**DENTONS US LLP**

/s/ *Stephen M. Turner*
Stephen M. Turner, Esq.
DENTONS US LLP
101 JFK Parkway, 4th Floor
Short Hills, NJ 07078
Telephone: (973) 912-7146
Email: stephen.turner@dentons.com

Kristen C. Rodriguez, Esq. (admitted
pro hac vice)
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 398-5280
Email:
kristen.rodriguez@dentons.com

*Attorneys for Defendant Wiland, Inc.*

78

Dated: June 10, 2024

**TROUTMAN PEPPTER HAMILTON SANDER LLP**

/s/ *Angelo A. Stio*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendant AtData LLC.*

Dated: June 10, 2024

**SAUL EWING LLP**

/s/ *William C. Baton*
William C. Baton
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102-5426
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com

**COOLEY LLP**
Matthew D. Brown (admitted pro hac
vice)
Bethany C. Lobo (admitted pro hac
vice)
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111
Telephone:  (415) 693-2000

E-mail:  brownmd@cooley.com
E-mail:  blobo@cooley.com

Rebecca L. Tarneja (admitted pro hac vice)
355 S. Grand Avenue, Suite 900
Los Angeles, CA  90071
Telephone:  (213) 561-3250
E-mail:  rtarneja@cooley.com

*Attorneys for Defendants Precisely Holdings, LLC, Precisely Software Inc., and Precisely Software Ltd.*

Dated: June 10, 2024

**GORDON REES SCULLY MANSUKHANI LLP**

/s/ *Clair E. Wischusen*
Clair E. Wischusen (ID: 018022009)
Bianca C. Evans (pro hac vice)
18 Columbia Turnpike
Suite 220
Florham Park, NJ 07932
Telephone: (973) 549-2500
Email: cwischusen@grsm.com
bevans@grsm.com

*Attorneys for Defendant, Nuwber, Inc.*

Dated: June 10, 2024

**TROUTMAN PEPPTER HAMILTON SANDER LLP**

/s/ *Angelo A. Stio*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227

80

Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendant Rocketreach LLC*

Dated: June 10, 2024      **GREENBERG TRAURIG, LLP**

/s/ *Arron Van. Nostrand*    .
Aaron Van Nostrand
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
(973) 360-7900

*Attorneys for Defendant Outside Interactive, Inc.*

Dated: June 10, 2024      **SAUL EWING LLP**

/s/ *William C. Baton*
William C. Baton
Sarah A. Sullivan
Alexander L. Callo
SAUL EWING LLP
One Riverfront Plaza
1037 Raymond Blvd.
Newark, NJ 07102-5426
(973) 286-6700
wbaton@saul.com
sarah.sullivan@saul.com
alexander.callo@saul.com

**COOLEY LLP**
Matthew D. Brown (admitted pro hac vice)
Bethany C. Lobo (admitted pro hac vice)
3 Embarcadero Center, 20th Floor

81

San Francisco, CA  94111
Telephone:  (415) 693-2000
E-mail:  brownmd@cooley.com
E-mail:  blobo@cooley.com

Rebecca L. Tarneja (admitted pro hac vice)
355 S. Grand Avenue, Suite 900
Los Angeles, CA  90071
Telephone:  (213) 561-3250
E-mail:  rtarneja@cooley.com

*Attorneys for Defendants Valassis Digital Corp. and Valassis Communications, Inc.*

Dated: June 10, 2024

**MANATT, PHELPS & PHILLIPS, LLP**

/s/ *Kenneth D. Friedman*
Kenneth D. Friedman
7 Times Square
New York, New York 10036
(212) 790-4500
kfriedman@manatt.com

Kareem A. Salem (pro hac vice)
Brandon Reilly (pro hac vice)
662 Encinitas Blvd., Suite 216
Encinitas, CA 92024
(619) 205-8520
ksalem@manatt.com
breilly@manatt.com

*Attorneys for Defendant Vericast Corp.*

82

Dated: June 10, 2024

**MCCARTER & ENGLISH LLP**

*/s/ Christopher A. Rojao*
Ryan A. Savercool
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
crojao@mccarter.com
rsavercool@mccarter.com

**HOGAN LOVELLS US LLP**
*/s/ Jon M. Talotta*
Jon M. Talotta (admitted pro hac vice)
8350 Broad Street (Boro Tower)
Tysons, VA 22102
Tel: 703.610.6100
jon.talotta@hoganlovells.com
David M. Cheifetz (admitted pro hac vice)
Elizabeth C. Milburn (pro hac vice to be filed)
390 Madison Avenue
New York, New York 10017
Tel: 212.918.3000
david.cheifetz@hoganlovells.com
tina.milburn@hoganlovells.com

*Attorneys for Defendants in 1:24-cv-4850-HB, The Lifetime Value Co. LLC, BeenVerified, LLC, NeighborWho LLC, The NumberGuru, LLC, PeopleLooker LLC, PeopleSmart LLC, Ownerly, LLC*

83

Dated: June 10, 2024

**BLANK ROME**

/s/ *Phillip N. Yannella*
STEPHEN M. ORLOFSKY
NEW JERSEY RESIDENT
PARTNER
PHILIP N. YANNELLA
GREGORY A. BAILEY
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-7700
Facsimile: (609) 750-7701
Stephen.Orlofsky@BlankRome.com
Philip.Yannella@BlankRome.com
Gregory.Bailey@BlankRome.com

*Attorneys for Defendant*
*Belles Camp Communications, Inc.*

Dated: June 10, 2024

**MONTGOMERY MCCRACKEN
WALKER & RHOADS LLP**

/s/ *Alexandra S. Jacobs*
Alexandra S. Jacobs
John Papianou
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002
856.488.7746
ajacobs@mmwr.com
jpapianou@mmwr.com

**HUDSON COOK LLP**
Rebecca E. Kuehn (pro hac vice
forthcoming)
Robert D. Tilley (pro hac vice
forthcoming)
Jason F. Esteves (pro hac vice
forthcoming)
1909 K Street, NW, 4th Floor
Washington, DC 20006

84

202.327.9710 / 202.327.9711
rkuehn@hudco.com
rtilley@hudco.com
jesteves@hudco.com

*Attorneys for Defendant, First
American Financial Corporation*

Dated: June 10, 2024

**TROUTMAN PEPPTER
HAMILTON SANDER LLP**

/s/ *Angelo A. Stio*
Angelo A. Stio III
Melissa A. Chuderewicz
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Suite 400
301 Carnegie Center
Princeton, NJ 08540-6227
Telephone: (609) 951-4125
Email: angelo.stio@troutman.com
melissa.chuderwicz@troutman.com

*Attorneys for Defendant Property
Radar, Inc.*

Dated: June 10, 2024

**GREENSPOON MARDER**

/s/ *Kelly M. Purcaro.*
Kelly M. Purcaro, Esq. (ID:
017692009)
Kory Ann Ferro, Esq. (ID:
065932013)
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, New Jersey 07102
Tel.: (732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

85

*Attorneys for Defendants*
*The Alesco Group, LLC*

Dated: June 10, 2024        **GREENSPOON MARDER**

/s/ *Kelly M. Purcaro*
Kelly M. Purcaro, Esq. (ID: 017692009)
Kory Ann Ferro, Esq. (ID: 065932013)
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, New Jersey 07102
Tel.: (732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendants*
*Searchbug, Inc.*

Dated: June 10, 2024        **GREENSPOON MARDER**

/s/ *Kelly M. Purcaro.*
Kelly M. Purcaro, Esq. (ID: 017692009)
Kory Ann Ferro, Esq. (ID: 065932013)
GREENSPOON MARDER
One Riverfront Plaza
1037 Raymond Blvd., Suite 900
Newark, New Jersey 07102
Tel.: (732) 456-8746
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com

*Attorneys for Defendants*
*Amerilist, Inc.*

86

Dated: June 10, 2024

**LOWENSTEIN SANDLER LLP**

*/s/ A. Matthew Boxer*
A. Matthew Boxer
Gavin J. Rooney
Rasmeet K. Chahil
LOWENSTEIN SANDLER LLP
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
mboxer@lowenstein.com
grooney@lowenstein.com
rchahil@lowenstein.com

*Attorneys for Defendants LexisNexis Risk Data Management, LLC and RELX Inc.*

87