SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
BRADLEY MANEWITH (*pro hac vice* forthcoming)
(bmanewith@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:      (617) 994-5801

*Attorneys for Petitioners Fabien Ho Ching Ma, Laila Amlani,*
*Jonathan Willis, Melissa Olson, Sasha Solomon,*
*Ryan Crowley, Grae Kindel, Sarah Rosen, and*
*Adam Treitler, on behalf of themselves*
*and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FABIEN HO CHING MA, LAILA AMLANI, JONATHAN WILLIS, MELISSA OLSON, SASHA SOLOMON, RYAN CROWLEY, GRAE KINDEL, SARAH ROSEN, AND ADAM TREITLER, on behalf of themselves and all others similarly situated,<br><br>                    Petitioners,<br><br>          v.<br><br>TWITTER, INC. AND X CORP.,<br><br>                    Respondents. | Case No. 3:23-cv-3301<br><br>**PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION**<br><br>Hearing:<br>Date: October 2, 2023<br>Time: 1:30 pm<br>Place: Courtroom C, 15th Floor<br>Judge:  Magistrate Judge Sallie Kim |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Petitioners Fabien Ho Ching Ma, Laila Amlani, Jonathan Willis, Melissa Olson, Sasha Solomon, Ryan Crowley, Grae Kindel, Sarah Rosen, and Adam Treitler, on behalf of themselves and all others similarly situated, move to compel arbitration and request that this Court issue a preliminary injunction compelling Respondents Twitter, Inc. and X Corp. to move forward with their arbitrations under the rules of the arbitration associations (JAMS and AAA) with which Twitter agreed to arbitrate, pursuant to the Federal Arbitration Act, 29 U.S.C. § 4.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    FACTUAL BACKGROUND .............................................................. 2

III.   ARGUMENT ....................................................................................... 6

     A.    The Parties Have Entered into a Valid Arbitration Agreement ............................. 8

     B.    The Arbitration Agreement Covers Petitioners' Claims ......................................... 8

     C.    The Court Should Compel Twitter to Arbitrate and Follow the Rules of the Agreed-Upon Arbitration Providers Which Requires Twitter to Pay the Arbitration Fees ................................................ 8

     D.    The Court Should Compel Twitter to Arbitrate Using the Nearest JAMS Office (and Arbitrators Who are Used for Cases at Those Offices) for Those Employees who Worked in a State Without a JAMS Office or Available Arbitrators ....................... 12

     E.    Twitter Should be Ordered to Produce Copies of the Employees' Signed Arbitration Agreements so That Their Arbitrations May Proceed ...................... 14

     F.    Twitter Should be Ordered to Pay for Arbitration of Employees Who Were Terminated for Posting Negative Comments about the Company or Elon Musk on Twitter ................................................ 15

     G.    Twitter's Employees Have Been and Will Continue to Be Severely Prejudiced by Twitter's Tactics .......................................................... 16

IV.   CONCLUSION ................................................................................... 17

PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Cases**

*Abernathy v. DoorDash, Inc.*,
  438 F. Supp. 3d 1062 (N.D. Cal. 2020) ......................................................... 2, 10

*Adams v. Postmates, Inc.*,
  2020 WL 1066980 (N.D. Cal. Mar. 5, 2020) ..................................................... 16, 17

*Adler v. Twitter, Inc.*,
  Case No. 3:23-cv-01788-JD (N.D. Cal) .............................................................. 3

*Allemeier v. Zyppah, Inc.*,
  2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) ................................. 7, 10, 11, 12

*Borodaenko v. Twitter, Inc.*,
  2023 WL 3294581 (N.D. Cal. May 5, 2023) .......................................................... 4

*Borodaenko v. Twitter, Inc.*,
  Case No. 3:22-cv-07226-AMO (N.D. Cal.) ......................................................... 3

*Bushley v. Credit Suisse First Bos.*,
  360 F.3d 1149 (9th Cir. 2004) ............................................................................ 16

*Campbell v. Marshall Int'l, LLC*,
  2021 WL 9970914 (N.D. Ill. Jul. 23, 2021) ....................................................... 16

*Chun Ping Turng v. Guaranteed Rate, Inc.*,
  371 F. Supp. 3d 610 (N.D. Cal. 2018) ................................................................ 13

*Cornet v. Twitter, Inc.*,
  2023 WL 187498 (N.D. Cal. Jan. 13, 2023) .......................................................... 3

*Cornet v. Twitter, Inc.*,
  Case No. 1:23-cv-441-CFC (D. Del.) ..................................................................... 3

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017) ................................................................................. 2

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ................................................................................................. 7

*Jorgensen v. Scolari's of Cal., Inc.*,
  2014 WL 12481484 (C.D. Cal. Nov. 12, 2014) ..................................................... 2

*Lang v. Skytap, Inc.*,
  347 F. Supp. 3d 420 (N.D. Cal 2018) .................................................................. 13

*Marathon Entm't v. Blasi,*
    174 P.3d 741 (Cal. Sup. Ct. 2008) ................................................................ 13

*Poublon v. C.H. Robinson Co.,*
    846 F.3d 1251 (9th Cir. 2017) ...................................................................... 13

*Rodriguez v. Twitter, Inc.,*
    2023 WL 3168321 (N.D. Cal. May 1, 2023) .................................................. 3

*Schobinger v. Twitter, Inc.,*
    Case No. 3:23-cv-03007-VC (N.D. Cal.) ....................................................... 3

*Sink v. Aden Enters., Inc.,*
    352 F.3d 1197 (9th Cir. 2003) ...................................................................... 11

Stipulation to Dismiss Class Claims, Arbitrate Plaintiff's Individual Claims and Stay
    Action,
    *Gadala v. Twitter, Inc.,* No. 3:23-cv-01595-JSC, (N.D. Cal. May 15, 2023), ECF
    No. 17 .............................................................................................................. 3

*Strifling v. Twitter, Inc.,*
    Case No. 4:22-cv-07739-JST (N.D. Cal.) ....................................................... 3

Twitter's Motion to Compel Arbitration and Supporting Declaration from Fidelma
    Callaghan,
    *Cornet, et al v. Twitter, Inc.,* Case No. 3:22-cv-06857-JD (N.D. Cal. Nov. 21,
    2022), Dkt. 18 and Dkt. 18-1 ............................................................... 2, 8, 14

*Weinberg v. Twitter, Inc.,*
    4:23-cv-04016-DMR (N.D. Cal.) .................................................................. 3

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) .......................................................................................... 2

*Zeman v. Twitter, Inc.,*
    Case No. 3:23-cv-01786-SI (N.D. Cal.) ........................................................ 3

**Statutes**

Federal Arbitration Act ("FAA").
    9 U.S.C. § 4 ................................................................................................ 6, 11

**Other Authorities**

JAMS Rule 1(d),
    *available at,* https://www.jamsadr.com/rules-employment-
    arbitration/english#Rule-1 ........................................................................... 14

PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION

JAMS Rule 31,
    *available at* https://www.jamsadr.com/rules-employment-
    arbitration/english#Rule-1 ................................................................................... 11

PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. **INTRODUCTION**

This case is brought on behalf of the thousands of former Twitter employees with whom Respondents Twitter, Inc. and X Corp. (collectively "Twitter") have refused to proceed with arbitration, despite having successfully blocked employees from pursuing their claims in court by compelling them to arbitrate their legal claims against Twitter.

After having succeeded on its motions to compel arbitration in order to block multiple class action cases from proceeding against it in court, Twitter found itself faced with more than 2,000 individual arbitration cases from its former employees. Facing that front of individual claims, for which it must pay the bulk of the arbitration fees, Twitter decided to change course and avoid these arbitrations, thus refusing to lie in the bed it has made. When ordered to pay arbitration fees by both agreed upon arbitration providers, the Judicial Arbitration and Mediation Services ("JAMS") and the American Arbitration Association ("AAA"), Twitter did an about face and informed both JAMS and AAA that it would not proceed with these arbitrations (other than for employees who worked in California and a few other states, including Nevada and Oregon). Twitter has also blocked arbitrations from proceeding that were brought by employees who worked in states where JAMS does not have an office or arbitrators, as well as by employees who do not have their own copy of their signed arbitration agreement (although Twitter obviously has them).[1]

In short, despite compelling its former employees to arbitrate their claims against the company, Twitter has taken every opportunity to prevent many of them from actually pursuing their claims in arbitration. This Court should not countenance this behavior and should enter an immediate order compelling Twitter to arbitrate – and to pay the fees it has been ordered to pay by JAMS and AAA, in order for those cases to proceed. Indeed, Judge Alsup entered a similar

---

[1]     Twitter has also refused to proceed with paying fees and allowing an arbitration to proceed brought by an employee who was alleged to have been fired based upon a tweet he posted, despite Elon Musk promising to pay all legal fees for employees who have been mistreated by employers based upon their tweets. Dkt. 6 at ¶¶ 69-73.

order not long ago when another defendant, who resisted class claims in court by compelling arbitration, refused to pay the arbitration fees when thousands of claimants filed arbitration demands; he declared that defendant's "hypocrisy will not be blessed, at least by this order." *See Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020) (granting workers' motion to compel arbitration where employer refused to pay arbitration fees).

Likewise, here, Twitter should not be rewarded for its hypocrisy and gamesmanship. And time is of the essence. In particular, Petitioner Fabien Ho Ching Ma has an arbitration hearing scheduled to take place in December of this year. (Ex. A - Ma Scheduling Order.) However, Twitter is refusing to pay the arbitration fees for his case, preventing Petitioner Ma from proceeding with his arbitration and preparing for his hearing by taking discovery. (Ex. B - Chowdhry email dated Aug. 17, 2023.)

Petitioners thus ask that the Court grant this motion promptly.[2]

## II.    FACTUAL BACKGROUND

Since at least 2017, Twitter has included arbitration clauses in its standard employment agreements with employees throughout the United States, including the named Petitioners in this action. (*See* Twitter's Motion to Compel Arbitration and Supporting Declaration from Fidelma Callaghan, *Cornet, et al v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD (N.D. Cal. Nov. 21, 2022), Dkt. 18 at 8-9 and Dkt. 18-1 at 2; Ex. C - Liss-Riordan Decl. at ¶ 2; Ex. D – Crowley Decl. at ¶ 2) The arbitration agreement requires the parties to arbitrate "any disputes arising out of or

---

[2]      Petitioners request that the Court rule promptly on this motion, or that, if it deems that any further proceedings are necessary before it acts on the motion and petition, the Court grant a preliminary injunction, allowing the arbitrations to proceed, including that of Petitioner Ma, whose arbitration hearing is scheduled for December.

In order to obtain a preliminary injunction, a plaintiff must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Jorgensen v. Scolari's of Cal., Inc.*, 2014 WL 12481484, at *2 (C.D. Cal. Nov. 12, 2014) (*quoting Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Petitioners satisfy each of these requirements. Moreover, the Ninth Circuit has instructed that likelihood of success on the merits is the most important factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

related to [an employee's] employment with Twitter, Inc. . . . or termination of employment, and survives after the employment relationship terminates." (Arbitration Agreement, at ¶ 1, Dkt. 6-1.) Twitter's standard arbitration agreement for at least the past several years directs that any such arbitration be brought with the arbitration provider JAMS, pursuant to the then-current JAMS Employment Arbitration Rules and Procedures. (JAMS Arbitration Agreements, at ¶ 5, Dkt. 6-1.) Earlier versions of the agreement did not specify an arbitration provider. (*See, e.g.*, Kindel and Rosen Arbitration Agreements, Dkt. 6-1, at pp. 18-27.)[3]

Since Elon Musk's acquisition of Twitter in October 2022, the company has been accused of a variety of unlawful acts, including failing to pay laid off employees promised severance payments, discriminating against employees on the basis of sex, race, age, and disability, failing to pay promised bonuses, violating the WARN Act and FMLA, and other violations. A number of employees filed class action cases in court challenging these violations. *See e.g.*, *Cornet v. Twitter, Inc.*, Case No. 1:23-cv-441-CFC (D. Del.); *Borodaenko v. Twitter, Inc.*, Case No. 3:22-cv-07226-AMO (N.D. Cal.); *Strifling v. Twitter, Inc.*, Case No. 4:22-cv-07739-JST (N.D. Cal.); *Adler v. Twitter, Inc.*, Case No. 3:23-cv-01788-JD (N.D. Cal); *Zeman v. Twitter, Inc.*, Case No. 3:23-cv-01786-SI (N.D. Cal.); *Schobinger v. Twitter, Inc.*, Case No. 3:23-cv-03007-VC (N.D. Cal.); *Weinberg v. Twitter, Inc.*, 4:23-cv-04016-DMR (N.D. Cal.). However, any time an employee who was bound by an arbitration agreement brought a claim in court, Twitter moved to compel that employee's claim to arbitration, and Twitter was successful in those motions. *See Cornet v. Twitter, Inc.*, 2023 WL 187498 (N.D. Cal. Jan. 13, 2023); *Rodriguez v. Twitter, Inc.*, 2023 WL 3168321 (N.D. Cal. May 1, 2023); Stipulation to Dismiss Class Claims, Arbitrate Plaintiff's Individual Claims and Stay Action, *Gadala v. Twitter, Inc.*, No. 3:23-cv-01595-JSC, (N.D. Cal. May 15, 2023), ECF No. 17; *Borodaenko v. Twitter, Inc.*, 2023 WL 3294581 (N.D. Cal. May 5, 2023).

---

[3]     For those employees, Twitter and Petitioners' counsel agreed to have the arbitrations administered by another arbitration provider, AAA. (Ex. C – Liss-Riordan Decl. at ¶ 28; AAA Agreement to Arbitrate, Dkt. 6-8.)

After Twitter succeeded in moving to compel its employees' claims to arbitration, more than 2,000 of Twitter's former employees attempted to pursue arbitration claims against it. (Ex. C – Liss-Riordan Decl. at ¶ 3.)

When those arbitration demands were filed, both JAMS and AAA informed Twitter that it would be responsible for paying the full arbitration fees (other than initial filing fees for which the claimants were responsible).[4] Twitter refused to pay the full arbitration fees for all employees who worked outside California (and a couple other states, including Nevada and Oregon).[5] Thus, those arbitration cases are not proceeding.[6]

---

[4]     At the outset of each JAMS arbitration, JAMS notified the parties that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Minimum Standards") would apply, which requires the employer to pay full arbitration fees, other than an initial filing fee. (*See* Letter from Eisner dated June 21, 2023, Dkt. 6-3.) Likewise, AAA also determined under its rules that Twitter would be required to pay all arbitration fees (other than a minimal initial fee which the employees would pay). (*See* AAA Agreement to Arbitrate, Dkt. 6-8; Zysk email dated July 24, 2023, Dkt. 6-9.)

[5]     Twitter did not initially object to the application of the JAMS Minimum Standards. (Ex. C – Liss-Riordan Decl. at ¶ 16.) Rather, it filed responses to employees' arbitration demands and began paying its share of the fees. (Ex. C – Liss-Riordan Decl. at ¶¶ 16-17.) However, on June 2, 2023, Twitter changed course and objected to the JAMS Minimum Standards. (*See* Letter from Eisner dated June 21, 2023, Dkt. 6-3.) It sent a letter to JAMS' Senior Vice President, General Counsel, Sheri Eisner, requesting that JAMS' fees be shared equally by the parties for arbitrations outside California, Nevada, or Oregon. *Id.* Ms. Eisner responded on June 21, 2023, denying Twitter's request and confirming that the JAMS Minimum Standards would apply to all of these cases and that Twitter was responsible for the full arbitration fees. *Id.* On June 28, 2023, Twitter informed JAMS that it would nevertheless not pay the full fees in those cases. (Letter from Alamuddin dated June 28, 2023, Dkt. 6-4.)

Twitter likewise informed AAA, Petitioners, and others similarly situated individuals that it would not proceed with arbitrations filed with the AAA outside California, Nevada, and Oregon, because it refuses to pay the full arbitration fees for these cases. (*See* Zysk email dated July 24, 2023, Dkt. 6-9; Email from Owen dated Aug. 1, 2023, Dkt. 6-10). On August 1, 2023, Twitter sent an email to AAA identifying at least 130 individuals who had worked outside these states, including Petitioners Grae Kindel and Sarah Rosen. (Email from Owen dated Aug. 1, 2023, Dkt. 6-10)

[6]     JAMS has stayed all pending arbitrations outside of California, Nevada, and Oregon (hundreds of arbitrations). (Ex. C – Liss-Riordan Decl. at ¶ 27; Nevin Email dated June 30, 2023, Dkt. 6-6.) Consequently, dozens of initial case management conferences that were previously scheduled were cancelled (Ex. C – Liss-Riordan Decl. at ¶ 27). Petitioner Ma, who worked for Twitter in New York, had an arbitration hearing scheduled for December 2023, but Twitter has

Twitter has also raised other excuses to block employees from arbitrating their claims against it. For example, in addition to refusing to pay full arbitrator fees as required by JAMS and AAA, it has refused to proceed with arbitrations for employees who worked in a number of states where JAMS does not have an office or sufficient arbitrators to preside over the cases. While such employees, including Petitioners Amlani, Willis, Olson, and Solomon who worked in Arizona, Idaho, Wisconsin, and Oregon, proposed using arbitrators from nearby states, Twitter has refused to agree to the appointment of any arbitrators in these and many other cases.[7] Thus, Twitter has refused to move forward with these Petitioners' arbitration cases, as well as those of many other employees in the same situation.

Twitter has also blocked arbitration cases from proceeding in which the employee does not have a copy of their signed arbitration agreement. (Ex. C – Liss-Riordan Decl. at ¶¶ 8-15; Emails regarding Unsigned Arbitration Agreements, Dkt. 6-11; Letter from Eisner dated Jan. 19, 2023, Dkt. 6-12.) Even though Twitter has moved to compel arbitration for employees who brought claims in court (and attached the signed agreements to its motions to compel), it has refused to proceed with other arbitrations unless the employees themselves have a copy of their signed arbitration agreement. (Ex. C – Liss-Riordan Decl. at ¶¶ 8-15; Emails regarding Unsigned Arbitration Agreements, Dkt. 6-11; Letter from Eisner dated Jan. 19, 2023, Dkt. 6-12.) In order to begin the arbitrations, JAMS has required a signed arbitration agreement for each employee

---

declined to proceed with his case, and he has not been able to begin discovery. (Ex. C – Liss-Riordan Decl. at ¶ 27; Ex. A - Ma Scheduling Order.)

Although AAA agreed to appoint arbitrators in a small group of initial cases outside California, it has stated that these arbitrations will not move forward unless Twitter pays the required arbitrator retainers, which Twitter has refused to do. (*See* Ex. E - Zysk email dated Aug. 8, 2023; Zysk email dated July 24, 2023, Dkt. 6-9; Chowdhry email dated Aug. 28, 2023, Dkt. 6-10; Owen email dated Aug. 1, 2023, Dkt., 6-10.) As a result, more than 100 arbitrations filed at AAA, including those of Petitioners Kindel and Rosen, are not moving forward.

[7]   Twitter agreed to use out-of-state arbitrators for some states, such as New York arbitrators for New Jersey employees, but refused to agree to use out-of-state arbitrators in a number of states, including Arizona, Idaho, Wisconsin, and Oregon, where Petitioners Amlani, Willis, Olson, and Solomon worked. (Ex. C – Liss-Riordan Decl. at ¶ 19.)

PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION

who has brought a claim. (Letter from Eisner dated Jan. 19, 2023, Dkt. 6-12.) For those employees who do not have their own signed copy, Petitioners' counsel requested that Twitter provide them, so that these cases may proceed. (Emails from Liss-Riordan dated Jun. 2, 9 and 12, Dkt. 6-11 at 2, 5.) Twitter refused to do so, and so these cases are not moving forward in arbitration. (Email from Chowdhry dated Jun. 9, 2023, Dkt. 6-11 at 3; Ex. C – Liss-Riordan Decl. at ¶¶ 10-13.)[8]

Finally, Elon Musk recently promised to pay all legal fees for employees who have been mistreated by employers based upon their tweets. (Musk's post dated Aug. 5, 2023, Dkt. 6-13.) However, despite this promise, Twitter has also refused to proceed with paying fees and allowing an arbitration to proceed brought by Petitioner Adam Treitler, who Twitter claims to have been fired based upon a tweet he posted about Elon Musk. (Dkt. 6 at 71; Letter from Alamuddin dated June 28, 2023, Dkt. 6-4 at 2-3, 16 Ex. F - Treitler Decl. at ¶¶ 2-3.)

## III.   ARGUMENT

Under the Federal Arbitration Act ("FAA"), a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In deciding whether to compel

---

[8]      Twitter's refusal to provide signed arbitration agreements has caused great confusion for many employees who do not remember if their employment contract contained an arbitration agreement and do not know if their contract specified JAMS as the arbitration provider. Some Twitter employees who worked at the company for a number of years do not have arbitration provisions in their contracts, and some of the earlier Twitter arbitration agreements do not specify JAMS (in which case Twitter and Petitioners' counsel have agreed to use AAA as the arbitration provider). Thus, a number of employees have been uncertain as to whether they can file their claims in court or must file in arbitration. (Ex. C - Liss-Riordan Decl. at ¶14.)

In an abundance of caution, Petitioners' counsel have filed arbitration claims for their clients who are not certain whether they are even bound by an arbitration agreement. If Twitter would provide these agreements (as it should, since it is insisting that employees who are bound by arbitration agreements file their claims only in arbitration), the employees' counsel would know where to file their claims. Twitter has created much unnecessary work for the parties and counsel by playing this game of not providing counsel or JAMS with the signed arbitration agreements. (Ex. C - Liss-Riordan Decl. at ¶15.)

PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION

arbitration, courts generally analyze two "gateway" issues: (1) whether the parties have entered into a valid arbitration agreement, and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).

Where the parties have formed a valid agreement to arbitrate, and the agreement covers the dispute, the Act requires the court to compel arbitration. *See Allemeier v. Zyppah, Inc.*, 2018 WL 6038340, at *3-4 (C.D. Cal. Sept. 21, 2018) (compelling arbitration where the parties' agreement incorporated AAA's Employment Arbitration Rules, but the employer refused to pay AAA's fees). As detailed below, the parties have entered into valid arbitration agreements that cover Petitioners' claims. Moreover, the agreement explicitly contemplates that a party may seek a preliminary injunction in court in connection with an arbitrable controversy if "the award to which that party may be entitled may be rendered ineffectual without such provisional relief." (Arbitration Agreement, at ¶ 4, Dkt. 6-1.)

As described in their Petition and herein, Twitter has refused to proceed with arbitration under the directives set forth by the arbitration providers that it chose and agreed to. Both arbitration providers, JAMS and AAA, will not proceed with the arbitrations for which Twitter has refused to pay the full arbitration fees. Further, JAMS will not proceed with the cases in which it does not have an office or arbitrators and Twitter has not agreed to use arbitrators in these states outside of the state where the employees worked. JAMS is also not proceeding with cases in which a signed arbitration agreement has not been provided, and Twitter is refusing to provide these agreements where the employees do not have their own copy.

Twitter's obligation to participate in and cooperate with these arbitrations -- and cease its conduct that is preventing these arbitrations from proceeding -- is a threshold issue that must be resolved now. Without immediate court action, many hundreds of the thousands of former Twitter employees, including Petitioners, for whom Twitter is refusing to engage in arbitration are left with no recourse, since they cannot pursue their claims in court and Twitter will not allow them to pursue their claims in arbitration.

Plaintiffs urge the Court to act quickly, as time is of the essence. Indeed, since Petitioner Ma has an arbitration hearing scheduled for December 2023, he needs a prompt order so that he may proceed with his scheduled arbitration and have some time to take discovery before his hearing.

### A. The Parties Have Entered into a Valid Arbitration Agreement

There is no dispute that the parties entered into valid arbitration agreements. (*See* Arbitration Agreements, at ¶ 1, Dkt. 6-1; Ex. D – Crowley Decl. at ¶ 2.) Indeed, Twitter itself had claimed that these agreements are valid and must be enforced. *See* Twitter's Mot. to Compel Arbitration and Supporting Declaration from Fidelma Callaghan in *Cornet, et al v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD (N.D. Cal. Nov. 21, 2022), Dkt. 18 at 8-9 and Dkt. 18-1 at 2). Each Petitioner signed a copy of Twitter's Dispute Resolution Agreement, which includes a broad arbitration provision.[9] As such, the Court should enforce the parties' agreement to arbitrate.

### B. The Arbitration Agreement Covers Petitioners' Claims

The arbitration agreement contains a broad scope of coverage. Specifically, it applies "to any disputes arising out of or related to [an employee's] employment with Twitter, Inc. . . . or termination of employment, and survives after the employment relationship terminates." (Arbitration Agreements, at ¶ 1, Dkt. 6-1.) Petitioners' claims, as well as those of Twitter's other former employees, relate to the termination of their employment. Thus, there is no question that the arbitration agreement applies to their claims.

### C. The Court Should Compel Twitter to Arbitrate and Follow the Rules of the Agreed-Upon Arbitration Providers Which Requires Twitter to Pay the Arbitration Fees

After Petitioners, and approximately 2,000 other former Twitter employees, filed their claims in arbitration, JAMS determined that its Employment Minimum Standards applied to the cases. As a result, JAMS ordered that Twitter pay all arbitration fees other than the initial

---

[9]     Although Twitter has objected to any arbitration demand where the employee cannot produce a signed copy of their arbitration agreement, Petitioner Crowley does not expect any dispute that he signed Twitter's standard arbitration agreement.

minimal filing fee. Twitter did not originally object to JAMS' application of the Employment Minimum Standards and in fact filed identical responses to each of the arbitration demands (including forty-five affirmative defenses, none of which question its obligation to pay the arbitration fees). (Ex. C – Liss-Riordan Decl. at ¶ 16.) Moreover, arbitrators were chosen in dozens of cases, initial status hearings began to be scheduled, and in some cases final arbitration hearing dates were also set (including Petitioner Ma's hearing, which is scheduled to begin on December 18, 2023). It was only after individual arbitrators began scheduling initial status conferences, which required Twitter to pay arbitrator deposits, that Twitter objected to JAMS' application of the Employment Minimum Standards. (Ex. C – Liss-Riordan Decl. at ¶¶ 20-22.) Twitter appealed the application of the Employment Minimum Standards directly to JAMS, and when JAMS denied Twitter's request to apportion the fees equally between the parties, Twitter refused to pay the fees and stated that it would not proceed with arbitration under the Employment Minimum Standards for employees outside California, Nevada, and Oregon. (Letter from Alamuddin dated June 28, 2023, Dkt. 6-4.)

Similarly, after Twitter agreed to arbitrate with AAA for those employees whose arbitration agreements did not specify JAMS, AAA determined that these arbitrations would proceed on the "Employment/Workplace Multiple Case Filing Administrative Fee Schedule" ("AAA Fee Schedule"), and Twitter agreed. (AAA Agreement to Arbitrate, Dkt. 6-8; Zysk email dated July 24, 2023, Dkt. 6-9.) Consequently, AAA issued arbitrator strike lists and ordered Twitter to pay all arbitration fees. At that point, as AAA was preparing to appoint arbitrators to individual cases, Twitter objected to the AAA Fee Schedule and refused to pay the required fees for any cases outside of California, Nevada, or Oregon. (See Ex. G - Zysk email dated July 6, 2023.)[10]

---

[10] Twitter also objected to AAA appointing a single "process arbitrator" to rule on its objection to the AAA Fee Schedule, insisting that only the individual arbitrators for each case have the authority to rule on its objection. However, Twitter did not allow any arbitrators to proceed with the cases, thus allowing them to rule on its objection, because it refused to pay fees for the arbitrators outside of California, Nevada, and Oregon. (See Chowdhry email dated Aug.

In *Abernathy*, 438 F. Supp. 3d 1062, the court faced a similar situation. In that case, the respondent employer required its workers to sign arbitration agreements, but then refused to pay nearly $12 million in administrative fees it was billed by AAA when thousands of workers filed individual arbitrations. As a result of the respondent's refusal to pay these fees, AAA would not move forward with administering the arbitrations, thereby preventing the workers from pursuing their claims. *Id.* at 1064. In granting the workers' motion to compel arbitration, Judge Alsup declared:

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.

*Id.* at 1067-68.

Other courts have likewise consistently found that an employer's refusal to pay arbitration fees required by the arbitration administrator constitutes a breach of the arbitration agreement. For example, in *Allemeier*, 2018 WL 6038340, at *1, the petitioner filed an arbitration claim with the AAA against his former employer. The parties' arbitration agreement provided that AAA would administer the arbitration pursuant to its Employment Arbitration Rules. Petitioner paid his portion of the initial filing fee, and consistent with its Employment Arbitration Rules, AAA informed the company that it was required to pay the balance of the filing fee. *Id.* However, the company repeatedly refused to do so. *Id.* The court found that the company's refusal to pay the arbitration fees as determined by AAA was a breach of the

28, 2023, Dkt. 6-10; Email from Owen dated Aug. 1, 2023, Dkt. 6-10; Ex. E - Zysk email dated Aug. 8, 2023.)

arbitration agreement and constituted a failure or refusal to arbitrate under Section 4 of the FAA. *Id.* at *4. Thus, the court granted petitioner's motion to compel arbitration and ordered the company "to pay any fees that the AAA allocate[d] to it and to comply with any other requirements that the AAA imposes." *Id. See also Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1200-02 (9th Cir. 2003) (affirming decision of the district court that defendant breached the parties' arbitration agreement by failing to pay required arbitration fees).

Here, Twitter's refusal to pay the arbitration fees, as ordered by JAMS and AAA, is likewise a breach of the parties' arbitration agreement, which constitutes a failure or refusal to arbitrate by Twitter under Section 4 of the FAA. *See Allemeier*, 2018 WL 6038340, at *4. Twitter's JAMS arbitration agreement explicitly states that the arbitration shall be administered by JAMS pursuant to JAMS Employment Arbitration Rules and Procedures (JAMS Arbitration Agreement at ¶ 5, Dkt. 6-1), and those rules provide that "the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee," (JAMS Rule 31, *available at* https://www.jamsadr.com/rules-employment-arbitration/english#Rule-1). Petitioners have complied with their obligations under the arbitration agreement and JAMS Rules. Similarly, Twitter agreed to proceed with arbitrations for other employees using the AAA (by agreement with Twitter), and the AAA rules similarly require the employer to pay all arbitration fees (other than the initial minimal filing fee). Yet, Petitioners and many of the thousands of other former Twitter employees who have filed claims with JAMS or AAA cannot move forward with their arbitrations until Twitter complies with these directives.[11]

---

[11]     Twitter may argue that employees are not prohibited from pursuing their claims, because they could voluntarily pay the arbitration fees that they are not required to pay. However, this option does not create an obligation for the claimants to do so, nor does it change the fact that Twitter owes the fees. *See Allemeier*, 2018 WL 6038340, at *3 ("the fact that the AAA arbitration rules allow the arbitrator to ask [Petitioner] whether [Petitioner] would like to pay in order to prevent termination does not create an obligation for [Petitioner] to do so, nor does it change the fact that [Respondent] owed the unpaid fees.")

As such, Petitioners' motion to compel arbitration should be granted, and Twitter should be ordered to pay all fees it has been directed to pay by JAMS and AAA, so that these employees' arbitration cases may proceed.

**D.     The Court Should Compel Twitter to Arbitrate Using the Nearest JAMS Office (and Arbitrators Who are Used for Cases at Those Offices) for Those Employees who Worked in a State Without a JAMS Office or Available Arbitrators**

Many former Twitter employees, including Petitioners Amlani, Willis, Olson, and Solomon reside and worked in states where JAMS does not have offices or arbitrators (or enough arbitrators to provide a full "strike list"). Given Twitter's steadfast insistence that employees arbitrate their claims rather than pursue them in court, Petitioners Amlani, Willis, Olson, and Solomon (as well as many other employees in similar situations) filed their arbitration demands listing the closest JAMS office.

Twitter's standard JAMS arbitration agreement provides:

> [T]he Arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted. If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"). . . The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

(Arbitration Agreement at ¶ 3, Dkt. 6-1.) Twitter has used this provision of its arbitration agreement to block arbitrations from proceeding in states where JAMS does not offices or a sufficient number of arbitrators.[12] Thus, many former employees who have attempted to pursue

---

[12]     While Twitter agreed to use arbitrators from nearby states for some cases (such as using New York arbitrators in New Jersey), it has refused to do so for others, including Arizona, Idaho, Wisconsin, and Oregon, where Petitioners Amlani, Willis, Olson, and Solomon worked. (*See* Ex. C – Liss-Riordan Decl. at ¶ 19; Ex. H – Email from Meckley dated Mar. 24, 2023.) Nor, despite Petitioners' suggestions and inquiries, has Twitter agreed to or offered any alternative for how those arbitrations may proceed. (Ex. C – Liss-Riordan Decl. at ¶ 19.)

arbitration claims against Twitter, including Petitioners Amlani, Willis, Olson, and Solomon, have not been able to pursue their arbitrations. [13]

Where provisions of arbitration agreements are not enforceable, courts routinely sever those provisions and compel parties to arbitrate under the remaining agreement. *See, e.g., Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273-74 (9th Cir. 2017) (severing one-sided and illegal arbitration provisions); *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 432-33 (N.D. Cal 2018) (compelling arbitration after the court severed three unconscionable provisions from the arbitration agreement); *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 632 (N.D. Cal. 2018) (compelling arbitration after severing unenforceable provisions). Severance is appropriate if the unenforceable provision is "'collateral to the main purpose of the contract,' which is to require arbitration of disputes." *Poublon*, 846 F.3d at 1273 (*quoting Marathon Entm't v. Blasi*, 174 P.3d 741, 743 (Cal. Sup. Ct. 2008)). This is especially true where the parties expressly agree that any unenforceable provision should be severed. *Poublon*, 846 F.3d at 1274.

Here, while Twitter's arbitration agreement requires an arbitrator be selected from the state in which the employee worked, that provision simply cannot be met for all employees and therefore is unenforceable for those employees. However, the requirement is collateral to the main purpose of the agreement, namely, to arbitrate the dispute. [14] Moreover, the JAMS Employment Rules, which are incorporated into the arbitration agreement, specifically allow JAMS to assign the administration of a case to any of its Resource Centers. (JAMS Rule 1(d), *available at*, https://www.jamsadr.com/rules-employment-arbitration/english#Rule-1.)

---

[13]    On August 30, 2023, JAMS advised the parties that it does not have any arbitrators licensed in Oregon. (Nevins email dated Aug. 30, 2023, Dkt. 6-14.) Thus, even though Oregon is a state for which Twitter agreed it would pay arbitrator fees, it appears that Petitioner Solomon and other employees from Oregon will not be able to move forward with their arbitrations in any event.

[14]    Twitter clearly recognizes the collateral nature of the requirement, as it already agreed to waive it in some instances (for instance, in allowing New York arbitrators to be appointed to cases for employees who worked in New Jersey).

PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION

As such, the Court should compel Twitter to proceed with these arbitrations (as Petitioners attempted, by filing their cases with the nearest JAMS office to where they worked – or alternatively by ordering these arbitrations to proceed in the Twitter locations where these employees reported to, as these employees generally worked from home). As things stand now, JAMS has simply not moved forward with these cases in which Twitter has not agreed to waive the in-state arbitrator requirement, and thus Twitter has succeeded in blocking these cases from going forward. The Court should thus compel arbitration for these employees and simply sever the requirement that the arbitrator be a licensed attorney or retired judge from the state in which the employee worked for Twitter.

### E.   Twitter Should be Ordered to Produce Copies of the Employees' Signed Arbitration Agreements so That Their Arbitrations May Proceed

As described above, Twitter has also blocked arbitrations from proceeding for those employees who do not have signed copies of their arbitration agreement. It has done so despite moving to compel arbitration (and producing a signed arbitration agreement) for any employees bound by such an agreement who dared file a case in court. Thus, Twitter does not seriously dispute that these agreements exist and that the signed copies are in its possession. (*See, e.g.,* Twitter's Mot. to Compel Arbitration and Supporting Declaration from Fidelma Callaghan in *Cornet, et al v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD (N.D. Cal. Nov. 21, 2022), Dkt. 18 at 8-9 and Dkt. 18-1 at 2.) Rather, it has refused to allow arbitrations to proceed in which the employees do not have a signed copy of their arbitration agreement and thus did not submit it to JAMS.

Because JAMS declined to proceed with arbitrations for which it did not have a signed agreement (Letter from Eisner dated Jan. 19, 2023, Dkt. 6-12.), Petitioners' counsel requested (multiple times) that Twitter produce copies of the signed agreements. Twitter refused to produce the agreements.[15]

---

[15]   Twitter noted that employees could obtain their signed agreements by sending an email to PeopleQuestions@twitter.com. Petitioners' counsel then sent a request to that email address requesting the agreements. (Ex. C – Liss-Riordan Decl. at ¶ 12; Emails regarding Unsigned

Twitter's tactics are pure gamesmanship, serve no legitimate purpose, and do nothing other than unnecessarily delay adjudication of Petitioners' claims and increase costs. As such, the Court should order Twitter to immediately provide Petitioner Crowley, as well as all other former Twitter employees who have filed arbitration demands with JAMS but do not have signed copies of their arbitration agreement, with copies of the signed agreements so that they may proceed with their claims in arbitration.

**F.     Twitter Should be Ordered to Pay for Arbitration of Employees Who Were Terminated for Posting Negative Comments about the Company or Elon Musk on Twitter**

Elon Musk recently promised to pay the legal fees of anyone who has been mistreated by their employer based upon their tweets. (Musk's post on X dated Aug. 5, 2023, Dkt. 6-13.) Yet, even though Twitter claims it fired Petitioner Treitler for a tweet he posted about Mr. Musk (Ex. F – Treitler Decl. at ¶¶ 2-3), Twitter has refused to pay the fees for Petitioner Treitler's arbitration, thus preventing him from proceeding with his claims. Twitter and Mr. Musk should be held to his word and required to pay for Petitioner Treitler's arbitration (and the arbitrations of any other former Twitter employee who was allegedly terminated for posting a negative comment about Mr. Musk or the company on Twitter).

---

Arbitration Agreements, Dkt. 6-11.) However, that email bounced back as undeliverable. Petitioners' counsel then requested again that Twitter produce the agreements, and it again declined. (Ex. C – Liss-Riordan Decl. at ¶ 12; Emails regarding Unsigned Arbitration Agreements, Dkt. 6-11.)

Twitter later indicated that it might provide copies of the signed agreements to Petitioners' counsel, but that counsel would first need to provide signed authorizations from the employees and that Twitter would not produce more than fifty (50) arbitration agreements during any thirty (30) day period. (Ex. I – Email from Alamuddin dated July 21, 2023.) Twitter's insistence on signed authorizations from counsel, who filed the JAMS arbitration demands on behalf of the employees and thus clearly represent them, and insistence that it need only respond to fifty (50) requests per month (after delaying these claims already for many months) is simply the latest attempt to impose unnecessary requirements in an effort to further avoid the mass arbitrations it has brought on itself.

### G.    Twitter's Employees Have Been and Will Continue to Be Severely Prejudiced by Twitter's Tactics

The goal of arbitration is to provide an expeditious and efficient alternative to litigation. *See Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1153 (9th Cir. 2004) ("The Federal Arbitration Act represents Congress's intent to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.") Employees have the right to have their arbitration demand heard and decided expeditiously, and any unnecessary delay weighs against the public interest favoring arbitration. *Adams v. Postmates, Inc.*, 2020 WL 1066980, at *6-7 (N.D. Cal. Mar. 5, 2020). To that end, courts recognize that employees are prejudiced by delayed arbitrations, especially when such delay is unnecessarily caused by their former employer's litigation tactics. *See, e.g., id.* at *6 (delay inures to the detriment of petitioners); *Campbell v. Marshall Int'l, LLC*, 2021 WL 9970914, at *3 (N.D. Ill. Jul. 23, 2021) ("[Plaintiff] has been prejudiced by defendants' actions, which have delayed her attempts to reach the merits of her claims for months and caused her to incur legal fees, including those associated with filing the instant motion.")

Here, through its various tactics, Twitter has succeeded in blocking the arbitrations of many of the thousands of former employees who have brought claims against it, including Petitioners. Twitter's actions have severely prejudiced these employees by depriving them of their right to an expeditious and efficient alternative to litigation. While not allowing them to proceed with their claims in court (as efficient class actions), Twitter has also played games to prevent them from pursuing their claims in arbitration.

The Court should rule promptly on this request. In particular, Petitioner Ma will suffer prejudice if an order is not entered quickly requiring Twitter to pay for his arbitration. He succeeded in obtaining an arbitration hearing date for December 2023 (over Twitter's objection), but risks not being able to proceed with his hearing if the fees are not paid promptly, so that he can take discovery and prepare for his hearing (and have the hearing itself proceed).

For other employees, Twitter's actions are preventing them from even being able to start the arbitration process. Petitioners' motion to compel should be granted promptly in order to put an end to Twitter's gamesmanship and allow its former employees to proceed with their claims in arbitrations.[16]

## IV.    CONCLUSION

For the reasons stated above, Petitioners respectfully request that this Court grant their motion to compel arbitration. If the Court determines that any further proceedings are needed to decide this motion, Plaintiffs request that the Court grant a preliminary injunction ordering Twitter to commence paying the arbitration fees and proceed with the arbitrations described herein.

---

[16]     Should the Court determine that further proceedings of some sort are needed before it can rule on this motion, Petitioners ask that the Court grant a preliminary injunction ordering Twitter to pay arbitration fees and take other action to ensure these arbitration cases may proceed. Preliminary injunctive relief is appropriate here because, not only are Petitioners likely to prevail on the merits of their petition, but the balance of equities also tips in Petitioners' favor and the public interest favors a preliminary injunction. As the court recognized in *Adams*, 2020 WL 1066980, at *6-7, allowing an employer to delay arbitration through its deliberate litigation strategy undermines the public's interest in arbitration as an expeditious and efficient alternative to litigation and inures to the detriment of employees. And, as employers routinely note when moving to compel arbitration, there is irreparable harm when parties must expend resources and energies in court actions, when they had agreed to the more efficient and expedient means of dispute resolution through arbitration.

Respectfully submitted,

FABIEN HO CHING MA, LAILA AMLANI,
JONATHAN WILLIS, MELISSA OLSON,
SASHA SOLOMON, RYAN CROWLEY, GRAE
KINDEL, SARAH ROSEN, and ADAM
TREITLER, on behalf of themselves and all others
similarly situated,

By their attorneys,

/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 310719
Bradley Manewith (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; bmanewith@llrlaw.com

Dated:        August 31, 2023

PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document will be served on Respondents Twitter, Inc. and X Corp. by process server today. A copy will also be sent via electronic mail to Respondents' counsel.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

PETITIONERS' MOTION TO COMPEL ARBITRATION AND FOR PRELIMINARY INJUNCTION