

**State of New Jersey**
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
PO BOX 112
TRENTON, NJ  08625-0112

PHILIP D. MURPHY
*Governor*

TAHESHA L. WAY
*Lt. Governor*

MATTHEW J. PLATKIN
*Attorney General*

MICHAEL T.G. LONG
*Director*

October 11, 2024

**<u>VIA ECF</u>**
Honorable Harvey Bartle III, U.S.D.J.
U.S. District Court for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

    Re:   *Atlas Data Privacy Corp. v. Lightbox Parent, L.P.,* No. 24-cv-4105, et al.
             Supplemental Letter Brief Regarding Culpability Standard

Dear Judge Bartle:

    Daniel's Law empowers public servants at heightened risk of being attacked or harassed in their own homes to ask a business to cease disseminating their street addresses or unlisted home phone numbers. If the business receives a valid request yet inexcusably fails to comply within 10 days, it is civilly liable for actual damages (or no less than $1,000 in liquidated damages), N.J. Stat. Ann. § 56:8-166.1(a)-(c)(1); if a business exhibits "willful or reckless disregard," it may also face punitive damages, *id.* § 56:8-166.1(c)(2).[1] This supplemental brief explains why New Jersey

---

[1] While the Act is comprised of several provisions, *see* N.J. Stat. Ann. § 2C:20-31.1; *id.* § 47:1-17; *id.* §§ 47:1B-1 to -4; *id.* §§ 56:8-166.1 to -166.3, only a handful—*id.*




HUGHES JUSTICE COMPLEX · TELEPHONE: (609) 376-2776
*New Jersey is an Equal Opportunity Employer · Printed on Recycled Paper and Recyclable*

courts would likely read the law's primary provision to codify a negligent-disclosure tort. Daniel's Law, that is, recognizes a duty for data brokers and other entities that possess this sensitive information to cease disseminating it when validly asked and given time to comply. It is wholly distinct from the statute at issue in *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), which lacked "a scienter requirement of any kind," and instead had liability flow "automatically from publication." *Id.* at 539.

In asking this federal Court to preemptively invalidate all applications of this New Jersey law "en masse," *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024), based on their *own* expansive reading of the law, Defendants stray far from interpretive principles of New Jersey law. *See Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009) (where a state high court has not definitively construed state law, federal courts "must predict how [it] would"). New Jersey courts embrace a strong presumption "that the legislature intended to act in a constitutional manner," and thus, whenever possible, construe a statute "to conform to the Constitution." *State v. Burkert*, 174 A.3d 987, 998 (N.J. 2017) (cleaned up). Where a law has two potential meanings, for instance—"a narrow one" that would pass muster, "and a broader one that raises serious constitutional issues"—New Jersey law requires that courts adopt the narrower one. *State v. Carter*, 255 A.3d 1139, 1156-57 (N.J. 2021);

---

§ 56:8-166.1(a), (c)(1)—are at issue here. This brief uses "Daniel's Law" for simplicity, while re-emphasizing that the Act's other provisions are plainly severable. *See* NJAG Br. 13 n.5; N.J. Stat. Ann. § 47:1B-4 (severability clause).

*see also N.J. Repub. State Comm. v. Murphy*, 236 A.3d 898, 907 (N.J. 2020) (state laws should be held unconstitutional only where "repugnancy to the constitution is *clear beyond a reasonable doubt*"). Indeed, "[w]hen necessary," New Jersey courts even "have engaged in 'judicial surgery' to save an enactment that otherwise would be constitutionally doomed." *State v. Natale*, 878 A.2d 724, 740 (N.J. 2005).[2]

Even assuming that (as Defendants urge) a strict-liability regime would raise facial constitutional problems for Daniel's Law, *see, e.g.*, ECF 27-33 (MTD Br.) 8, 33-34; ECF 62 (Oral Arg. Tr.) 110:7, 112:18, 115:19-25; *but see* ECF 48 (NJAG Br.) 14-17, 47-48,[3] the New Jersey Supreme Court is especially unlikely to read the

---

[2] Federal courts embrace their own version of this doctrine, and also recognize the dangers of "premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate … a novel State Act not yet reviewed by the State's highest court." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997). Here, the New Jersey Supreme Court has recently agreed to hear an as-applied challenge to Daniel's Law, *see Kratovil v. New Brunswick*, No. A-0216-23, 2024 WL 1826867 (N.J. Super. Ct. App. Div. Apr. 26, 2024), *certif. granted*, 2024 WL 4274721 (N.J. Sept. 20, 2024)—underscoring that the state courts stand ready to ensure the law operates in a constitutionally sound way.

[3] Indeed, *Florida Star* did not invalidate an entire Florida law for establishing a no-fault regime—it simply precluded liability for the newspaper for publishing truthful information "about a matter of public significance," as "[a]pplied to the instant case." 491 U.S. at 536; *see also Bartnicki v. Vopper*, 200 F.3d 109, 117 (3d Cir. 1999) (noting this case-specific approach in *Florida Star* and other Supreme Court decisions), *aff'd*, 532 U.S. 514 (2001). Although this supplemental brief focuses on explaining why Daniel's Law does require a culpable mental state, the Attorney General thus preserves the argument that *facial* invalidation would be improper even *if* the law had imposed strict liability. *See also infra* at 8. Moreover, in granting as-applied relief, *Florida Star* distinguished the strict-liability regime before it from

law to set up such a regime. Well-worn interpretive sources—including the statute's text, structure, context, and purpose, as well as background principles of tort—all indicate that Daniel's Law establishes a negligent-disclosure tort. And even if the question were close (though it is not), New Jersey's strong tradition of construing statutes to avoid constitutional issues would clearly require doing so here.

Start with the statute's text and structure. Daniel's Law sets up a classic opt-in regime: it can begin to operate only *if* a covered person first provides "written notice" to a party (such as an online data broker) that informs the recipient that covered person is an "authorized" requestor *and* requests the data broker stop disseminating their personal information. N.J. Stat. Ann. § 56:8-166.1(a)(2). Even then, that "written notice" must be "recei[ved]" by the data broker, at which point the data broker has "10 business days following receipt" to comply with the request. *Id.* § 56:8-166.1(a)(1). In other words, the Legislature did *not* want entities to be responsible for disclosures they could not have reasonably avoided—such as where they lacked valid "notice," or did not "recei[ve]" the request, or were not given sufficient time to comply. *E.g.*, NJAG Br. 44 (explaining that defendant who is not

---

garden-variety speech torts that raise no First Amendment issue—as when an individual is found civilly liable for defamation involving no public figure or concern, "under a standard … of ordinary negligence." 491 U.S. at 539. Here too, because mine-run applications of Daniel's Law involve no matters of public concern, they trigger no special First Amendment scienter requirement (or scrutiny), *see* NJAG Br. 15 n.6, 34; ordinary negligence is sufficient.

given sufficient information to "distinguish[] two John Smiths" and is denied clarification by the requestor "may have valid statutory or as-applied defenses—including that valid 'notice' was not 'received'"); *cf. Liberty Ins. Corp. v. Techdan, LLC*, 289 A.3d 429, 439 (N.J. 2023) (discussing comparative-fault defense under New Jersey law); *Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer*, 777 A.2d 19, 32 (N.J. 2001) (discussing equitable defenses).

That regime accords with other background tort principles, which teach that the foreseeability of a harm to others is central to determining the appropriate standard of care. And consistent with traditional concepts of negligence, Daniel's Law recognizes that possessors of this high-risk personal information have a duty to avoid dissemination when put on notice of the risk and given a reasonable amount of time to mitigate it. *See, e.g.*, Restatement (Second) of Torts § 282 (1965) (recognizing that "negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm"); *Olivo v. Owens-Illinois, Inc.*, 895 A.2d 1143, 1148 (N.J. 2006) (discussing "foreseeability of harm" as "crucial element in determining whether imposition of a duty … is appropriate") (cleaned up). In other words, it is telling of the Legislature's intent that it ensured that only those put on notice and given time to comply could be liable.

The statutory text and structure also reveal that the Legislature did not require a *higher* mental state, such as recklessness, knowledge, or purpose. New Jersey

courts read each statutory provision "in context with related provisions so as to give sense to the legislation as a whole," *DiProspero v. Penn*, 874 A.2d 1039, 1048 (N.J. 2005), and consistently avoid interpretations that create surplusage or even contradictions within a statutory scheme, *In re Commitment of J.M.B.*, 964 A.2d 752, 758-59 (N.J. 2009). Here, Daniel's Law imposes actual or liquidated damages for violations of the provision at issue here, but it additionally allows "punitive damages upon proof of willful or reckless disregard of the law." N.J. Stat. Ann. § 56:8-166.1(c). Similarly, the Act's criminal provision imposes liability only where a defendant has acted with purpose, knowledge, or recklessness. *Id.* § 2C:20-31.1(b). That the Act singles out higher levels of culpability for more serious consequences weighs strongly against reading the Act to require those heightened mental states in all cases, because doing so would render surplusage the provisions where the Legislature named those heightened mental states. *See J.M.B.*, 964 A.2d at 758-59.

Background principles of tort law bolster the conclusion that Daniel's Law is a negligent-disclosure statute. Take one analogous tort discussed in prior briefing: public disclosure of private facts. That tort occurs when one unreasonably and offensively publicizes another's private information. *Romaine v. Kallinger*, 537 A.2d 284, 292 (N.J. 1988). While the Attorney General is not aware of a New Jersey case on point, courts have sensibly held that the tort can be committed negligently. *See, e.g.*, *Z.D. v. Cmty. Health Network, Inc.*, 217 N.E.3d 527, 533-34 (Ind. 2023)

6

(noting that, of the "handful of jurisdictions" to address the issue, those "that require a showing of intent provide no explanation" for doing so); *Prince v. St. Francis-St. George Hosp., Inc.*, 484 N.E.2d 265, 269 (Ohio Ct. App. 1985) (holding that this tort can occur "through negligence"); *Hyde v. City of Columbia*, 637 S.W.2d 251, 253, 264-67 (Mo. Ct. App. 1982) (permitting negligent-disclosure suit to go forward and rejecting First Amendment argument to contrary); *cf.* Restatement (Second) of Torts § 652D (1977) (no intent element listed). And legislatures can (and do) draw on this tradition in articulating their own protections, enforceable under a negligence standard, that serve to protect sensitive information. *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240 (3d Cir. 2015) (allowing claims to proceed against hotel chain that allegedly failed to take reasonable steps to safeguard consumer information); *O'Donnell v. United States*, 891 F.2d 1079, 1085-86 (3d Cir. 1989) (recognizing negligent-disclosure claim under Pennsylvania law imposing duty not to disclose psychiatric records without consent). Daniel's Law falls well within this longstanding tradition. *See also* NJAG Br. 30-34.[4]

Further, the animating purpose of Daniel's Law is also inconsistent with either a specific-intent requirement (as raised at oral argument) *or* strict liability (as pressed by Defendants in an effort to challenge the law's constitutionality). The statute seeks

---

[4] It is also well-established that one can be negligent by allowing "an unreasonable risk of harm" to persist, even though that risk hinges on the wrongful or criminal conduct of a third party. *See* Restatement (Second) of Torts § 302B.

7

"to enhance the safety and security of certain public officials in the justice system" such that they can "carry out their official duties without fear of personal reprisal," N.J. Stat. Ann. § 56:8-166.3, and accomplishes this purpose by empowering covered persons to ask entities to stop disseminating their information (and giving recipients two full weeks to comply), *id.* § 56:8-166.1(a). Requiring plaintiffs to prove specific intent would disserve this purpose, because the same harm occurs even if the disseminator is not acting with nefarious intent. *See* NJAG Br. 47-48. But interpreting the law to impose strict liability would not only require assuming the Legislature intended to *invite* constitutional questions—the opposite of New Jersey doctrine, *see supra* at 2-4—but would also make no sense in tandem with Daniel's Law's opt-in structure. After all, the limited areas of tort law in which strict liability applies are those in which special deterrence is needed—whether because reasonable care is insufficient (as with ultrahazardous activities or abnormally dangerous animals), *see* Restatement (Second) of Torts §§ 509, 519 (1977); *T & E Indus., Inc. v. Safety Light Corp.*, 587 A.2d 1249, 1257 (N.J. 1991), or, for products liability, where a manufacturer is obviously best situated to avoid the harm, *see Suter v. San Angelo Foundry & Mach. Co.*, 406 A.2d 140, 151 (N.J. 1979). Neither rationale fits with Daniel's Law, which recognizes that sharing or selling data is not itself barred, but instead places the onus on the covered person to *request* non-disclosure. Put differently, the law's structure recognizes that there is no act to be deterred unless

8

and until a person opts in—undermining any theory that the Legislature intended to impose some sort of strict liability regime.

Two final points are in order. First, even if this Court *were* to read Daniel's Law as a strict-liability provision (though it is not), facial invalidation would not be the appropriate remedy. Indeed, rather than invalidate an entire statute, courts prefer "to enjoin only the unconstitutional applications … while leaving other applications in force." *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328-29 (2006); *see also Reilly v. City of Harrisburg*, 790 F. App'x 468, 475 n.9 (3d Cir. 2019) ("[I]f the District Court determines a remedy is necessary on remand, it could fashion one that does not require disposing of the Ordinance in its entirety."). Here, that would at most mean confirming that Defendants may argue to a jury that they were not in fact negligent in any alleged violations (which are taken as true on this posture)—achieving a practical result that Plaintiffs and the Attorney General contend already *is* the law.[5] In any event, recognizing that Daniel's Law creates a negligent-disclosure tort would foreclose any constitutional question.

Second, regardless of which culpable mental state is imposed by Daniel's Law, a corporation cannot escape liability simply by asserting that the fault lay with

---

[5] Indeed, the Attorney General's interpretations, while not binding, are "nonetheless entitled to a degree of deference, in recognition of the Attorney General's special role as the sole legal adviser to most agencies of State Government." *Shaw v. Shand*, 217 A.3d 1180, 1196 (N.J. Super. Ct. App. Div. 2019) (citation omitted).

an employee in the "mailroom," and thus arguing that the employee's failure does not reflect on the company's *own* culpability. *Cf.* Oral Arg. Tr. 111:18-22. To the contrary, New Jersey law includes the well-established doctrine of *respondeat superior*, which renders employers vicariously liable for torts committed by employees acting within the scope of their employment. *Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc.*, 272 A.3d 912, 918 (N.J. 2022); Restatement (Second) of Agency § 219 (1958). Thus, whether this Court interprets Daniel's Law to require ordinary or gross negligence (or any other culpable mental state), businesses should still be liable for the relevant acts of employees that fall below that standard. And similarly, an employee's knowledge of any requests received should be imputed to the employer, even if the employee does not in fact convey the information to the CEO. *See Pfenninger v. Hunterdon Cent. Reg'l High Sch.*, 770 A.2d 1126, 1132-33 (N.J. 2001); Restatement (Second) of Agency § 283(a). In short, under hornbook law, an employee's unjustifiable failure to act despite receiving a valid request will typically qualify as the employer's failure—whichever mental state applies.

* * *

Daniel's Law establishes a negligent-disclosure tort, and raises no facial First Amendment issues. This Court should deny Defendants' facial motion.

Respectfully submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By:   /s/ Daniel M. Vannella
Daniel M. Vannella (NJ No. 015922007)
Assistant Attorney General

cc:     All counsel (via ECF)

11